AO 243 (Rev. 01/15)

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**APR 05 2021**

JEFFREY P. COLWELL
CLERK

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District   COLORADO | |
|---|---|---|
| Name *(under which you were convicted)*: RANDE BRIAN ISABELLA | | Docket or Case No.: 21 - cv - 00973 - CMA |
| Place of Confinement: F.C.I. LORETTO, Pa. | Prisoner No.: 60876 - 018 | |
| UNITED STATES OF AMERICA           V. | Movant *(include name under which convicted)* RANDE BRIAN ISABELLA | |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   U.S. DISTRICT COURT FOR THE DISTRICT OF COLORADO

   (b) Criminal docket or case number (if you know): 1:14-cr-00207-CMA-01

2. (a) Date of the judgment of conviction (if you know): MAY 24, 2017

   (b) Date of sentencing: MAY 24, 2017

3. Length of sentence: 216 MONTHS (18 YEARS + 20 YEARS S.R.)

4. Nature of crime (all counts):
   ✓ COUNT ONE: COMPLETED COERCION AND ENTICEMENT IN THE PRODUCTION OF CHILD PORNOGRAPHY
   COUNT TWO: COMPLETED PRODUCTION OF CHILD PORNOGRAPHY — ACQUITTED (DURING TRIAL)
   ✓ COUNT TWO: ATTEMPTED PRODUCTION OF CHILD PORNOGRAPHY
   COUNT THREE: ATTEMPTED COERCION AND ENTICEMENT — ACQUITTED (BY JURY)
   COUNT FOUR: ATTEMPTED PRODUCTION OF CHILD PORNOGRAPHY — ACQUITTED (BY JURY)

5. (a) What was your plea? (Check one)
   (1) Not guilty ☒   (2) Guilty ☐   (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)   Jury ☒   Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☒   No ☐

8. Did you appeal from the judgment of conviction?   Yes ☒   No ☐

AO 243 (Rev. 01/15)                                                                    Page 3

9. If you did appeal, answer the following:

   (a) Name of court _____ TENTH CIRCUIT COURT OF APPEALS

   (b) Docket or case number (if you know): _____ 17-1197

   (c) Result: _____ AFFIRMED

   (d) Date of result (if you know): _____ MARCH 12, 2019

   (e) Citation to the case (if you know): _____ UNITED STATES v ISABELLA, 918 F-3d 816 (10TH CIR. 2019)

   (f) Grounds raised:    1. INSUFFICIENCY OF EVIDENCE
                 2. IMPROPER EVIDENTIARY RULINGS (Rule 403, 404(b), 901, INADMISSIBILITY, TRIAL OBJECTION)
                 3. MULTIPLICITOUS CONVICTION
                 4. CUMULATIVE ERROR

       ORAL ARGUMENT — NOVEMBER 27, 2019 AT 17-1197. mp3

   (g) Did you file a petition for certiorari in the United States Supreme Court?  Yes. ☒  No ☐

      If "Yes," answer the following:

      (1) Docket or case number (if you know): _____ 19-7775

      (2) Result _____ CERT. DENIED. MOTION FOR IN FORMA PAUPERIS NOT ADDRESSED.

      (3) Date of result (if you know): _____ MARCH 30, 2020

      (4) Citation to the case (if you know): _____ 140 S. Ct. 2586 ; 206 L. Ed. 2d 508 (2020)

      (5) Grounds raised:

        I. IN AN EXTRAORDINARY DEPARTURE THE TENTH CIRCUIT HAS DISREGARDED REVIEW OF ELEMENTS AT 18 U.S.C. §2251(a) REQUIRED UNDER JACKSON v VIRGINIA ; AND HAS FOUND A "CIRCUMSTANTIAL" STEP POINTED TOWARD "SEXTING", IN CONFLICT WITH ACCEPTED ATTEMPT DOCTRINE REQUIRING A "SUBSTANTIAL STEP". BE POINTED TOWARD THE CHARGED OFFENSE.

        II. THE SUPREME COURT IS NEEDED TO SETTLE INTER AND INTRA-CIRCUIT CONFLICT ON INTERPRETATIONS AND PROCEDURES AT 18 U.S.C. §2422(b)

        III. THE FEDERAL DECISION BELOW CONFLICTS WITH A RECENT STATE SUPREME COURT DECISION ON THE IMPORTANT QUESTION: WHETHER EVIDENCE OF THE BEHAVIORAL THEORY OF "GROOMING" REQUIRES A "FOUNDATIONAL SHOWING OF SCIENTIFIC VALIDITY" TO BE ADMISSIBLE AND RELEVANT TO THE JURY.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

   Yes ☒   No ☐

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court _____ TENTH CIRCUIT COURT OF APPEALS

      (2) Docket or case number (if you know): _____ 17-1197

      (3) Date of filing (if you know): _____ Rcvd. May 10, 2019

      (4) Nature of the proceeding: _____ PETITION FOR REHEARING AND REHEARING EN BANC

      (5) Grounds raised:

        I. IN A MATTER OF EXTRAORDINARY PUBLIC IMPORTANCE...

AO 243 (Rev. 01/15)                                                                                          Page 4

TO THE COURT HAS AFFIRMED A CASE OF PRODUCTION OF CHILD PORNOGRAPHY, WITHOUT HAVING REVIEWED THE ESSENTIAL ELEMENTS FOR SUFFICIENCY, IN CONFLICT WITH SUPREME COURT AUTHORITY IN JACKSON v VIRGINIA AND UNITED STATES v WILLIAMS.

II.   THE COURT'S JUDGMENT HAS CONSTRUCTIVELY AND AFFIRMATIVELY AMENDED THE INDICTMENT TO INCLUDE A PREJUDICIAL VARIANCE

III.  THE COURT HAS OVERLOOKED OR MISAPPREHENDED KEY COMPONENTS AND CONTROLLING AUTHORITY IMPACTING THE DOUBLE JEOPARDY DECISION.

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐    No ☒

(7) Result:   DENIED

(8) Date of result (if you know):   JUNE 4, 2019

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:   TENTH CIRCUIT COURT OF APPEALS

(2) Docket of case number (if you know):   17-1197   -   Document: 010110090673

(3) Date of filing (if you know):   NOVEMBER 27, 2018

(4) Nature of the proceeding:   SECOND NOTICE OF ATTORNEY CONFLICT AND REQUEST LEAVE TO SUPPLEMENT BRIEF
                                                                       IN PROPRIA PERSONA

(5) Grounds raised:

I.   CONFLICT OF INTEREST
     A.  WHETHER EXCESSIVE WINNOWING WAS REASONABLE
     B.  WHETHER COUNSEL'S ACTIONS WERE ADVERSE
          1. COUNSEL'S DISREGARD FOR ELEMENT
          2. COUNSEL'S SYMPATHY TO GOVERNMENT'S POSITION DESTROYED ADVERSARIAL PROCESS
          3. COUNSEL'S DISREGARD FOR AGREEMENT TO RAISE ISSUE OF PROSECUTORIAL
               MISCONDUCT

II.  STATEMENT OF SUPPLEMENTAL ISSUES REQUESTED
          Document: 010110091189

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐    No ☒

(7) Result:   DOCKETED - NOT ADDRESSED.

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:   Yes ☐   No ☒

(2) Second petition:   Yes ☐   No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

(1)   TENTH CIRCUIT COURT OF APPEALS DENIAL OF PETITION FOR REHEARING WAS FINAL

(2)   BECAUSE MOTION OF ATTORNEY CONFLICT/ADVERSITY WAS NEVER ADDRESSED BY
         THE COURT, I HAD NO STANDING TO APPEAL THE MOTION.

12.   For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

# GROUND ONE

AO 243 (Rev. 01/15)

WHERE TRIAL COUNSEL OBJECTED TO CLEAR <sub>ERROR</sub> AND PRESERVED IT ON CONSTITUTIONAL GROUNDS, SAME COUNSEL ON APPEAL WAS INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE THE "DEAD BANG WINNER" ISSUE.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE NEXT PAGE.

SEE UNITED STATES v COOK, 45 F.3d 388 (10TH cir. 1995).

(b) Direct Appeal of **GROUND ONE**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes [ ]   No [X]

(2) If you did not raise this issue in your direct appeal, explain why:

APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE.
SEE RINER v OWENS, 764 F.2d 1253 (7TH cir. 1985)

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes [ ]   No [X]

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?
Yes [ ]   No [ ]

(4) Did you appeal from the denial of your motion, petition, or application?
Yes [ ]   No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes [ ]   No [ ]

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

1. ON SEPTEMBER 16, 2016, MOVANT FILED A MOTION FOR RECONSIDERATION WITH A DIGITAL

DOC. 180

DOC. 180-1

FORENSICS REPORT PROVING THAT SOMEONE OTHER THAN THE MOVANT HAD COMMITTED THE

MOST SERIOUS OFFENSE OF PRODUCING CHILD PORNOGRAPHY WITH MINOR S.F.   ON

SEPTEMBER 19, 2016, THE JURY WAS EMPANELED; SWORN; MET THE DEFENDANT,

HEARD ALL THE CHARGES; AND WAS SENT HOME FOR A WEEK *; JEOPARDY HAD ATTACHED.

TRIAL TRANSCRIPTS (T.TR.), PAGE (P.) 241 @ 10-12; p. 5 @ 25; p. 27 @ 25-28 @ 3; p. 245 @ 16-19; SEE UNITED STATES v.

MARTIN LINEN SUPPLY, 430 U.S. 564 (1977).

* U.S. ATTORNEY'S OFFICE PRESS RELEASE LED TO PUBLICATIONS DETAILING "56 PORNOGRAPHIC IMAGES OF CHILDREN ENGAGING IN" VARIOUS SEX ACTS; "FOUND ON ONE OF THE DEVICES" AFTER A "SEARCH AND SEIZURE" AT ISABELLA'S HOME". THE JURY COULD GOOGLE THIS. SEE FED. R. CRIM. P. 6 @ (E)(2); IN RE GRAND JURY INVESTIGATION, 610 F.2d 202 (5TH CIR. 1980).

2. ON SEPTEMBER 22, 2016, DURING A TRIAL CONFERENCE, THE GOVERNMENT ACKNOWLEDGED

MOVANT'S WINNING DIGITAL FORENSIC DEFENSE BY MOVING TO "DISMISS" THE MOST SERIOUS

APX. I

(DOC. 180; DOC. 180-4)

SUBSTANTIVE OFFENSE FOR INSUFFICIENCY OF THE EVIDENCE — MOVANT'S EVIDENCE

SHOWED SOMEONE ELSE COMMITTING THE CRIME AND THAT MOVANT WAS ACTUALLY INNOCENT.

SEE T.TR.

p. 286 @ 4 - 289 @ 3. WANTING THE JURY TO SEE THIS POWERFUL EVIDENCE AND RECEIVE THE COLLATERAL

BENEFIT OF THE JURY SEEING MOVANT IN A FAVORABLE LIGHT, THE MOVANT REFUSED TO GRANT

CONSENT TO THE DISMISSAL. Id. THE GOVERNMENT MOVED "TO DISMISS THE COMPLETED DEFENSE",

BUT WAIVED THE COURT'S QUESTION "IF YOU HAVE ANY EVIDENCE THAT WOULD SUPPORT [THE]...CHARGE." Id. DEFENSE

COUNSEL, RON GAINOR, OBJECTED TO THE "MATERIAL CHANGE" IN THE INDICTMENT "AT THIS LATE STAGE OF THE GAME." Id.

BECAUSE THE COURT GRANTED THE GOVERNMENT'S "ORAL MOTION TO DISMISS THE COMPLETED" OFFENSE;

"WITHOUT THE [MOVANT'S] CONSENT" AND OVER HIS EXPLICIT OBJECTION; THE GOVERNMENT EXCEEDED

ITS AUTHORITY AT RULE 48(a) AND THE COURT ABUSED ITS DISCRETION; LIMITED AT RULE 48(b) OF

T.TR.

THE FEDERAL RULES OF CRIMINAL PROCEDURE. p. 290 @ 1-5; Fed. R. Crim. P. 48(a). THREE TIMES THE COURT ASKED IF

THE GOVERNMENT HAD "ANY EVIDENCE THAT WOULD SUPPORT" A CHARGE OF PRODUCTION OF CHILD PORNOGRAPHY, SO THE

WAIVER CONCEDES INSUFFICIENCY OF THE EVIDENCE TO SUPPORT -(PROBABLE CAUSE)- THE GRAND JURY'S CHARGE.

T.TR.

p. 286 @ 18-24; p. 288 @ 6-289 @ 7. THUS, THE "DISMISSAL" WAS WITH PREJUDICE AND JEOPARDY ATTACHED... (̶ ̶ ̶ ̶ ̶ ̶ ̶)

3. THE PROSECUTOR'S REASON FOR NOT MOVING TO DISMISS PRIOR TO THE JURY BEING EMPANELED AND SWORN

WAS THAT "THE GOVERNMENT DID NOT HAVE ACCESS;" "WAS ENGAGED;" "HAD A LIMITED TIME;" AND

DOC. 196, p. 2-3

REQUESTED LEAVE TO FILE A "FULLER BRIEFING" ON "SEPTEMBER 22, 2016" — AT THE HEARING. @ ¶ 3-4.

4. "[A]LTHOUGH THE DISTRICT COURT HAD CHARACTERIZED ITS ACTION AS A DISMISSAL OF THE INDICTMENT, [MOVANT] HAD IN EFFECT BEEN ACQUITTED, SINCE THE DISTRICT COURT HAD RELIED UPON FACTS DEVELOPED AT TRIAL," AS OPPOSED TO MERE TECHNICALITIES UNRELATED TO GUILT OR INNOCENCE. UNITED STATES v JENKINS, 420 U.S. 358 (1975). THE MOVANT'S "DISMISSAL" WITH PREJUDICE AND JEOPARDY ATTACHED AMOUNTED TO AN ACQUITTAL, SINCE "THE RULING OF THE JUDGE, WHATEVER ITS LABEL, ACTUALLY REPRESENTS A RESOLUTION [IN THE MOVANT'S FAVOR], CORRECT OR NOT, OF SOME OR ALL OF THE FACTUAL ELEMENTS OF THE OFFENSE CHARGED." MARTIN LINEN SUPPLY. HAD APPELLATE COUNSEL GAINOR RAISED THE ERROR ON DIRECT APPEAL; THE APPELLATE PANEL WOULD NOT HAVE OVERLOOKED THE TRANSCRIPTS "DISMISSING" THE CHARGE FOR INSUFFICIENCY OF THE EVIDENCE AFTER THE JURY WAS EMPANELED AND SWORN; AND WOULD NOT HAVE MISCONSTRUED A DISMISSAL "WITHOUT CONSENT OF THE DEFENDANT," AS AN "AMENDMENT" OF THE INDICTMENT. T.TR. 290@1-4; 241@10-12; Fed.R.Crim.P. RULE 48(a); ISABELLA@n.2 SINCE AN ACQUITTAL CARRIES ISSUE PRECLUSION PROTECTION UNDER THE DOUBLE JEOPARDY CLAUSE, BUT FOR COUNSEL'S FAILURE TO RAISE THE ISSUE ON APPEAL, THE OUTCOME WOULD MORE THAN LIKELY HAVE BEEN DIFFERENT. SEE ASHE v SWENSON, 397 U.S. 436 (1970).

5. SINCE THE GOVERNMENT CLEARLY EXCEEDED ITS AUTHORITY TO DISMISS UNDER RULE 48(a) AND THE COURT EXCEEDED ITS RANGE OF DISCRETION LIMITED AT RULE 48(b), THE ERROR WAS CLEAR AND OBVIOUS IN A CASUAL READING OF THE TRANSCRIPT. T.TR. p.286@4 - p.294@17. AND BECAUSE TRIAL COUNSEL'S OBJECTION WAS PRESERVED ON CONSTITUTIONAL GROUNDS — THE PROTECTION UNDER THE GRAND JURY CLAUSE — APPELLATE STANDARD OF REVIEW WOULD SHIFT FROM THE HARMLESS ERROR STANDARD UNDER KOTTEAKOS, UNITED STATES v 328 U.S. 750 (1946), TO THE MORE FAVORABLE CHAPMAN STANDARD OF REVIEW. UNDER CHAPMAN v CALIFORNIA, 386 U.S. 18 (1967), "THE BURDEN [IS] ON THE BENEFICIARY OF THE ERROR TO PROVE THERE WAS NO INJURY OR TO SUFFER A REVERSAL OF HIS ERRONEOUSLY OBTAINED JUDGMENT." Id. SEE ALSO ARIZONA v FULMINANTE, 499 U.S. 279 (1991) (CONFIRMING THAT THE BURDEN OF PROVING THE ERROR HARMLESS BEYOND A REASONABLE DOUBT IS ON THE GOVERNMENT — THE BENEFICIARY OF THE ERROR). THE GOVERNMENT COULD NOT HAVE PROVEN SUCH ERROR HARMLESS BEYOND A REASONABLE DOUBT. SINCE THE GOVERNMENT COULD NOT "PROVE BEYOND A REASONABLE DOUBT THAT THE [ERRONEOUS DISMISSAL] DID NOT CONTRIBUTE TO THE VERDICT OBTAINED," THE COURT OF APPEALS WOULD HAVE BEEN REQUIRED TO REVERSE THE CONVICTION. CHAPMAN, 386 U.S. at 24.

## PREJUDICE

6. THE MOVANT WAS **PREJUDICED** BY DISMISSAL DURING TRIAL; WITHOUT HIS CONSENT; AND OVER HIS OBJECTION:

    a.) WITH JEOPARDY ATTACHED; MOVANT HAD A "RIGHT TO INSIST ON A DISPOSITION ON THE MERITS AND MAY PROPERLY OBJECT TO A DISMISSAL..." UNITED STATES v WOODRING, 311 F.2d 417 (8th CIR. 1963);

    b.) HAD THE JURY SEEN MOVANT'S POWERFUL DEFENSE EVIDENCE SHOWING SOMEONE ELSE COMMITTING [DOC. 180-1] THE CRIME THE GRAND JURY CHARGED AGAINST HIM; CONSIDERABLE DOUBT WOULD HAVE BEEN RAISED;

    c.) SEEING EVIDENCE PROVING MOVANT ACTUALLY INNOCENT OF PRODUCING THE UNSPECIFIED CHILD [DOC.1] PORNOGRAPHY FOUND ON S.F.'s CELLPHONE; THEY WOULD HAVE BEEN UNABLE TO RECONCILE THAT HE WAS GUILTY OF PRODUCING CHILD PORNOGRAPHY WITH S.F. AT THE PREDICATE OFFENSE ELEMENT IN Count 1;

    d.) ISSUE PRECLUSION AND FACT PRECLUSION WOULD HAVE MADE IT IMPOSSIBLE FOR THE GOVERNMENT TO PROVE ELEMENTS OF ATTEMPTED PRODUCTION OR THE PREDICATE OFFENSE ELEMENT; SINCE FACTUAL PARTICULARS IN COUNTS ONE AND TWO ARE IDENTICAL; [DOC.1 p.1-2;] ASHE v SWENSON, 397 U.S. 436 (1970);

    e.) THE CLEARLY ERRONEOUS DISMISSAL OVER FED. R. CRIM. P. RULE 48(a) VIOLATED DUE PROCESS; WHILE THE COURT'S AMENDING OF THE INDICTMENT AT TRIAL VIOLATED MOVANT'S RIGHT TO GRAND JURY PROTECTION;

    f.) BY PRE-MATURELY DISMISSING PRODUCTION OF CHILD PORNOGRAPHY'S SUBSTANTIVE CHARGE IN Count TWO; MOVANT'S WINNING DEFENSE EVIDENCE WAS RENDERED USELESS CONCERNING THE REMAINING CHARGES WITH S.F.; STRIPPING IT OF ALL BENEFIT TO THE MOVANT;

    g.) THAT SAME EVIDENCE WAS THEN PRECLUDED FROM BEING SEEN OR DESCRIBED, WITH DEFENSE COUNSEL [SEE T.TR.] GIVEN A CLEAR RESTRICTION FROM USING IT IN ANY BENEFICIAL WAY; p. 327@16-328@24;

    h.) WITH EVIDENCE CLEARLY PROVING SOMEONE ELSE PRODUCED THE CHILD PORNOGRAPHY PARTICULARIZED IN COUNT 2; BEING PRECLUDED DESPITE THE RULE 412 EXCEPTION; MOVANT WAS DENIED HIS RIGHT TO CONFRONT THE WITNESS (S.F.) CONCERNING THE "ACTUAL ORIGINS"; [328] @13; Id.; SIXTH AMENDMENT ("RIGHT TO CONFRONT WITNESSES").

AND    i.) HAD APPELLATE COUNSEL RAISED THE ERRONEOUS DISMISSAL ON APPEAL; HAVING OBJECTED ON "CONSTITUTIONAL GROUNDS," THE CHAPMAN STANDARD OF REVIEW WOULD HAVE APPLIED - DRAMATICALLY INCREASING THE PROBABILITY THAT THE COURT OF APPEALS WOULD: REVERSE THE CONVICTION.; THUS, COUNSEL'S FAILURE TO RAISE THE "DEAD-BANG WINNER" ISSUE, PREJUDICED THE MOVANT THROUGH THE DENIAL OF THIS FAVORABLE STANDARD, UNITED STATES v COOK, 45 F.3d 388 (10th CIR. 1995).

7. The erroneous dismissal "without the consent of the defendant," exceeded the authority of the "United States Attorney or Attorney General" and exceeded the range of the Court's discretion. Fed.R.Crim.P. Rule 48(a) and (b). Trial Counsel objected and preserved the objection on Constitutional Grounds. The error was clear and obvious within the trial record. And under the Chapman Standard the government would have been unable to prove beyond a reasonable doubt that the prejudice detailed at ¶6. was harmless. "[C]ounsel's performance is objectively unreasonable because the omitted issue is obvious from the trial record." Cook. ¶15. "[A]n appellate advocate may deliver deficient performance and prejudice a defendant by omitting a 'dead-bang winner,' even though Counsel may have presented strong but unsuccessful claims on appeal." Id.@395. *No issue raised on appeal was stronger. Initial Brief = Doc. 01019943690 (App.#17-1197)

8. "A defendant may establish cause for his procedural default by showing that he received ineffective Assistance of Counsel in violation of the Sixth Amendment." Murray v Carrier, 477 U.S. 478 (1986). "[W]e have applied those same [(strickland)] standards in assessing the effectiveness of appellate counsel." Cook, (Tenth Circuit). The Seventh Circuit has clarified, "the District Court must examine the trial record to determine whether Appellate Counsel failed to present significant and obvious issues on appeal ... Only when ignored issues are clearly stronger than those presented, will the Presumption of effective Assistance of Counsel be overcome." Gray v Greer, 800 F.2d 644 (7th Cir. 1985); also see Massaro v United States, 538 U.S. 500 (2003).

# GROUND TWO

AO 243 (Rev. 01/15)

TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE FOR FAILING TO OBJECT WHEN
A CHARGE WAS BOTH DISMISSED AT TRIAL WITH PREJUDICE AND RELIED UPON
AS THE PREDICATE OFFENSE TO CONVICT MOVANT

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

UNITED STATES v BASS   310 F.3d 321 (5TH CIR 2002)

UNITED STATES v JONES   403 F.3d 604 (8TH CIR 2005)

SEE NEXT PAGE

(b) Direct Appeal of **GROUND TWO**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes [ ]   No [X]

(2) If you did not raise this issue in your direct appeal, explain why:

TRIAL COUNSEL AND APPELLATE COUNSEL WERE THE SAME
SEE Page v UNITED STATES 884 F.2d 300 (7TH CIR. 1989).

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes [ ]   No [X]

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion, petition, or application?

Yes [ ]   No [ ]

(4) Did you appeal from the denial of your motion, petition, or application?

Yes [ ]   No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes [ ]   No [ ]

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue:

1.   UPON THE COURT'S GRANTING OF THE GOVERNMENT'S "ORAL MOTION TO DISMISS THE COMPLETED... PRODUCTION
OF CHILD PORNOGRAPHY" DURING TRIAL, "THE GOVERNMENT SHIFTED GEARS AND SOUGHT TO PROCEED" WITH
A FACTUAL THEORY NOT CHARGED BY, OR EVEN PRESENTED TO, THE GRAND JURY. @ 1-4; UNITED STATES V
  *See T.TR. p. 290*
FARR, 536 F.3d 1174 (10TH CIR. 2008). WHILE THE DISMISSAL OCCURRED ON SEPTEMBER 22, 2016 — 3 DAYS AFTER THE
JURY WAS EMPANELED AND SWORN — THE COURT OF APPEALS MISTAKENLY REFERRED TO THE EVENT AS A
"MOTION" TO AMEND THE INDICTMENT." ISABELLA @ n.2 WHATEVER THE LABEL, THE ORDER "REPRESENTS A RESOLUTION
[IN THE MOVANT'S FAVOR]... OF THE FACTUAL ELEMENTS OF THE OFFENSE CHARGED." MARTIN LINEN. THE "FACTUAL ELEMENTS"
OF COMPLETED PRODUCTION OF CHILD PORNOGRAPHY INCLUDE: (a.) ENTICING MINOR S.F.; (b.) BETWEEN SEPTEMBER
1, 2013" AND "FEBRUARY 14, 2014" IN "COLORADO AND ELSEWHERE"; (c.) "TO ENGAGE IN SEXUALLY EXPLICIT CONDUCT;
(d.) "FOR THE PURPOSE OF PRODUCING VISUAL DEPICTIONS" OF HER ENGAGING IN SUCH CONDUCT; (e.) WITH THE
KNOWLEDGE THAT "CHILD PORNOGRAPHY," AS DEFINED AT 18 U.S.C § 2256(8)(A) OR (B) WOULD MOVE IN INTERSTATE
                                                                                Doc. 1
COMMERCE.   p. 2; 18 U.S.C. § 2251(a). WITH SUCH FACTUAL ELEMENTS RESOLVED IN MOVANT'S FAVOR, HOW
DID THE GOVERNMENT PROVE THAT MOVANT COMPLETED COERCION AND ENTICEMENT AT § 2422(b) WITH
"PRODUCTION OF CHILD PORNOGRAPHY UNDER FEDERAL LAW" AS THE "CHARGEABLE" PREDICATE OFFENSE ELEMENT —
WHERE FACTUAL PARTICULARS ARE IDENTICAL IN COUNTS ONE AND TWO? THE ANSWER IS TWO-FOLD: FIRST, THE
GOVERNMENT DISREGARDED COMMON LAW ISSUE PRECLUSION AND FACT PRECLUSION CAUSED BY THE COURT'S
RESOLUTION IN MOVANT'S FAVOR; AND SECOND, BY PRESENTING THE COURT WITH THE NOVEL LEGAL
THEORY THAT § 2422(b) IS "COMPLETED" UPON ACHIEVING A MINOR'S "ASSENT." EACH TIME THE GOVERNMENT
IS CHALLENGED ON THIS ISSUE, THEY CITE A LAUNDRY LIST OF "ATTEMPT" CASES AT § 2422(b), YET FAIL
TO CITE A SINGLE ON-POINT CASE AUTHORITY. ACCORDINGLY, UNITED STATES V ISABELLA STANDS AS THE ONLY
                                   *
CASE OF THE COMPLETED THEORY AT § 2422(b) DECIDED BY A MINOR'S ASSENT — WITHOUT COMPLETING THE
SUBJECT SEXUAL ACTIVITY WHICH "CAN BE CHARGED." COMPARE LIABILITY WITH UNITED STATES V BRINSON, 772 F.3d 1314 (10TH CIR 2014);
UNITED STATES V WILLIAMS, 220 FED APP'x __ (10TH CIR 2007); UNITED STATES V PHILLIPS, 165 FED. APP'x 679 (10TH CIR 2006); UNITED STATES V
RICCARDI, 405 F.3d 852 (10TH CIR 2005); UNITED STATES V BYRNE, 171 F.3d 1231 (10TH CIR 1999)(DEFENDANT "PERFORMED A SERIES
OF SEXUAL ACTS WITH THE BOY."); UNITED STATES V JOHNSON, 183 F.3d 1175 (10TH CIR 1999)(DEFENDANT "ENGAGED IN NUMEROUS SEX ACTS
WITH THE MINOR.").   * ONLY THE COMPLETED OFFENSE AT § 2422(b) IS RELEVANT TO THESE PROCEEDINGS; 28 U.S.C. § 2255.
                    (ATTEMPT IS ONLY APPLICABLE TO § 2251(a) IN COUNT TWO.)

2. Whether the substantive offense in Count Two were an **Acquittal** on the **merits**, a dismissal with prejudice and jeopardy attached, or an amendment of the indictment without the grand jury's involvement, "the critical question is whether the order contemplates an **end** to all prosecution of the defendant for **the offense charged.**" United States v Rich, 589 F.2d 1025 (10th Cir. 1978); the "offense charged" **is** "production of child pornography "at 18 u.s.c §2251(a), as applied to an unknown quantity and unspecified content, as charged by indictment. (count 2) Doc.1 p.2. The target offense or "**predicate offense...element**" under the **law of the case** (Doc.221 p.20@n.2), which underlies the charge of conviction and sentence in Count One, is **that** precise "offense charged." Under identical factual bases and identical elements—requiring proof and jury unanimity—there is no difference between Ⓐ the target offense elected by the trial jury to be the "sexual activity for which any person can be charged a criminal offense," and Ⓑ the substantive offense in Count Two — acquitted/dismissed/amended to exclude for insufficiency of the evidence during trial. They are factually and legally the same offense. see Doc.224 Doc.1 Apx. E. Apx. E. @ 1B; p.1-2; §2422(b).

3. The offense used to convict in Count One by satisfying the target/predicate offense element, **is** the offense the **Movant** was adjudicated "not guilty" — in effect — due to the **dismissal** for insufficiency of the evidence three days after the jury was "empaneled and sworn." @1-4; T.TR.p.290 Martin Linen. "[T]he protection of the double jeopardy clause by its terms applies only if there has been **some event**, such as an acquittal, which terminates the original jeopardy." Richardson v United States, 468 U.S. 317 (1984). Under the completed theory of offense in Count One, where the "**predicate offense...in §2422 is an element, not a means,**" the government is unable to* distinguish between "production of child pornography" — the "dismissed" charge and the "predicate offense element." Doc.221 p.20@n.2. *Had the indictment identified particular images, events or conduct which caused Counts One and Two to be factually distinguishable, this might have been possible.

4. WHILE TRIAL COUNSEL GAINOR DID OBJECT TO THE "DISMISSAL" ON GROUNDS THAT IT WAS A MATERIAL CHANGE TO THE INDICTMENT WHICH ONLY THE GRAND JURY CAN DO, HE FAILED TO FOLLOW-THROUGH AND OBJECT TO PREJUDICIAL HARM THAT TRIAL DISMISSAL CAUSED. IT IS THE DUTY OF THE GRAND JURY TO DECIDE WHETHER THERE IS PROBABLE CAUSE TO CHARGE AN OFFENSE UNDER THE ACCUSATORY FACTS PRESENTED THEM. AFTER HEARING THE GOVERNMENT WITNESS TELL OF NUMEROUS SEXUALLY EXPLICIT IMAGES OF CHILDREN FOUND ON S.F.'s CELLPHONE [Doc. III, p.7@16-23; p.14@20-15@1.] AND S.F.'s ACCUSATIONS WITHIN THE FORENSIC VIDEO INTERVIEW (RECORD EXPANSION REQUIRED) — MADE A WEEK AFTER INVESTIGATORS FAILED TO IDENTIFY ANY "CHILD PORNOGRAPHY" ON MOVANT'S COMPUTERS, iPHONE, [See Doc 184-6 p.7] STORAGE DEVICES, HOME AND 3 CARS, IN A SEARCH AND SEIZURE, [MOVANT WAS NEITHER FOUND TO HAVE RECEIVED, DISTRIBUTED, POSSESSED, HAD INTENT TO VIEW, NOR ANY OTHER INTEREST IN "CHILD PORNOGRAPHY."] — THE GRAND JURY CHARGED MOVANT WITH PRODUCTION OF UNSPECIFIED "CHILD [Id.] PORNOGRAPHY" CONCERNING S.F. AND COERCION AND ENTICEMENT OF A MINOR TO ENGAGE IN A CHARGEABLE PREDICATE OFFENSE NOT NAMED. WHILE THE SIXTH AMENDMENT ISSUE OF ADEQUATE NOTICE IS READILY APPARENT, IT IS THE FIFTH AMENDMENT RIGHT UNDER THE GRAND JURY AND DUE PROCESS CLAUSES THAT ARE THE SUBJECT OF TRIAL COUNSEL GAINOR'S INEFFECTIVENESS, BY FAILING TO OBJECT WHEN PREJUDICE WAS MOUNTING AND CAUSED THE TRIAL TO BE FUNDAMENTALLY UNFAIR.

5. THE COURT UNDERSTOOD THAT THE DISMISSAL OF PRODUCTION IN COUNT TWO POSED A PROBLEM WITH THE AUTHORITATIVELY PRE-DETERMINED "CHARGEABLE" PREDICATE OFFENSE "OPTION" IN COUNT ONE. "WE HAVE TO TAKE OUT PRODUCTION OF CHILD PORNOGRAPHY." [T-TR. p.287@1-7.] THE COURT UNDERSTOOD THAT 18 U.S.C. §2427 PROVIDES FOR "PRODUCTION OF CHILD PORNOGRAPHY AS DEFINED IN SECTION 2256(8)" TO BE THAT UNDERLYING PREDICATE SEX CRIME WHICH "CAN BE CHARGED." IF "PRODUCTION OF CHILD PORNOGRAPHY" WITH S.F. LACKS PROBABLE CAUSE IN COUNT TWO — (AND WAS PROVEN TO HAVE BEEN COMMITTED BY SOMEONE ELSE) — HOW THEN, CAN "PRODUCTION OF CHILD PORNOGRAPHY" WITH S.F. BE THE "PREDICATE OFFENSE, ELEMENT, NOT A MEANS" IN COUNT ONE AND BE PROVEN BEYOND A REASONABLE DOUBT? [See Doc. 221 Apx. G-6. p.20@n.2.] [Id.] UNDER THE LAW OF THE CASE, UNDER TENTH CIRCUIT PRECEDENT IN ¶II, UNDER CONTROLLING AUTHORITY IN UNITED STATES v MANNAVA, 565 F.3d 412 (10TH CIR. 2008), AND WITH IDENTICAL FACTUAL PARTICULARS IN THE TWO COUNTS, THE GOVERNMENT KNEW AT THE TRIAL HEARING AND UNDERSTANDS NOW — IT CANNOT.

6. THE PROSECUTOR HAD A CHOICE: TO CONCEDE THAT "PRODUCTION OF CHILD PORNOGRAPHY" CANNOT BE PROVEN BEYOND A REASONABLE DOUBT IN COUNT ONE WHEN IT WAS DISMISSED FOR LACK OF EVIDENCE TO SHOW PROBABLE CAUSE IN COUNT TWO; OR BLUR THE LINES OF LIABILIM TO THE COURT. "UNDER 2427..." THE PROSECUTOR STATES, "THAT STATUTE DOES INCLUDE THE ATTEMPT TO COMMIT." T.TR. p. 289 @ 8-11. IT DOES NOT. READING ALOUD, THE PROSECUTOR CONTINUES: "WITH REGARD TO UNITED STATES CODE SECTION 2427, IT INSTRUCTS... — — ONE MOMENT PLEASE." Id. @ 16-18. DESPITE AN OBLIGATION TO CORRECT THIS MISSTATEMENT OF LAW TO THE COURT, THE PROSECUTOR REMAINED SILENT. AND DESPITE MOVANT'S BEST EFFORT TO SCRIBBLE ON A POST-IT NOTE TO COUNSEL THAT "2427 DOES NOT INCLUDE ATTEMPT," TRIAL COUNSEL SET IT ASIDE AND REMAINED SILENT. THE TRIAL WAS ABOUT TO BECOME FUNDAMENTALLY UNFAIR AND DEFENSE COUNSEL REFUSED TO OBJECT TO THE MISAPPLICATION OF §2427. SEE GROUND ELEVEN AT ¶¶ 3,7,8.

7. "THE PREDICATE OFFENSE CONTEMPLATED IN 2422 IS AN ELEMENT, NOT A MEANS." Apx G-6. Doc. 221 p. 20, n.2. THE LIABILITY CREATED BY 18 U.S.C. §2422(b) DEPENDS ON THE DEFENDANT HAVING VIOLATED ANOTHER STATUTE, AND THE ELEMENTS OF THE OFFENSE UNDER THAT OTHER STATUTE [§2251(a)] MUST THEREFORE BE ELEMENTS OF THE FEDERAL OFFENSE IN ORDER TO PRESERVE THE REQUIREMENT FOR JURY UNANIMITY." MANNAVA. T.TR. p. 289 @ 21 ADMITTEDLY "TRIPPED UP" BY THE DISTINCTION BETWEEN THE UNDERLYING PREDICATE OFFENSE BEING AN "ELEMENT" REQUIRING PROOF, AND THE GOVERNMENT'S NOVEL LEGAL THEORY WHICH TRUNCATES ACTUS REUS ("TO ENGAGE IN") FROM THE STATUTE TO BROADEN LIABILITY TO MERELY REQUIRE PROOF OF "ENTICEMENT WHETHER THAT WAS COMPLETED," THE COURT p. 290 @ 1-4 PROCEEDED TO DISMISS PRODUCTION OF CHILD PORNOGRAPHY IN COUNT TWO, WHILE PERMITTING IT TO BE ELECTED THE PREDICATE "SEXUAL ACTIVITY FOR WHICH ANY PERSON CAN BE CHARGED A CRIMINAL OFFENSE" IN COUNT ONE. p. 289 @ 4 - 290 @ 14 TRIAL COUNSEL FAILED TO OBJECT. THE "ELEMENTS" OF THE DISMISSED OFFENSE "MUST THEREFORE BE ELEMENTS OF THE FEDERAL OFFENSE" IN COUNT ONE, "TO PRESERVE THE REQUIREMENT FOR JURY UNANIMITY." MANNAVA; Doc. 221 p. 20 & n. 2. THUS, THE ELEMENTS OF PRODUCTION OF CHILD PORNOGRAPHY AT §2251(b) WERE NOT PRECLUDED, DESPITE THE COURT'S ORDER DISMISSING THE SUBSTANTIVE OFFENSE IN COUNT TWO FOR THE REASON THAT, WHEN ASKED IF "ANY EVIDENCE" COULD SUPPORT THE CHARGE, THE GOVERNMENT T.TR. 286 @ 4 - 290 @ 13. WAIVED THE ANSWER — CONCEDING IN EFFECT TO HAVING NO EVIDENCE TO PROVE COUNT ONE'S PREDICATE ELEMENT.

PREJUDICE

8. BEING AN OBVIOUS PROCEDURAL ERROR.; SINCE THE DISMISSAL WAS FOR INSUFFICIENCY OF THE EVIDENCE WITH JEOPARDY ATTACHED AND SO REQUIRED SUCH PRECLUSION, TRIAL COUNSEL HAD OPTIONS: (1) TO MOVE TO REQUIRE THE FACTUAL ELEMENTS OF THE DISMISSED OFFENSE BE PRECLUDED FROM USE IN PROVING COUNT ONE; (2) TO MOVE TO DISMISS THE INDICTMENT FOR THE PREJUDICIAL HARM CAUSED BY THE AMMENDING OF THE INDICTMENT DURING TRIAL AND WITHOUT MOVANT'S CONSENT; (3) TO SUPPLEMENT COUNSEL'S "MOTION TO DISMISS WITH THESE NEW FACTS," AS HE INTENDED BEFORE THE DISMISSAL AND SUBSEQUENT LEGAL ISSUES THAT THAT DISMISSAL CAUSED; (4) OR WAIT UNTIL THE PRELIMINARY JURY INSTRUCTIONS ARE READ ALOUD TO THE JURY, CITING THE JURY'S REQUIREMENT TO DECIDE WHETHER THE MOVANT WAS GUILTY OF THE PREDICATE OFFENSE OF "PRODUCING CHILD PORNOGRAPHY" WITH S.F. UNDER THE SAME FACTUAL BASES AND IDENTICAL ELEMENTS OF THE CHARGE DISMISSED WITH PREJUDICE AND JEOPARDY ATTACHED IN COUNT TWO, THEN CALL FOR A MISTRIAL ON GROUNDS THAT SUCH CONTEMPLATION HAS PLACED THE DEFENDANT "TWICE...IN JEOPARDY" OF THE CRIME OF PRODUCTION OF CHILD PORNOGRAPHY UNDER THE COMPLETED THEORY — UNDER AN IDENTICAL FACTUAL BASIS AS HE HAD BEEN ABSOLVED.

*T.TR. P.283@11-284@16*

PREJUDICE

9. TRIAL COUNSEL'S FAILURE TO ACT UNDER SUCH A WINNING STRATEGIC POSITION WAS "OBJECTIVELY UNREASONABLE," UNDER STRICKLAND v WASHINGTON, PREJUDICING THE MOVANT AT TRIAL. HAD MR. GRINOR: (1) INSISTED THE FACTUAL ELEMENTS RESPONSIBLE AND ESSENTIAL FOR THE DISMISSED OFFENSE BE PRECLUDED FROM USE, THE JURY WOULD NOT HAVE FOUND A PREDICATE OFFENSE TO UNDERLIE COUNT ONE AND THE "OUTCOME WOULD HAVE BEEN DIFFERENT"; (2) MOVED TO DISMISS THE UNCONSTITUTIONALLY AMENDED INDICTMENT — EITHER WAY — THE OUTCOME WOULD LIKELY HAVE BEEN DIFFERENT... A DISMISSAL OF COUNTS 1 AND 2 OR A DISPOSITION ON THE MERITS IN COUNT 2 WITH EVIDENCE PROVING ACTUAL INNOCENCE; (3) SUPPLEMENTED HIS ORIGINAL MOTION TO DISMISS — AT A MINIMUM — GETTING "PRODUCTION" REMOVED AS AN OPTION FOR THE PREDICATE IN COUNT ONE, LEAVING NO ACCEPTABLE PREDICATE AND THE OUTCOME WOULD BE DIFFERENT; AND (4) CALLING A MISTRIAL ON GROUNDS OF DOUBLE JEOPARDY WOULD HAVE LED TO THE MOVANT'S LIBERTY BY JURY ACQUITTAL IN COUNTS 3 AND 4 AND THE GOVERNMENT RETURNING TO THE GRAND JURY — A VERY DIFFERENT OUTCOME.

*466 US 688 (1984)*

*ID.*

10. TRIAL COUNSEL'S FAILURE TO OBJECT TO PROCEDURAL ERROR WHICH CAUSES SUBSTANTIAL PREJUDICE TO THE DEFENDANT CONSTITUTES CAUSE IN A COGNIZABLE CLAIM AT 28 U.S.C §2255. See United States v Bass, 310 F.3d 321 (5th Cir. 2012); United States v Jones, 403 F.3d 604 (8th Cir. 2005). "DEFAULT OF AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS EXCUSED WHEN THE DEFENDANT'S TRIAL LAWYER ALSO PROSECUTED THE APPEAL". Lambright v Stewart, 220 F.3d 1022 (9th Cir. 2000). THIS IS SO, BECAUSE "TRIAL COUNSEL IS NOT REQUIRED TO RAISE HIS OWN INEFFECTIVENESS ON APPEAL." Nichols v United States, 75 F.3d 1137 (7th Cir. 1996).

11. UNDER FUNDAMENTALLY UNFAIR TRIAL PROCEDURE, TRIAL COUNSEL GAINOR WAS OBJECTIVELY UNREASONABLE FOR PERMITTING OPPORTUNITY AFTER OPPORTUNITY TO ACT OR OBJECT AND RECEIVE A FAVORABLE RESULT, PASS. WHERE REASONABLE TRIAL COUNSEL WOULD HAVE DONE SO AND NO STRATEGY FOR WAIVING OBJECTIONS LISTED IN ¶8, EXISTED, MOVANT WAS DENIED HIS RIGHT TO "EFFECTIVE ASSISTANCE OF COUNSEL" UNDER THE SIXTH AMENDMENT GUARANTEE. Strickland v Washington 466 U.S. 688 (1984). SUCH DENIAL OF COUNSEL PREJUDICED MOVANT AS DETAILED IN ¶9. BUT FOR COUNSEL'S ERRORS, THERE IS A REASONABLE LIKELIHOOD THAT THE OUTCOME WOULD HAVE BEEN DIFFERENT... AT HARM OF LIBERTY. THE COURT SHOULD HOLD AN EVIDENTIARY HEARING TO DETERMINE WHETHER COUNSEL'S ASSISTANCE WAS CONSTITUTIONAL UNDER THE CLAIMS MADE HEREIN AND TO DETERMINE WHETHER A NEW TRIAL IS CONSTITUTIONAL.

# GROUND THREE

AO 243 (Rev. 01/15)

APPELLATE COUNSEL'S FAILURE TO RAISE THE ISSUE OF A PREJUDICIAL
AND UNCONSTITUTIONAL SPECIAL VERDICT FORM AMOUNTED TO

INEFFECTIVE ASSISTANCE.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE NEXT PAGE

(b) Direct Appeal of GROUND THREE

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

APPELLATE AND TRIAL COUNSEL WERE THE SAME. INEFFECTIVENESS OF APPELLATE
COUNSEL FOR FAILING TO RAISE THE ISSUE CONSTITUTES "CAUSE" UNDER WAINWRIGHT v SYKES
433 US 72 (1977)

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?
Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?
Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes ☐   No ☐

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue:

1. ISSUES RAISED BUT NOT ADDRESSED ARE NOT BARRED UNDER THE PROCEDURAL DEFAULT RULE, "BECAUSE THE PRISONER 'FILED' HIS MOTION... AND HE COULD NOT HAVE ANTICIPATED THAT HIS CLAIM WOULD NOT BE CONSIDERED." FORGY V. NORRIS, 64 F.3d 399 (8th cir. 1995). LIKEWISE, MOVANT "COULD NOT HAVE ANTICIPATED THAT HIS CLAIM OF "ATTORNEY CONFLICT" FILED ON APRIL 29, 2018 (Rcv'd. May 2) AHEAD OF THE GOVERNMENTS APPELLATE ANSWER BRIEF "WOULD NOT BE CONSIDERED." Id. Appl. case 17-1197 Doc. 01019985126. IN A SUPPLEMENTARY BRIEF RAISED IN PROPRIA PERSONA, MOVANT/PETITIONER CLAIMED "INDICTMENT FAILED TO INFORM NATURE AND CAUSE OF UNDERLYING OFFENSES" AND "INVALID VERDICT FORM" ISSUES. Id. Doc. 01019985125, p. 5-7 @ "e"; AND p.16-18 @ "g"; ALSO SEE "SECOND NOTICE OF ATTORNEY CONFLICT" AND "REQUEST LEAVE TO SUPPLEMENT THE BRIEF;" Doc. 01011090673; DETAILING CONFLICT AND ADVERSE COUNSEL; (11/27/2018). AS A RESULT OF THE OBJECTION AND PRESERVATION, BOTH THE ISSUE OF INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AND THE SUPPLEMENTAL ISSUES RAISED, ARE RIPE AND COGNIZABLE UNDER COLLATERAL REVIEW.

2. SINCE ADEQUATE NOTICE OF THE NATURE AND CAUSE OF THE PREDICATE IN COUNT ONE WOULD HAVE PRECLUDED ANY NEED FOR THE TRIAL JURY TO ELECT THE PREDICATE OFFENSE, THE TWO ISSUES ARE INHERENTLY CONNECTED. AND WHILE THE FAILURE TO INFORM PREJUDICED MOVANT THROUGHOUT THE TRIAL, SINCE DEFENSE COUNSEL WAS SPREAD THIN TO COVER ALL POSSIBLE ELECTIONS FOR THE OFFENSE, PREJUDICE WAS COMPOUNDED BY TWO AUTHORITATIVELY PRE-DETERMINED OPTIONS FOR THE OFFENSE WHICH "CAN BE CHARGED," NOT ACTUALLY BEING "CHARGEABLE" AGAINST THE MOVANT: (A) "PRODUCTION OF CHILD PORNOGRAPHY" WAS DISMISSED FOR NO EVIDENCE TO SUPPORT PROBABLE CAUSE; AND (B) "SEXUAL INTERCOURSE WITH A MINOR UNDER COLORADO LAW" LACKED ANY EVIDENCE OF TRAVEL TO COLORADO OR CRIMINAL SOLICITATION OF A SEX ACT UNDER COLORADO LAW.

3. IN A REMARKABLY SIMILAR CASE, THE SUBSTANTIVE OFFENSE "WAS WITHDRAWN ON THE DAY OF TRIAL." FORGY. THE CHARGING DOCUMENT WAS AMENDED TO ATTEMPT, YET "STILL FAILED TO SPECIFY THE CRIME FORGY ALLEGEDLY INTENDED TO COMMIT." Id. CONTINUING THE PARALLEL; "AS THE TRIAL WENT FORWARD, IT WAS AN OPEN QUESTION WHETHER [ISABELLA] WAS BEING TRIED FOR [PERSUADING S.E.] WITH THE INTENT TO [ENGAGE IN SEXUAL INTERCOURSE OR [PERSUADING S.E.] WITH THE INTENT TO COMMIT ATTEMPTED [PRODUCTION OF CHILD PORNOGRAPHY]." FORGY @ 402.

4.  "IF THE STATE HAD CHARGED FORGY WITH ENTERING A RESIDENCE WITH THE INTENT TO ATTEMPT TO COMMIT THEFT. HE WOULD HAVE HAD A LEGAL ARGUMENT THAT THERE IS NO SUCH THING AS AN 'INTENT TO ATTEMPT.'" FORGY @ 402. HAD THE *MOVANT'S* INDICTMENT CHARGED COERCION AND ENTICEMENT [OR ATTEMPTED COERCION AND ENTICEMENT] WITH THE PREDICATE OFFENSE LISTED AS ATTEMPTED PRODUCTION OF CHILD PORNOGRAPHY — (IF §2427 DID PROVIDE FOR ATTEMPT AS THE PROSECUTOR MISSTATED) — THEN THE *MOVANT* "WOULD HAVE HAD A LEGAL ARGUMENT THAT THERE IS NO SUCH THING AS AN 'INTENT TO ATTEMPT'" —OR BEYOND... AN ATTEMPT TO ATTEMPT. T.TR. p.289 @ 4-18; §2427; FORGY. "THE REFINEMENT AND METAPHYSICAL ACUMEN THAT CAN SEE A TANGIBLE IDEA IN THE WORDS 'AN ATTEMPT TO ATTEMPT TO ACT' IS TOO GREAT FOR PRACTICAL USE. IT IS LIKE CONCEIVING OF THE BEGINNING OF ETERNITY OR THE STARTING POINT OF INFINITY." WILSON v STATE, 53 GA. 205 (1874).

5.  BECAUSE THE GRAND JURY FAILED TO CHARGE A PREDICATE OFFENSE ELEMENT IN COUNT ONE — TO WHICH MOVANT WOULD PREPARE A DEFENSE — THE PETIT JURY'S SUBSEQUENT ELECTION OF THAT CHARGE OF OFFENSE (UNDERLYING) FATALLY DESTROYED MOVANT'S CONSTITUTIONAL RIGHT TO BE INFORMED "NATURE AND CAUSE," SINCE THE OFFENSE REMAINED AN "OPEN QUESTION" UNTIL THE READING OF THE VERDICT. SIXTH AMEND.; FORGY. "AS IT WAS, HIS DEFENSE WAS PREJUDICED BY THE [INDICTMENT'S] LACK OF SPECIFICITY. WE THEREFORE HOLD THAT HIS CONSTITUTIONAL RIGHT TO NOTICE OF THE CHARGES AGAINST HIM WAS VIOLATED, AND WE DIRECT THE DISTRICT COURT TO ISSUE A WRIT OF HABEAS CORPUS RELEASING HIM." FORGY @ 403.

6.  HAVING BEEN THE TRIAL ATTORNEY, MR. GAINOR, AS APPELLATE COUNSEL, KNEW ALL TOO WELL HOW THE SPECIAL VERDICT FORM'S INTERROGATORIES CAUSED PREJUDICE IN A VARIETY OF WAYS. IN FACT, HE WAS IN THE BEST POSITION FOR UNDERSTANDING HOW THE SHIFTING NATURE OF THE OFFENSE AND ALTERNATIVE ELEMENTS OF A "MINOR'S ASSENT," "SEXTING," AND "GROOMING," EITHER "CHILD PORNOGRAPHY" OR "SEXUAL INTERCOURSE" KEPT HIM GUESSING WHAT THE FINAL OFFENSE WOULD BE. BUT DESPITE HIS UNDERSTANDING HOW THIS CAUSED THE TRIAL TO BE FUNDAMENTALLY UNFAIR, HE ALSO KNEW THAT, AS APPELLATE COUNSEL, HE WAS "NOT REQUIRED TO RAISE HIS OWN INEFFECTIVENESS ON APPEAL." NICHOLS v UNITED STATES 75 F.3d 1137 (7th 1996

7. THE TENTH CIRCUIT HAS HELD THAT "[A] DEFENDANT CANNOT WAIVE HIS RIGHT TO CHALLENGE AN INDICTMENT UPON ITS FAILURE TO CHARGE AN OFFENSE. FED. R. CRIM. P. 12(b)(2)." UNITED STATES v HATHAWAY, 318 F.3d 1001 (10TH CIR. 2003). "AN INDICTMENT IS SUFFICIENT IF IT SETS FORTH THE ELEMENTS OF THE OFFENSE CHARGED...; IN WORDS OF THE STATUTE ITSELF, AS LONG AS THOSE WORDS THEMSELVES FULLY, DIRECTLY, AND EXPRESSLY, WITHOUT ANY UNCERTAINTY OR AMBIGUITY, SET FORTH ALL THE ELEMENTS NECESSARY TO CONSTITUTE THE OFFENCE INTENDED TO BE PUNISHED." Id. @ 1009 (QUOTATIONS OMITTED). THE COURT IN HATHAWAY DECIDED THAT, BECAUSE "[THE INDICTMENT []] FAILED TO ALLEGE A REQUIRED AND ESSENTIAL ELEMENT OF THE FELONY CRIME — ... IT CONTAINED NO ALLEGATION OF PHYSICAL CONTACT... — ... THIS INDICTMENT DID NOT SET FORTH ALL THE ELEMENTS." Id. @ 1009-1010. IT FAILED TO GIVE HATHAWAY NOTICE OF THE "NATURE OF THE ASSAULT." Id. IN THE INSTANT CASE, THE INDICTMENT FAILED TO ALLEGE "SEXUAL INTERCOURSE WITH A MINOR... UNDER COLORADO LAW" OR "PRODUCTION OF CHILD PORNOGRAPHY" — "AS DEFINED IN SECTION 2256(8)." DOC. 1 P.1-2; APPX E. 18 U.S.C. §2427. WHILE ADHERING TO THE "WORDS OF THE STATUTE ITSELF" IT FAILED TO "SET FORTH ALL OF THE ELEMENTS NECESSARY" TO CONVICT. HATHAWAY. IF THE PREDICATE OFFENSE ELEMENT IN COUNT ONE WERE NOT "NECESSARY" THEN THERE WAS NO REASON TO REQUIRE JURY UNANIMITY. Id. AND IF THE PREDICATE OFFENSE ELEMENT "FOR WHICH ANY PERSON CAN BE CHARGED A CRIMINAL OFFENSE" HAD BEEN "SET FORTH," INCLUDING THE "NATURE" OF THAT OFFENSE, THEN THERE WOULD BE NO NEED FOR THE TRIAL JURY TO ELECT THE CHARGE OF (UNDERLYING) CONVICTION AT 1B OF THE VERDICT FORM. DOC. 224; 1B §2422(b); HATHAWAY.

PREJUDICE

8. THE INDICTMENT'S LACK OF SPECIFICITY REGARDING THE "NATURE AND CAUSE" OF THE PREDICATE OFFENSE ELEMENT KEPT DEFENSE COUNSEL GUESSING — LITERALLY TRYING TO READ THE MINDS OF THE JURY AS TO WHICH PREDICATE OFFENSE "OPTION" THE JURY'S INCLINATION WAS LEANING TOWARD, IN ORDER TO STRENGTHEN DEFENSE ONE WAY OR ANOTHER. SIXTH AMENDMENT; DOC.1 P.1-2 APPX E, 1B. DOC. 224 APX G. THIS PREJUDICED THE MOVANT THROUGHOUT THE TRIAL, MAKING IT FUNDAMENTALLY UNFAIR, SINCE DEFENSE COUNSEL COULD ONLY BE SURE OF WHETHER TO FOCUS DEFENSE ARGUMENT ON COMPLETED SEXUAL INTERCOURSE WITH S.F. IN COLORADO, ATTEMPT TO TRAVEL, OR SOME UNSPECIFIED PHOTO OF CHILD PORNOGRAPHY WITH S.F. — UPON THE READING OF THE VERDICT.

9. THE PROSECUTOR SUMMARIZED TO THE JURY, THAT THE MOVANT HAD "REPEATEDLY AND CONSISTENTLY ENCOURAGED [S.F.] TO TAKE **SEXUALLY-EXPLICIT** PICTURES OF HERSELF." T.TR. p.2330 @ 71-13. AND YET THE GOVERNMENT CANNOT SHOW A SINGLE INSTANCE WHERE THIS OCCURRED, LET ALONE "REPEATEDLY AND CONSISTENCY." "SEXUALLY EXPLICIT CONDUCT" HAS BUT ONE DEFINITION WITHIN FEDERAL LAW — VERY CAREFULLY DECIDED UNDER _Miller v California_ AND CODIFIED AT 18 U.S.C. §2256(2)(A). THERE CANNOT BE "CHILD PORNOGRAPHY" WITHOUT SUCH CONDUCT, SINCE THE DEFINITION OF "CHILD PORNOGRAPHY" AT §2256(8) IS FULLY RELIANT UPON THE DEFINITION OF "SEXUALLY EXPLICIT CONDUCT" AT §2256(2). THE RECORD SHOWS THE PROSECUTOR'S SUMMARY TO THE JURY WAS A MISSTATEMENT OF BOTH FACT AND LAW.

PREJUDICED

10. NEITHER "SEXTING," NOR "EXCHANGE OF NUDE PICTURES," NOR "GROOMING," NOR A "MINOR'S ASSENT," NOR "MERE NUDITY," NOR "TEEN EROTICA," CAN VIOLATE §2256(2); UNLESS IT ALSO INCLUDES, EITHER SEXUAL INTERCOURSE, ORAL SEX, BESTIALITY, SADO-MASOCHISM, MASTURBATION, OR GENITALIA DEPICTED IN A MANNER DEEMED "LASCIVIOUS" AT LAW. AND, THE TARGET OFFENSE BEING §2251(a), **THAT CONDUCT MUST BE FOR THE PURPOSE OF PRODUCING** "CHILD PORNOGRAPHY" AT §2256(8). WHEN §2251(a) IS THE PREDICATE OFFENSE ELEMENT — AS UNANIMOUSLY DECIDED BY THE JURY — "THE ELEMENTS OF [§2251(a)] BECOME ELEMENTS OF §2422(b) TO PRESERVE THE REQUIREMENT FOR JURY UNANIMITY." _UNITED STATES v MANNAVA_. SINCE THE JURY DID ELECT "PRODUCTION" TO BE THAT PREDICATE IN COUNT ONE, AND SINCE THERE IS NO ACTUAL ENGAGING IN "SEXUALLY EXPLICIT CONDUCT" ON RECORD, NOR ANY SINGLE OVERT ACT WHICH NECESSARILY OR AVTOMATICALLY CAUSES SUCH CONDUCT, THE JURY MUST HAVE RELIED ON CONDUCT OTHER THAN "SEXUALLY EXPLICIT" IN DRAWING THEIR ULTIMATE CONCLUSION. THE INTERROGATORIES ON THE SPECIAL VERDICT FORM MERELY GUIDED THEIR DECISION THAT CONDUCT WAS FOUL BY THE QUESTION POSED — CHECK HERE IF HE COMPLETED SEXUAL INTERCOURSE WITH S.F — HERE, IF HE PRODUCED CHILD PORNOGRAPHY... AND IF HE COMPLETED THAT ACT, DID HE ALSO ATTEMPT TO COMPLETE IT? SEE APP'x G: Doc 224 @ 18 and 28. "[E]VIDENCE THAT ONLY PLACES THE DEFENDANT IN A CLIMATE OF ACTIVITY THAT REEKS OF SOMETHING FOUL IS INSUFFICIENT TO SHOW HIS CRIMINAL KNOWLEDGE." _UNITED STATES v RAHSEPARIAN_, 231 F.3d 1257 (10th CIR. 2000). SEXTING WITH A MINOR WAS SUFFICIENT TO FIND MOVANT GUILTY OF SOMETHING.

11. Movant was ultimately convicted by conduct not appearing in the Indictment and not contemplated by the federal statutes thereunder. "The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to [(only)] offenses charged by a group of his fellow citizens acting independantly of either prosecution attorney or judge." Russell v. United States, 369 U.S. 749 (1962). Non-Statutory Non-Indicted Conduct relied upon to convict and to sustain conviction included:

   a.) "Sexting" with a minor — a misdemeanor at 47 U.S.C. §223(a)(1); "Sexualization of their communications," Isabella @ 836; also "requests for pictures" and "their three-month relationship."

   b.) "Exchange of nude photos," Id. — Federally proscribed when "obscene" at 18 U.S.C. §1470, i.e. depicting masturbation

   c.) "Grooming" — too preparatory to be proscribed; an unvalidated phenomenon. SEE State v Henley, SC 5064474 (1/11/11) Also SEE Movant's analysis at SCOTUS #19-7775, Question III., pages 32-40.

   d.) A "minor's assent" without the actus reus "to engage" — Government's novel legal theory; heavy in dicta; but without a single case authority showing §2422(b) "completed" * without the actus reus — engaging in the predicate sexual activity charged in underlying. Only Isabella is on-point

   e.) "Mere nudity" or "teen erotica" — allegedly implied by Movant's "pic now" and "send a somewhat naughty pic that includes a face," the two acts named by the panel; as "sufficient circumstantial evidence of a substantial step." Isabella @ 836; 834 SEE §2256(2),(8); Not proscribed federally, without violating §2256(2) or (8); Miller v California, 413 U.S. 15 (1973).

   * — Attempt at §2422(b) is not arguable under 28 U.S.C. §2255, due to no standing.

12. The Government cannot name a single overt act of such substantiability as to necessarily or automatically cause S.F. to engage in "sexually explicit conduct" actually. §2256(2)(A). see Neither can the Government identify any overt act of such substantiability as to carry an expectation that an influenced photo of S.F. "will be" in violation of 18 U.S.C. §2256(2) and so would be "child pornography," at §2256(8). Thus, the Government's reliance solely on proving conduct NOT listed by Indictment, NOT presented to the grand jury, and NOT elements of the charged defenses by statute, so blurred the lines of liability to the jury — in a difficult area of law as to add to the confusion already present in the Verdict Form's Interrogatories. SEE T.TR. p. 1527@1 1528@1.

PREJUDICE

13. HAD MOVANT ACTUALLY ENGAGED IN SEXUAL INTERCOURSE UNDER COLORADO LAW,* HAD ACTUALLY ATTEMPTED TO TRAVEL TO COLORADO, HAD ACTUALLY SOLICITED S.F. TO ENGAGE IN SEXUALLY EXPLICIT CONDUCT, OR HAD ACTUALLY PRODUCED A PHOTOGRAPH DEPICTING SUCH CONDUCT, THEN THE INTERROGATORIES ON THE VERDICT FORM MIGHT BE CONSIDERED HARMLESS OR EVEN HELPFUL TO THE JURY. BUT AS THE JUROR READS AND QUESTIONS AND ANSWERS EACH SUCCESSIVE QUESTION, THE MOVANT IS PLACED IN AN INCREASINGLY STRONGER LIGHT OF CRIMINAL CONDUCT. BUT MORESO — SINCE ENGAGING IN SEXUAL INTERCOURSE; ORAL SEX OR PRODUCING CHILD PORNOGRAPHY ARE CONSIDERABLY MORE SERIOUS THAN THE "PHOTO EXCHANGES" AND "SEXUALIZATION" OF CHATS THAT IS COMMON "SEXTING." WE KNOW THIS BY THE PUNISHMENT ASCRIBED. PRODUCING "CHILD PORNOGRAPHY" DEFINED AT 18 U.S.C §2256(8) IS THE MOST SERIOUS OF ALL CHILD PORNOGRAPHY OFFENSES, CARRYING A FIFTEEN-YEAR MANDATORY SENTENCE. §2251(e) WHEREAS, SEXTING WITH A MINOR AT 47 U.S.C §223(A)(1)(B)(i), FOR EXAMPLE, USING COMMUNICATIONS TO "MAKE... ANY COMMENT, REQUEST, SUGGESTION, PROPOSAL, IMAGE, OR OTHER COMMUNICATION WHICH IS OBSCENE OR CHILD PORNOGRAPHY, KNOWING THAT THE RECIPIENT OF THE COMMUNICATION IS UNDER 18 YEARS OF AGE ... SHALL BE FINED UNDER TITLE 18, UNITED STATES CODE, OR IMPRISONED NOT MORE THAN TWO YEARS, OR BOTH. *MOVANT NEVER WAS NOTICED OF THE COLORADO STATUTE OF HIS JEOPARDY.

PREJUDICE

14. HAD "SEXTING WITH A MINOR — (WITHOUT MORE)" BEEN LISTED AS A POTENTIAL PREDICATE OFFENSE IN COUNT ONE, THERE IS A SIGNIFICANT LIKELIHOOD ONE OR MORE JURORS WOULD HAVE ELECTED THIS OPTION RATHER THAN PRODUCTION OF CHILD PORNOGRAPHY — ESPECIALLY UNDER THE COMPLETED THEORY IN COUNT ONE, THE CRIME OF CONVICTION AND SENTENCE BEING RECONSIDERED HEREWITH. IT BETTER DESCRIBES THE ACTUAL CULPABLE CONDUCT. "HE REPEATEDLY AND CONSISTENTLY REQUESTED" [PHOTOS AND ENGAGED IN SEXTING BEHAVIORS] ... BUT NOT AT ANY TIME, "SEXUALLY EXPLICIT PHOTOS." T.TR. p. 2330 @ 11-13. SINCE THE STATE OF COLORADO HAS SINCE PASSED A LAW CONCERNING "SEXTING WITH A MINOR" THERE IS DEBATE AS TO WHETHER A GRAND JURY WOULD NAME THAT A PREDICATE AT §2422(b) OR "SHOULD" DO SO. SEE JUDGE POSNER'S INSIGHTFUL ANALYSES IN UNITED STATES V MANNAVA, 565 F.3d 412 (7TH CIR. 2009) AND UNITED STATES V TAYLOR, 640 F.3d 255 (7TH CIR. 2011); BOTH OF WHICH EXPLAIN THE INTRICACIES OF THE PREDICATE (UNDERLYING) OFFENSE AT §2422(b) AND THE REQUIREMENTS FOR THAT ELEMENT — REJECTING SEXTING AND VIRTUAL SEX ACTS WITH INTENT.

PREJUDICE:

**15.** INTERROGATORIES ON THE VERDICT FORM OFFENDED THE CONSTITUTION AND PREJUDICED THE *Movant.*  Doc.224 Apx G. @ 18,28.

A. WHEN THE PREDICATE OFFENSE ELEMENT IN COUNT ONE WAS ELECTED BY THE PROSECUTING JURY AT TRIAL, RATHER THAN BY THE ACCUSATORY GRAND JURY, *Movant's* FIFTH AMENDMENT RIGHT OF PROTECTION WAS CIRCUMVENTED.   SEE ¶¶9; RUSSELL V UNITED STATES

B. WHEN THE "NATURE AND CAUSE" OF THE PREDICATE DEFENSE ELEMENT WAS WITHHELD UNTIL THE TRIAL JURY DELIBERATED THE CASE, *Movant's* SIXTH AMENDMENT RIGHT TO BE INFORMED TO ADEQUATELY PREPARE A DEFENSE WAS VIOLATED.   ¶¶7+8.

C. WHEN THE COURT AUTHORITATIVELY PRE-DETERMINED TWO OFFENSES WHICH "AS A MATTER OF LAW"... "CAN BE CHARGED", THE COURT USURPED THE GRAND JURY'S PRIMARY DUTY, VIOLATING *Movant's* PRESUMPTION OF INNOCENCE OVER DUE PROCESS.

D. WHEN THE COURT "DISMISSED" COMPLETED PRODUCTION AND §2427 DID NOT PROVIDE FOR "ATTEMPT;" NEITHER DID THE JURY ELECT "ATTEMPTED" PRODUCTION, THE COURT'S PERMISSION TO PROCEED EXCEEDED THE RANGE OF THE COURT'S DISCRETION.

E. WHEN THE COURT THEN PERMITTED THAT IDENTICAL "DISMISSED" OFFENSE TO BE ELECTED THE PREDICATE OFFENSE ELEMENT IN COUNT ONE DESPITE NOT BEING A "CHARGEABLE" OFFENSE, *Movant's* RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE WERE VIOLATED; AND FACTUAL ELEMENTS RELATED TO THE DISMISSED CHARGE SHOULD HAVE BEEN COLLATERALLY EXCLUDED.

F. WHEN THE COURT OF APPEALS NOTICED "PRODUCTION OF CHILD PORNOGRAPHY" WITH S.F. WAS BOTH DISMISSED FOR INSUFFICIENCY OF EVIDENCE ("ACQUITTED") AND ELECTED THE PREDICATE OFFENSE ELEMENT IN COUNT ONE, ANY REVIEW   T.TR. P. 290 @ 1-11.
   OF SUFFICIENCY OF EITHER FACTS OR ELEMENTS, PLACED *Movant* THRICE IN JEOPARDY OF PUNISHMENT.   ISABELLA @ 834, 3.

G. WHEN THE COURT INCLUDED COMPLETED SEXUAL INTERCOURSE WITH S.F. AS AN OPTION WHICH "CAN BE CHARGED" AT DOC.224 18, THE INTERROGATORY SUGGESTED TO THE JURY THAT *Movant* COULD BE FOUND GUILTY OF MORE CRIME THAN EVIDENCE COULD PROVE, CAUSING PREJUDICE AT THE MOST CRITICAL POINT IN *Movant's* PROCEEDINGS — THE VERDICT.

H. THE VERDICT FORM INTERROGATORIES INTERFERED WITH THE DELIBERATION PROCESS AND CONFUSED THE JURY AT VERDICT.

**16.** PREJUDICE
THE UNCONSTITUTIONAL VERDICT FORM CAUSED A FUNDAMENTAL DEFECT WHICH HELD THE *Movant* IN AN UNDER-INFORMED AND STRATEGICALLY DISADVANTAGED POSITION THROUGHOUT PROCEEDINGS. THIS LED TO AN UNFAIR TRIAL AND FUNDAMENTALLY UNFAIR DIRECT APPEAL, IRRESPECTIVE OF COUNSEL'S PERFORMANCE. THE "FUNDAMENTAL DEFECT [] INHERENTLY RESULT[ED] IN A COMPLETE MISCARRIAGE OF JUSTICE." HILL V UNITED STATES, 368 U.S. 424 (1962). BUT FOR NUMEROUS UNFAIR ISSUES CAUSING PREJUDICE INDEPENDANTLY AND CUMULATIVELY, COMBINING TO RENDER APPELLATE COUNSEL (AND TRIAL COUNSEL ALIKE), INEFFECTIVE IN A CONTINUALLY SHIFTING FACTUAL AND LEGAL BASE, THERE IS A REASONABLE PROBABILITY THAT THE OUTCOME WOULD HAVE BEEN DIFFERENT. AN EVIDENTIARY HEARING IS NEEDED TO MAKE DETERMINATIONS CONSISTENT WITH THE ISSUES AND TO DETERMINE THE CONSTITUTIONALITY OF A NEW TRIAL.

# GROUND FIVE

· FOR FAILING TO RAISE THE DOUBLE JEOPARDY ISSUE THAT, KEY EVIDENCE BARRED UNDER THE PRINCIPLE OF COLLATERAL ESTOPPEL WAS RELITIGATED TO CONVICT MOVANT, APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE

AO 243 (Rev. 01/15)

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

APPELLATE COUNSEL FAILED TO RAISE THE "ISSUE CENTRAL TO [THE] CASE".
FREEMAN V LANE, 962 F.2d 1254 (7TH CIR. 1992).

SEE NEXT PAGE

(b) Direct Appeal of **GROUND FIVE**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

TRIAL COUNSEL AND APPELLATE COUNSEL WERE SAME. INEFFECTIVE ASSISTANCE IS "EXCUSED" UNDER THE PROCEDURAL DEFAULT RULE. LAMBRIGHT V STEWART 220 F.3d 1022 (9TH 2000)

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

AO 243 (Rev. 01/15)                                                                 Page 6

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

AFTER MOVANT WAS "ADJUDICATED" AS NOT GUILTY FOR THE PRODUCTION OF CHILD PORNOGRAPHY, DUE TO INSUFFICIENCY OF THE EVIDENCE DURING TRIAL, THE GOVERNMENT FAILED TO REFRAIN FROM USING ISSUES DECIDED UNDER THAT ADJUDICATION TO CONVICT THE MOVANT. THE COURT AND THE GOVERNMENT CALLED THE DISPOSITION A "DISMISSAL." T.TR. p.286 @4 - 290@5. THE COURT OF APPEALS CALLED IT AN "AMENDED [] INDICTMENT." ISABELLA @ n.2. BUT "WHATEVER ITS LABEL, [THE LEGAL ACTION] ACTUALLY REPRESENTS A RESOLUTION; CORRECT OR NOT, OF SOME OR ALL OF THE FACTUAL ELEMENTS OF THE OFFENSE CHARGED." UNITED STATES v MILES, 327 Fed. App'x 797 (10TH CIR. 2009). THE SUPREME COURT HOLDS "THE PROTECTION OF THE DOUBLE JEOPARDY CLAUSE BY ITS TERMS APPLIES ONLY IF THERE HAS BEEN SOME EVENT, SUCH AS AN ACQUITTAL, WHICH TERMINATES THE ORIGINAL JEOPARDY." RICHARDSON v UNITED STATES, 468 U.S. 317 (1984). WHETHER CHARACTERIZED AS A "DISMISSAL OF THE INDICTMENT," BECAUSE "THE DISTRICT COURT HAD RELIED UPON FACTS DEVELOPED AT TRIAL" THE "STATUTE SHOULD NOT BE APPLIED TO THE [MOVANT] AS A MATTER OF FACT." UNITED STATES v JENKINS, 420 U.S. 358 (1975). "A DEFENDANT SHOULD NOT BE FORCED TO DEFEND AGAINST CHARGES OR FACTUAL ALLEGATIONS WHICH HE OVERCAME." ASHE v SWENSON, 397 U.S. 436 (1970). "THE DOCTRINE OF COLLATERAL ESTOPPEL IS A BASIC AND ESSENTIAL PART OF THE CONSTITUTION'S PROHIBITION AGAINST DOUBLE JEOPARDY." Id.

THE ISSUE IS COGNIZABLE UNDER 28 U.S.C. §2255. SEE WILKINSON v GINGRICH, 806 F.3d 511 (9TH CIR. 2015); (HABEAS RELIEF GRANTED ON A VIOLATION UNDER THE DOUBLE JEOPARDY PRINCIPLE OF COLLATERAL ESTOPPEL.) AS THIS ISSUE WAS CENTRAL TO THE CASE AND OBVIOUS WITHIN THE TRANSCRIPTS, APPELLATE COUNSEL WAS "OBJECTIVELY UNREASONABLE" FOR THINKING THAT EVIDENTIARY RULINGS WERE MORE MERITORIOUS THAN WAS THE ISSUE THAT ULTIMATE ISSUES OF FACT WERE RELITIGATED AGAINST THE MOVANT FOLLOWING WHAT WAS — IN EFFECT — AN ACQUITTAL. STRICKLAND v WASHINGTON. "THE GOVERNMENT IS PRECLUDED FROM RELITIGATING AN ISSUE DECIDED IN DEFENDANT'S FAVOR BY A VALID FINAL JUDGMENT." UNITED STATES v MESPOULEDE, 597 F.2d 330 (2ND CIR. 1979). BECAUSE FACTS ADJUDICATED IN MOVANT'S FAVOR WERE RELIED UPON TO CONVICT THE MOVANT, APPELLANT COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS ISSUE — MORE MERITORIOUS THAN ISSUES RAISED BY COUNSEL — ON DIRECT APPEAL.

BECAUSE THE GOVERNMENT FAILED TO RESPOND TO THE COURT'S EXPLICIT INQUIRY OF "WHETHER YOU (P.286 @ 18-21)

HAVE ANY EVIDENCE THAT WOULD SUPPORT A COMPLETED PRODUCTION OF CHILD PORNOGRAPHY CHARGE," P-288

- ASKED THREE TIMES — THE GOVERNMENT WAIVES THE ISSUE. THE EVIDENCE PROVING SOMEONE

OTHER THAN THE MOVANT HAD COMMITTED THE CHARGED OFFENSE ESTABLISHED THAT THE "DISMISSAL"

WAS FOR THE REASON OF INSUFFICIENCY OF THE EVIDENCE.  SINCE JEOPARDY HAD ATTACHED

PRIOR TO THE DISMISSAL ON LACK OF EVIDENCE TO SUPPORT THE CHARGE, MOVANT WAS - IN EFFECT -

ACQUITTED.  THE ULTIMATE FACTS OF THAT CONCLUSION ARE AS FOLLOWS:

A.  "FROM ON OR ABOUT SEPTEMBER 1, 2013, THROUGH ON OR ABOUT FEBRUARY 14, 2014";

B.  IN "COLORADO AND ELSEWHERE," "DEFENDANT RANDE BRIAN ISABELLA";

C.  [DID NOT] EMPLOY, USE, PERSUADE, INDUCE, ENTICE, AND COERCE," [MINOR S.F.]";

D.  "TO ENGAGE IN SEXUALLY EXPLICIT CONDUCT";

E.  "FOR THE PURPOSE OF PRODUCING ANY VISUAL DEPICTION OF SUCH CONDUCT";

F.  "KNOWING OR HAVING REASON TO KNOW";

G.  "THAT SUCH VISUAL DEPICTION WILL BE TRANSPORTED"; OR "WAS PRODUCED"; OR "HAS ACTUALLY BEEN UNDER 18 U.S.C. §2251(a);  INDICTMENT - DOC. 1, P. 2; TRANSPORTED;"

H.  "[AND DID NOT] "PLAY A ROLE IN THE PRODUCTION OF" [THE NAKED TORSO PIC OF S.F.]; T-TR. p.286 @11-13;

I.  "SOMEONE OTHER THAN THE DEFENDANT WAS THE SOURCE OF THE PHYSICAL EVIDENCE" [CHILD PORNOGRAPHY]; p.327 @ 20-21;

THE MORE PARTICULARITY AND SPECIFICITY AN INDICTMENT HAS, THE NARROWER THE PRECLUSION.  BECAUSE

THIS INDICTMENT WAS CHARGED AS BROADLY AS POSSIBLE AND STILL BE VALID, UPON PRECLUSION,

THE FACTS, ELEMENTS, AND FACTUAL ISSUES TO BE BARRED FROM USE AGAINST THE MOVANT, IT

IS QUITE BROAD. LOOKING BACK ACROSS THE ULTIMATE CONCLUSION OF FACTS CAUSED BY DISMISSING WITH

JEOPARDY FOR INSUFFICIENCY OF THE EVIDENCE, IT IS DIFFICULT, IF NOT IMPOSSIBLE TO CONCEIVE OF ANY

PATHWAY FOR PROVING ATTEMPTED PRODUCTION OR PRODUCTION AS THE PREDICATE DEFENSE ELEMENT

OF EITHER COUNT, WITHOUT OFFENDING THE CONSTITUTION.

ACCORDINGLY, PREJUDICE IS PER SE IN THE CONVICTIONS OF ATTEMPTED PRODUCTION; AND IN COUNT ONE WITH "PRODUCTION OF CHILD PORNOGRAPHY" NAMED BY THE JURY TO BE THE PREDICATE OFFENSE ELEMENT; SINCE THE FACTUAL PARTICULARS (A. THROUGH G.) ARE THE SAME IN THE COMPLETED (ACQUITTED) CHARGE AS THE ATTEMPT; WHILE THOSE FACTS UNDER THE ACQUITTED CHARGE SUBSUME AND "BECOME ELEMENTS OF" COUNT ONE UPON THAT JURY VOTE. MANNAVA; ¶3. SUMMATION TRANSCRIPTS SHOW THAT THE FACTUAL ELEMENTS OF §2251(a) THE SUBSTANTIVE) WERE RELIED UPON TO PROVE §2251(a) (THE ATTEMPT) WITH NO DIFFERENCE IN FACTUAL BASES. SEE T.TR. p.2331 @10-2335@25. LIKEWISE, ELEMENTS AND FACTS AT §2251(a) (THE SUBSTANTIVE) WERE RELIED UPON TO PROVE §2251(a) ("PRODUCTION OF CHILD PORNOGRAPHY") AS THE PREDICATE OFFENSE (SEXUAL ACTIVITY) ELEMENT OF COERCION AND ENTICEMENT IN COUNT ONE, AND AGAIN WITH NO DIFFERENCE IN FACTUAL BASES. SEE T.TR. p. 2323@6- 2331@9. THE DISPOSITION OF THE SUBSTANTIVE OFFENSE IN THE MOVANT'S FAVOR CAUSED ISSUE PRECLUSION AND FACT PRECLUSION PROPORTIONATE TO THE BROAD NATURE OF THE INDICTMENT. HAD COUNT ONE BEEN SPECIFIC ABOUT A DATE RANGE, PARTICULAR EVENT, OR A DIFFERENT VICTIM, THEN THIS WOULD NOT BE SO. THE PREJUDICE TO THE MOVANT, THEREFORE, IS INHERENT IN THE IDENTICALNESS OF THOSE FACTUAL ELEMENTS. ONCE ADJUDICATED NOT GUILTY OF THE FACTS AND ELEMENTS PARTICULARIZED ON THE INDICTMENT, MOVANT WAS THEN CONVICTED BY THOSE IDENTICAL FACTS AND ELEMENTS.


SINCE THIS ISSUE WAS CENTRAL TO THE CASE AT HAND — OR SHOULD HAVE BEEN — AND WAS OBVIOUS FROM THE RECORD — IF ONLY BY COMPARING THE INDICTMENT TO THE VERDICT FORM — APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE. ISSUES COUNSEL DID RAISE WERE NEITHER STRONGER NOR MORE STRATEGIC THAN WAS THIS KEY ISSUE, AS WAS DETAILED AT GROUNDS ONE, TWO & THREE. WHILE APPELLATE COUNSEL IS "EXCUSED" LAMBRIGHT v STEWART FROM RAISING INEFFECTIVENESS OF TRIAL COUNSEL ON THIS ISSUE, MOVANT HAS SHOWN A DENIAL OF RIGHTS UNDER DOUBLE JEOPARDY'S PRINCIPLE OF COLLATERAL ESTOPPEL AND ITS EFFECT ON DUE PROCESS, AS WELL AS HIS RIGHT TO ASSISTANCE OF APPELLATE COUNSEL THAT CAN RECOGNIZE, RAISE, AND PERFECT AN ISSUE AS OBVIOUS, CLEARLY ERRONEOUS AND IMPORTANT AS WAS THIS ISSUE. BUT FOR COUNSEL'S ERROR THE OUTCOME WOULD BE DIFFERENT.

# GROUND SIX

AO 243 (Rev. 01/15)

BECAUSE MOVANT WAS ADJUDICATED "NOT GUILTY" AND "GUILTY" BY THE SAME CONDUCT, THE SAME FACTUAL PARTICULARS, AT THE SAME TRIAL, AN EVIDENTIARY HEARING IS NEEDED TO DETERMINE WHETHER MOVANT'S CONVICTION IS CONSTITUTIONAL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

THE DENIAL OF RELIEF WOULD BE A "FUNDAMENTAL MISCARRIAGE OF JUSTICE."
MURRAY v CARRIER, 477 U.S. 478 (1986)

SEE NEXT PAGE

(b) Direct Appeal of GROUND SIX

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE. FACTS CONCERNING NATURE OF THE CONVICTION WERE DEVELOPED BY THE OPINION OF THE PANEL. THE LEGAL BASIS TO THIS NOVEL CLAIM IS NOT AVAILABLE IN CASE LAW. BOUSLEY

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

1. THE HONORABLE COURT HAS TWICE ADJUDICATED THE MOVANT IN THE FEDERAL CHARGE OF "PRODUCTION OF CHILD PORNOGRAPHY" (COMPLETED) AT 18 U.S.C. §2251(a). WHEN THE GOVERNMENT VIEWED THE STRENGTH OF THE DIGITAL FORENSIC EVIDENCE PROVING AN "ACTUAL INNOCENCE" DEFENSE, THE GOVERNMENT CONCEDED AND MOVED TO DISMISS, LEST THE JURY VIEW THE DEFENDANT IN SUCH A FAVORABLE LIGHT. THE COURT, IN EFFECT, **ACQUITTED** MOVANT SINCE JEOPARDY HAD ATTACHED AND NO EVIDENCE WAS LEFT TO SUPPORT THE GOVERNMENT'S THEORY OF OFFENSE. T.TR. p.322  290 @ 22-25; @1-13; "SOMEONE OTHER THAN [THE] DEFENDANT WAS THE SOURCE OF THE PHYSICAL EVIDENCE." — THE "TORSO PIC." Id. p.327 @ 20-21. MOVANT'S POWERFUL DEFENSE WAS RENDERED USELESS TO THE REMAINING COUNTS UNDER THE BELIEF THAT THE COURT'S ACTION MARKED AN "END" OF PROSECUTION OF THE OFFENSE OF "PRODUCTION OF CHILD PORNOGRAPHY" (COMPLETED). Rich, 589 F.2d 1025; MARTIN LINEN.

2. BUT THE JURY ELECTED "PRODUCTION OF CHILD PORNOGRAPHY" AS THE TARGET OFFENSE UNDERLYING THE CHARGE OF COERCION OF A MINOR IN COUNT ONE. IT COULD ONLY BE UNDER THE "COMPLETED" THEORY, SINCE 18 U.S.C. § 2427 DOES NOT PROVIDE FOR ATTEMPT. * SO THE COURT ADJUDICATED MOVANT BOTH "NOT GUILTY" AND "GUILTY" OF THE SAME OFFENSE WITH S.F. DURING THE SAME TRANSACTION AT THE SAME TIME, SINCE FACTUAL BASES OF COUNTS ONE AND TWO ARE THE SAME. 

NOTE
* THE PROSECUTOR'S MISSTATEMENT OF LAW TO THE COURT — THAT "ATTEMPT IS INCLUDED" WAS Doc.1 @p.1-2. THE CAUSE FOR THE COURT PERMITTING "PRODUCTION" TO BE THE PREDICATE IN COUNT ONE.

3. BECAUSE THE "TORSO PIC" IS THE "ONLY ALLEGED CHILD PORNOGRAPHY IN THIS CASE," AND IT IS THE FEATURED IMAGE ANALYZED IN THE GOVERNMENT'S CASE-IN-CHIEF AND SHOWN MORE THAN 10 TIMES TO THE JURY, THERE IS NO DOUBT THAT THE PROSECUTOR WAS REFERRING TO THE "TORSO PIC" WHEN STATING AT SUMMATION: "IN TERMS OF [PROVING] THE PRODUCTION OF CHILD PORNOGRAPHY UNDER FEDERAL LAW, AGAIN, YOU HAVE SEEN THE IMAGE NUMEROUS TIMES..." T.TR. p.2324 @ 8-10; ISABELLA @ n.2. WE KNOW THE PROSECUTOR WAS REFERRING TO **COMPLETED** PRODUCTION OF CHILD PORNOGRAPHY, BECAUSE ONE CAN ONLY "SEE" A COMPLETED PHOTOGRAPH OR "IMAGE", AND THE "ONLY ALLEGED PORNOGRAPHY IN THIS CASE" IS THE "TORSO PIC" OF S.F. ISABELLA @ n.2. SO THE PROSECUTOR HAS ARGUED THAT THE MOVANT DID PRODUCE THE "TORSO PIC", IN DISREGARD OF KNOWN (CONCEDED) FACTS, COMMON LAW, AND THE COURT'S PRECLUSION. T.TR. p.325 @16-, 326 @18.

4. THE "MISCARRIAGE OF JUSTICE" CONCEPT WAS FIRMLY ESTABLISHED AS AN EXCEPTION TO THE "CAUSE AND PREJUDICE" STANDARD IN MURRAY v CARRIER. 477 U.S. 478 (1986). "IN AN EXTRAORDINARY CASE, WHERE A CONSTITUTIONAL VIOLATION HAS PROBABLY RESULTED IN THE CONVICTION OF ONE WHO IS ACTUALLY INNOCENT, A FEDERAL HABEAS COURT MAY GRANT THE [§2255] WRIT EVEN IN THE ABSENCE OF A SHOWING OF CAUSE FOR THE PROCEDURAL DEFAULT." Id. THE "INEFFECTIVE ASSISTANCE" OF COUNSEL DESCRIBED HEREIN, HAS COMBINED WITH MISCONDUCT BY THE PROSECUTION — INCLUDING THE CONSISTENT WITHHOLDING OF EVIDENCE SO EXCULPATORY AS NEGATING GUILT — TO "DEN[Y] [THE MOVANT] THE FULL PANOPLY OF PROTECTIONS AFFORDED TO CRIMINAL DEFENDANTS BY THE CONSTITUTION." SEE SCHLUP v DELO, 513 U.S. 298 (1995). MANIFEST INJUSTICE CONCERN STEMS FROM THE "FUNDAMENTAL VALUE DETERMINATION OF OUR SOCIETY THAT IT IS FAR WORSE TO CONVICT AN INNOCENT MAN THAN TO LET A GUILTY MAN GO FREE." IN RE WINSHIP, 397 U.S. 358 (1970). "THE OVERRIDING IMPORTANCE OF THIS GREATER INDIVIDUAL INTEREST MERITS PROTECTION BY IMPOSING A SOMEWHAT LESS EXACTING STANDARD OF PROOF ON A HABEAS PETITIONER ALLEGING A FUNDAMENTAL MISCARRIAGE OF JUSTICE THAN ON ONE ALLEGING THAT HIS SENTENCE WAS TOO SEVERE." SCHLUP.

5. THIS COURT HAS DECIDED MOVANT WAS "NOT-GUILTY" OF THE CRIME OF PRODUCING CHILD PORNOGRAPHY.
Doc. 79-1, p.29-30; Doc. 79-11;        Doc. 79-10, p.12-13;        I.e. p.12, p.14-16.
IN FACT, A SEARCH OF MOVANT'S 4 COMPUTERS, 2 CELLPHONES, 6 STORAGE DEVICES, THE CLOUD, EMAIL,
SOCIAL MEDIA, RESIDENCE, CARS, AND A SAFE — PLUS 18 MONTHS OF FORENSIC SCOURING — NOT ONLY FAILED TO
T.TR. p. 1006 p. 7-8
DEMONSTRATE A COLLECTION OF CHILD PORNOGRAPHY, BUT FAILED TO IDENTIFY AN INTEREST IN CHILD PORNOGRAPHY; e.g. SEARCH TERMS; HASH VALUES; OR A PRURIENT INTEREST IN CHILDREN; e.g. CHILD EROTICA; VISITS TO WEBSITES FREQUENTED BY CHILDREN; PHOTOS/VIDEOS OF CHILDREN; OR OTHER SUCH INTEREST. SEE Doc. 184 @ p.7; 180-1. FORENSIC REVIEW NOTED "VIDEO[S] WERE SCENIC, TRAVEL, OR HOME VIDEOS
Doc.
OF FAMILY AND FRIENDS." 184 @ p.7. ACCORDING TO DR. MARK MILLS, MOVANT "HAS ASD [AUTISM SPECTRUM DISORDER]... THIS
Doc. 246-1
DIAGNOSIS, MANIFEST SINCE CHILDHOOD, ACCOUNTS FOR HIS OBSESSIVE USE OF ADULT DATING SERVICES." pg. 5. p.2.
THE JURY FOUND MOVANT "NOT-GUILTY" IN AN UNDERCOVER STING ATTEMPT. AND THE GOVERNMENT HAS YET TO
RESPECTIVELY
DISCLOSE THE CHAT LOGS FROM "MINUS," OR FROM "OKCUPID," WHERE S.F. AND M.E. FIRST MET MOVANT AND CLAIM TO HAVE
p. 39   p. 41  T.TR. p.452  p.456                                                    28
NOTIFIED HIM OF THEIR ACTUAL AGE. Doc. 111 @ 22 - @ 12; @ 12-16; @ 17-19; See 1-22 (FIRST PHONE CALL OCT. 1 for sec.)
NOTE: THIS IS CONTRADICTED IN FORENSIC VIDEO WHERE
S.F. SAYS SHE DOESN'T ~~REMEMBER~~ REMEMBER "TELLING ACTUAL AGE. AT TRIAL, M.E. SAYS SHE "USUALLY "TELLS OLDER MEN HER ACTUAL AGE EARLY ON.
(IN DISCOVERY)... FACT DEVELOPMENT NEEDED.                     T. TR. LOCATION N/A.

6.   WHEN DIGITAL FORENSIC EVIDENCE SHOWS *SOMEONE ELSE* HAD ACTUALLY COMMITTED THE CRIME CHARGED, IT IS "ACTUAL INNOCENCE." BUT WHEN REMAINING CHARGES UNDER THE SAME TRANSACTION AND FACTUAL PARTICULARS *RELY* ON CONDUCT ASSOCIATED WITH THAT SAME DETERMINATION, THAT ACTUAL INNOCENCE MUST *EXTEND* TO INCLUDE THAT CONDUCT. UNDER ISSUE PRECLUSION AND FACT PRECLUSION PRINCIPLES, ISSUES AND FACTS WHICH LED TO THE ULTIMATE CONCLUSION THAT MOVANT PLAYED NO ROLE IN THE PRODUCTION OF CHILD PORNOGRAPHY—AS PARTICULARIZED ON THE INDICTMENT— ARE DRAWN INTO QUESTION. AN EVIDENTIARY HEARING IS NEEDED TO DECIDE, FOR INSTANCE, WHETHER THE FACTUAL ELEMENTS DISMISSED UNDER ACTUAL INNOCENCE IN COUNT 2 SUBSTANTIVE WERE RELIED UPON TO PROVE COUNT 1, OR COUNT 2 ATTEMPT. e.g. DID THE JURY DECIDE THAT, BECAUSE THE PROSECUTOR ARGUED THAT THE "TORSO PIC" WAS A VISUAL DEPICTION OF S.F. EXHIBITING HER GENITALIA IN SUCH A MANNER AS TO BE BEYOND "MERE NUDITY" INTO A LEWD AND LASCIVIOUS DISPLAY, THAT THIS EVIDENCE PROVED COUNT 1's PREDICATE OFFENSE? THE "TORSO PIC" WAS THE "ONLY ALLEDGED CHILD PORNOGRAPHY IN THIS CASE"—THE ONLY "COMPLETED" PHOTO TO JUSTIFY THEIR ELECTION THAT PRODUCTION HAD BEEN "COMPLETED" IN COUNT 1. AND SINCE "COMPLETED" ACTS MUST FIRST PASS THROUGH THE STEPS OF "ATTEMPT," DID THE JURY USE THE "COMPLETED" PHOTO OF THE "TORSO PIC" AS JUSTIFICATION IN ALL CHARGES UNDER COUNTS 1 AND 2? IF SO, SINCE THE GOVERNMENT CONCEDED THAT MR. ISABELLA DID NOT PLAY A ROLE IN THE "ONLY ALLEGED CHILD PORNOGRAPHY IN THIS CASE," AND DIGITAL FORENSICS PROVED MOVANT WAS ACTUALLY INNOCENT IN THE PRODUCTION OF THE "TORSO PIC," THEN LOGICALLY ONE MUST CONCLUDE THE MOVANT IS ACTUALLY INNOCENT IN ALL CHARGES UNDER COUNTS 1 AND 2. Id. HAVING RECEIVED A JURY ACQUITTAL IN COUNTS 3 & 4, THIS QUESTION AFFECTS MOVANT'S RIGHT TO LIBERTY.

SEE UNITED STATES v WITTIG, 575 F.3d 1085 (10th CIR. 2009) (DOUBLE JEOPARDY PROTECTION INCLUDES MULTIPLE CHARGES OF SAME DEFENSE).

ISABELLA © n.2

✱ – "[T]HE DOCTRINE OF COLLATERAL ESTOPPEL IS A BASIC AND ESSENTIAL PART OF THE CONSTITUTION'S PROHIBITION AGAINST DOUBLE JEOPARDY." ASHE v SWENSON, 397 U.S. 436 (1970); "IT MEANS SIMPLY THAT WHEN AN ISSUE OF ULTIMATE FACT HAS ONCE BEEN DETERMINED BY A VALID AND FINAL JUDGMENT, THAT ISSUE CANNOT BE AGAIN LITIGATED BETWEEN THE SAME PARTIES IN ANY FUTURE LAWSUIT." Id. "[A] DEFENDANT SHOULD NOT BE FORCED TO DEFEND AGAINST CHARGES OR FACTUAL ALLEGATIONS WHICH HE OVERCAME."

7. "[C]OLLATERAL ESTOPPEL REQUIRES TWO SHOWINGS BEFORE BARRING RE-LITIGATION OF AN ISSUE: (1) THE ISSUE TO BE PRECLUDED MUST HAVE BEEN ACTUALLY AND NECESSARILY DECIDED...AND (2)...A FULL AND FAIR OPPORTUNITY... TO LITIGATE THE ISSUE TO BE PRECLUDED" WAS GIVEN THE GOVERNMENT. UNITED STATES v ARTERBURY, 961 F.3d 1095 (10TH CIR. 2020). "A "FULL AND FAIR OPPORTUNITY" TO LITIGATE THE ISSUE INCLUDES: (1) THAT THE PARTIES WERE FULLY HEARD, (2) THAT THE SUPPORTED ITS DECISION WITH A REASONED OPINION, AND (3) THAT THE DECISION WAS SUBJECT TO APPEAL." Id. at 1103. ACCORDINGLY, THE GOVERNMENT CANNOT CLAIM PREJUDICE, SINCE (1) THE COURT ASKED THREE TIMES IF THERE WERE "ANY EVIDENCE TO SUPPORT THE COMPLETED PRODUCTION" OF CHILD PORNOGRAPHY CHARGE", (2) THE COURT GAVE A REASONED OPINION THAT THERE WAS A "LACK OF EVIDENCE", AND (3) THE DECISION WAS APPEALABLE ALBEIT WAIVED OR INVITED BY THE GOVERNMENT. Id. IN ARTERBURY "THE SUPPRESSION ORDER SOUNDED THE DEATH KNELL FOR THE GOVERNMENT'S CASE — SIMPLY PUT, NO CHILD PORNOGRAPHY EVIDENCE, NO PROSECUTION." Id. THIS SAME PRECLUSIVE EFFECT SHOULD HAVE BEEN APPLIED AND MAINTAINED ON MOVANT'S CASE.

8. BUT FOR EVIDENCE WHICH SHOULD HAVE BEEN PRECLUDED, DUE TO DISMISSAL WITH JEOPARDY ATTACHED AND FOR INSUFFICIENCY OF THE EVIDENCE, BEING RELIED ON TO CONVICT THE MOVANT, NO CONVICTION WOULD HAVE BEEN POSSIBLE, AT HARM OF LIBERTY.

# GROUND SEVEN

AO 243 (Rev. 01/15)

MOVANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF DUE PROCESS AND PROTECTION FROM WRONGFUL CONVICTION AFFORDED BY THE REVIEW OF EVERY ELEMENT FOR SUFFICIENCY BEYOND A REASONABLE DOUBT UNDER JACKSON V VIRGINIA, 443 US 307 (1979).

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE NEXT PAGE

(b) Direct Appeal of GROUND SEVEN

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes [ ]   No [X]

(2) If you did not raise this issue in your direct appeal, explain why:

FACTS WERE NOT KNOWN UNTIL APPEALS COURT DISREGARDED THE ELEMENTAL REVIEW. ISSUE COULD NOT POSSIBLY BE RAISED ON APPEAL.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes [X]   No [ ]

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:   PETITION FOR REHEARING AND REHEARING EN BANC

Name and location of the court where the motion or petition was filed:

TENTH CIRCUIT COURT OF APPEALS — DENVER, CO

Docket or case number (if you know):   17-1197

Date of the court's decision:   DENIED JUNE 4, 2019

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes [ ]   No [X]

(4) Did you appeal from the denial of your motion, petition, or application?

Yes [X]   No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes [X]   No [ ]

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF THE UNITED STATES

Docket or case number (if you know):   19-7775

Date of the court's decision:   MARCH 30, 2020

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

THE SUPREME COURT HAS DECIDED THAT "CAUSE" EXISTS IF THE "FACTUAL...BASIS FOR A CLAIM WAS NOT REASONABLY AVAILABLE TO COUNSEL" AT THE TIME OF PROCEDURAL DEFAULT. Murray v Carrier, 477 U.S. at 488 (1986). THE FACT THAT THE COURT OF APPEALS DISREGARDED HOLDING AN OBJECTIVE REVIEW OF ELEMENTS OF THE TWO OFFENSES OF CONVICTION AND SENTENCE WAS NOT KNOWN BY APPELLATE COUNSEL GAINOR* UNTIL AFTER TIME FOR DIRECT APPEAL HAD RUN." CARNINE v UNITED STATES, 974 F.2d 924 (7th Cir. 1992). Mr. Gainor's C.J.A. REPRESENTATION CAME TO AN END, LEAVING MOVANT TO RAISE THE ISSUE TO THE Tenth Circuit IN A PRO SE PETITION FOR REHEARING AND REHEARING EN BANC; Doc. 310; Case # 17-1197; REH. DENIED; THEN PRESERVED THIS ISSUE BY RAISING A PRO SE PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF THE UNITED STATES; 140 S. Ct. 2586, 206 L.Ed. 2d 508 (2020); CERT. DENIED A HEARING. BECAUSE Movant IS "ACTUALLY INNOCENT" OF THE SUBSTANTIVE OFFENSE OF PRODUCING CHILD PORNOGRAPHY, THE DENIAL OF ELEMENTAL REVIEW AS GUIDED UNDER Jackson v Virginia, 443 U.S. 307 ~~~~~~~~ (1979), DEPRIVED MOVANT OF BEING FOUND "FACTUALLY INNOCENT" OF THE TWO OFFENSES OF CONVICTION AND SENTENCE. THE SUPREME COURT HAS NOT RESTRICTED "ACTUAL INNOCENCE" CLAIMS TO CAPITAL SENTENCES. Dretke v Haley, 541 U.S. 386 (2004). THERE IS NO BARRIER TO THE COURT'S PERMISSION OF AN "ACTUAL INNOCENCE" EXCEPTION TO THE PROCEDURAL DEFAULT RULE, WHERE THE DENIAL OF RELIEF WOULD CAUSE A FUNDAMENTAL MISCARRIAGE OF JUSTICE. See FIORE v WHITE, 531 U.S. 225 (2001) (HABEAS RELIEF GRANTED WHERE EVIDENCE WAS INSUFFICIENT TO PROVE THE ELEMENTS, CAUSING CONVICTION TO BE INCONSISTENT WITH THE DEMANDS OF THE Due Process CLAUSE UNDER Jackson v Virginia ).


PREJUDICE

BUT FOR THE Appellate Court's PANEL DISREGARDING AN OBJECTIVE ELEMENTAL REVIEW, SIGNIFICANT DEFICIENCIES IN THE GOVERNMENT'S PROOF OF ELEMENTS, e.g. THE SPECIFIC INTENT ELEMENT AT §2251(A) OR MENS REA WITH A NEXUS TO "CHILD PORNOGRAPHY," WOULD HAVE BEEN OBVIOUS TO THE PANEL AND THE OUTCOME WOULD HAVE BEEN DIFFERENT. See Ground EIGHT, TEN, ELEVEN, AND SIXTEEN.

1. BY OVERLOOKING OR DISREGARDING AN ELEMENTAL REVIEW AS A MATTER OF LAW, PURSUANT TO THE SUPREME COURT'S MANDATE UNDER Jackson v Virginia, 443 u.s. 307(1979), THE TENTH CIRCUIT COURT OF APPEALS HAS DENIED Movant HIS CONSTITUTIONAL "GUARANTEE [TO] THE FUNDAMENTAL PROTECTION OF DUE PROCESS." Id.@319. THE SUPREME COURT'S DECISION UNDER In re Winship, 397 u.s. 364 (1970), HELD THAT "THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT PROTECTS A DEFENDANT IN A CRIMINAL CASE AGAINST CONVICTION 'EXCEPT' BY PROOF BEYOND A REASONABLE DOUBT OF EVERY FACT NECESSARY TO CONSTITUTE THE CRIME WITH WHICH HE IS CHARGED'." Jackson AT 315 (Quoting Winship). "[I]T OPERATES TO GIVE 'CONCRETE SUBSTANCE' TO THE PRESUMPTION OF INNOCENCE, TO ENSURE AGAINST UNJUST CONVICTIONS." Id.

2. BY AFFIRMING THE JUDGMENT, ABSENT AN OBJECTIVE REVIEW OF ELEMENTS, THE COURT OF APPEALS HAS MADE A "SUBJECTIVE DETERMINATION" — "IT BELIEVES THAT THE EVIDENCE AT THE TRIAL ESTABLISHED GUILT BEYOND A REASONABLE DOUBT." Id. SUCH DETERMINATION PREJUDICED THE Movant WHERE THE PANEL (A) MADE NO REFERENCE TO THE SUFFICIENCY OF EVIDENCE TO SUPPORT THE INDIVIDUAL ELEMENTS AT §2251(a) AND §2422(b) AS INSTRUCTED TO THE JURY AT Doc.222 p.21-24; AND (B) CONCLUDED THAT FIVE OVERT ACTS—WHEN ADDED TOGETHER — "PROVIDED SUFFICIENT CIRCUMSTANTIAL EVIDENCE OF A "SUBSTANTIAL STEP" FOR A REASONABLE JURY TO CONVICT Mr. Isabella OF ATTEMPTING TO PERSUADE OR ENTICE S.F. TO PRODUCE CHILD PORNOGRAPHY." Isabella @ 836. THE SUPREME COURT DECISION UNDER UNITED STATES v RESENDIZ-PONCE, 549 u.s. 102 (2007) CONTRADICTS THIS POINT. "NONE OF THE THREE OVERT ACTS ALLEGEDLY PERFORMED BY THE ALIEN — WALKING INTO AN INSPECTION AREA, PRESENTING A MISLEADING IDENTIFICATION CARD, OR LYING TO AN INSPECTOR — WAS ESSENTIAL TO THE FINDING OF GUILT IN THIS CASE AT HAND." Id. SIMILARLY, "NONE OF THE [FIVE] OVERT ACTS PERFORMED BY [Mr. Isabella — THE EXCHANGE OF NUDE PICTURES, REQUESTS FOR PICTURES, ENCOURAGEMENT OF FURTHER EXPLICIT PICTURES, SEXUALIZED COMMUNICATIONS, OR A THREE-MONTH RELATIONSHIP] — WAS ESSENTIAL TO THE FINDING OF GUILT IN THE CASE AT HAND." Id.; Isabella @ 836. WHAT IS MISSING IS AN OBJECTIVE REVIEW OF EVERY ELEMENT FOR LEGAL SUFFICIENCY BEYOND A REASONABLE DOUBT. "ONCE A DEFENDANT HAS BEEN FOUND GUILTY OF THE CRIME CHARGED, THE FACTFINDER'S ROLE AS WEIGHER OF THE EVIDENCE IS PRESERVED THROUGH A LEGAL CONCLUSION, THAT UPON JUDICIAL REVIEW ALL OF THE EVIDENCE IS TO BE CONSIDERED IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION." Jackson AT 319.

PREJUDICE

3. Because the substantive offense of Production of Child Pornography at 18 U.S.C. §2251(a) was once adjudicated and disposed of during trial in Movant's favor, the facts and elements which led to the Court's ultimate conclusion "could not be reviewed" by the Court of Appeals "on error or otherwise, without putting [Movant] twice in jeopardy, and thereby violating the Constitution." *United States v Ball*, 163 U.S. 662 (1896). Thus, the Appellate Panel was faced with a choice of Constitutional Violations — to review **elements** and violate Double Jeopardy under *Ball*, or not review elements and violate Movant's right and "guarantee [to] the Fundamental Protection of Due Process." *Jackson*. There really is no middle ground — the Panel chose the latter.

PREJUDICE

4. The Supreme Court decision under *Jackson* "does not permit a court to make its own Subjective Determination of guilt or innocence." Id. @ 319 n. 13. For a reviewing body to disregard making an objective elemental review for legal sufficiency beyond a reasonable doubt directly denies Movant his "Fundamental Protection of Due Process. . ." ". . . to ensure against unjust convictions." Id. The Tenth Circuit Court of Appeals has departed from stare decisis to affirm this case: (1) by a subjective determination and disregard for Supreme Court doctrine under *Jackson v Virginia*; (2) by disregarding controlling authority under *Mannava*; and (3) by permitting "circumstantial" steps to replace the substantial step. See *United States v Gillis*, 942 F.2d 707 (10th Cir. 1991) ("[Court] is stare decisis on the issue of sufficiency of the evidence."); *United States v Seymour*, 598 Fed. Appx. 862 (10th Cir. 2015) ("engaged in" sex with a minor); *United States v Riccardi*, 405 F.3d 852 (10th Cir. 2005); *United States v Dobbs*, 629 F.3d 1199 (10th Cir. 2011) ("the object of any attempt... must relate to the completion of the charged offense"); "some overt... which... will result in the commission of the particular crime." *United States v Monholland*, 607 F.2d 1311 (10th Cir. 1979).

PREJUDICE

5. It neither matters what criterion was ultimately used to affirm, nor the reasoning behind such departure. But for the Panel's disregard of elemental review for "sufficiency of the evidence as a matter of law beyond a reasonable doubt," significant deficiencies in evidence would have been obvious and the outcome would have been different.

6. UNDER THE FOURTEENTH AMENDMENT, THE *MOVANT* HELD A RIGHT TO EQUAL PROTECTION FROM A CONVICTION BASED ON A RECORD LACKING "ANY RELEVANT EVIDENCE AS TO A *CRUCIAL ELEMENT* OF THE CHARGED OFFENSE". *VACHON v NEW HAMPSHIRE*, 414 US 478 (1974). NEITHER OF THE THREE FEDERAL PROSCRIPTIONS FOR SEXTING WITH A MINOR WERE "CHARGED." SEE 18 U.S.C. §1470 ; 47 U.S.C §223 (a)(1)(B); §223(d)(1). Id. "THE CONSTITUTIONAL HOOK IN JACKSON WAS IN IN re WINSHIP, 397 US 364 (1970), IN WHICH WE HELD THAT DUE PROCESS [PROTECTION] REQUIRES PROOF OF *EACH ELEMENT* OF A CRIMINAL OFFENSE BEYOND A REASONABLE DOUBT." *DRETKE v HALEY*, 541 US 386 (2004). PER THE JURY'S ELECTION, THE ELEMENTS OF "PRODUCTION" ARE CRUCIAL TO BOTH COUNTS ONE AND TWO, YET THE GOVERNMENT FAILED TO PROVE THE ESSENTIAL ELEMENTS OF "PRODUCTION" IN COUNT TWO, OR AS THE "PREDICATE... IS AN ELEMENT, NOT A MEANS" IN COUNT ONE. @ 18+28; p. 20 @ n.2. Doc. 224  Doc. 221   IN RELEVANT PART, 18 U.S.C. §2251(a) & (e) PROHIBITS "ANY PERSON" WHO:

a.) [UNDUE INFLUENCE] "COERCES, ENTICES, INDUCES, PERSUADES, EMPLOYS, OR USES" ANY "MINOR... ;

b.) [ACTUS REUS] "TO ENGAGE IN ANY SEXUALLY EXPLICIT CONDUCT" AT §2256(2)(A) ;

c.) [SPECIFIC INTENT] "FOR THE PURPOSE OF PRODUCING" (DIRECTING, MANUFACTURING, PUBLISHING, ISSUING, ADVERTISING); §2256(3)

d.) [NEXUS] "ANY VISUAL DEPICTION OF *SUCH CONDUCT* (SEXUALLY EXPLICIT CONDUCT) OR "CHILD PORNOGRAPHY". §2256(8)

e.) [MENS REA] "IF SUCH PERSON KNOWS OR HAS REASON TO KNOW THAT SUCH VISUAL DEPICTION" [OF CHILD PORNOGRAPHY]

f.) [JURISDICTIONAL HOOK] "WILL BE TRANSPORTED OR TRANSMITTED USING ANY MEANS OR FACILITY OF INTERSTATE COMMERCE."

g.) [SUBSTANTIAL STEP] "OR ATTEMPTS: ("OVERT ACTS POINTED DIRECTLY TOWARDS COMMISSION OF THE CRIME CHARGED."); 18 U.S.C §2251(a), (e)    UNITED STATES v MONHOLLAND, 607 F.2d @ 1318 (10ᵗʰ CIR. 1979). (NOTE: §2251(a) DOES NOT CONTAIN A MENS REA OF "AGE" AND ONLY THE FIRST JURISDICTIONAL ELEMENT APPLIES.)

REGARDING: a.) THE GOVERNMENTS EVIDENCE PROVED S.F. WAS NEITHER "COERCED" BY "THREAT OF HARM" NOR "ENTICED AS ALLEGED." T.TR. P. 6150-6[/]6187; Doc. III;

b.) THE GOVERNMENT FAILED TO PROVE THAT S.F. "ENGAGED IN" (OR ATTEMPTED TO ENGAGE IN) ANY "SEXUALLY EXPLICIT CONDUCT"; §2256(2)(A)

c.) THE GOVERNMENT OFFERED NO PROOF THAT "SEXUALLY EXPLICIT CONDUCT" WAS ENGAGED (OR ATTEMPTED) FOR THE SPECIFIC INTENT—

d.) OF PRODUCING "CHILD PORNOGRAPHY"; NOR PROVED A NEXUS TO A COLLECTION, POSSESSION, OR INTEREST IN "CHILD PORNOGRAPHY";

e.) REGARDING ATTEMPTED PRODUCTION'S SUBSTANTIAL STEP: THE GOVERNMENT PROVED NO ACT THAT WAS OF SUCH SUBSTANTIABILITY THAT WOULD CAUSE THE MOVANT TO "KNOW OR HAVE REASON TO KNOW" THAT ANY PENDING PHOTO OF S.F. MUST NECESSARILY OR AUTOMATICALLY BE "CHILD PORNOGRAPHY" AS A MATTER OF LAW; §2251(a)

f.) OR THAT "CHILD PORNOGRAPHY" DEPICTING S.F. IN "SEXUALLY EXPLICIT CONDUCT" "WILL BE TRANSPORTED..."; Id.;

g.) THE GOVERNMENT OFFERED A PLETHORA OF EVIDENCE TO SUGGEST ONE OF THE FEDERAL SEXTING OFFENSES (ABOVE), BUT FAILED TO IDENTIFY EVEN A SINGLE "OVERT ACT POINTED DIRECTLY TOWARDS THE COMMISSION OF THE CRIME CHARGED." MONHOLLAND.

* FOR PURPOSES OF THIS PLEADING PURSUANT 28 U.S.C §2255, THE ONLY RELEVANT CRIMES ARE:(1) §2422(b) COMPLETED ; AND (2) §2251(a) ATTEMPTED.

7.  Under the law of the case, that "the predicate sexual activity contemplated by §2422(b) is an element of the offense, not a means," the jury's unanimous election of "Production of Child Pornography Under Federal Law" (18 U.S.C. §2251(a)) to be that predicate in Count One, caused the elements of §2251(a) to require proof in Count One. Doc. 228 p. 20 @ n.2; @ 18:28; see United States v Mannava, 565 F.3d 412 (7th Cir 2008) ("elements" of predicate offense "become elements of §2422(b)). Since those elements required proof beyond a reasonable doubt, the Panel could not affirm without reviewing whether a reasonable trier-of-fact could have found each of the specific unambiguous and statutorily unique elements under 18 U.S.C. §2251(a) by evidence as a matter of law beyond a reasonable doubt. Jackson v Virginia. Therefore, the Panel's choice not to review elements else violate double jeopardy, caused the Panel's conclusion to be purely subjective — an impermissible standard under Supreme Court doctrine. Id. Movant's right of protection afforded by elemental proof and elemental review for sufficiency of evidence as a matter of law, was violated under the Due Process Clause of the Constitution. Id.

8.  At oral argument to the Tenth Circuit Court of Appeals, the prosecutor fully understood the gravity of the Panel's dilemma. "If this Court follows Mannava then we're gonna have a difficult time." 17-1197.mp3 (November 27, 2019) @ T = 21:00; unoffic. tr. p. 12 App'x H. The Government is, in effect, conceding before the Court of Appeals that, under the law of the case, under stare decisis, and under Seventh Circuit's controlling authority, the conviction cannot be affirmed. Rather than standing on the "strength" of the Government's case as presented to the jury, the prosecutor abandoned their case to ask the appellate court to move the goalposts. "But the Sixth Circuit in Hart takes a different approach. And the Eleventh Circuit in Jockisch takes different [(categorical)] approaches." Id. A categorical approach to affirming an offense of conviction is both novel and subjective. Such approach is unnecessary when reviewing elements under Jackson. "Lee didn't cite elements or the Jockisch opinion. But if you relate it to Hart you can find it via that route." Id. @ T = 32:00, p.17. App'x H The Government is asking the Panel to not review or "cite elements." Id. Thus, the choice is to apply a novel categorical review or to reverse the judgment under the law of the case and authority under Mannava

9. "IT'S NOT ALTERNATIVE ELEMENTS... ITS ALTERNATIVE MEANS." Id. @ T=23:00; p.13. THIS IS, IN EFFECT, SAYING THAT "PROSTITUTION", SEXUAL SOLICITATION WITH TRAVEL, AND SEXUAL INTERCOURSE WITH A MINOR, ARE "ALTERNATIVE MEANS" IN A FINDING OF ACHIEVING A "MINOR'S ASSENT" TO ANY "SEXUAL ACTIVITY". Id. IT SHIFTS THE ACTUS REUS FROM THE "ENGAGE IN" ELEMENT TO THE RESPONSE OF THE MINOR OR UCA. §2422(b). AND CONTRARY TO THE PROSECUTOR'S ASSERTION TO THE PANEL, BOTH THE SIXTH[HART] AND ELEVENTH[JOCKISCH] CIRCUIT COURTS REJECTED APPLYING A "CATEGORICAL APPROACH" AND EXPLICITLY FOUND THE DECISION UNDER RICHARDSON v UNITED STATES 526 U.S. 813 (1999) TO BE "DISTINGUISHABLE," SINCE SUCH CATEGORICAL (OR "DIFFERENT APPROACHES") APPLY TO THE SENTENCING JUDGE'S DETERMINATION CONCERNING ENHANCEMENTS SUCH AS A.C.C.A. OR C.C.E. THE MERE SUGGESTION THAT THE PANEL COULD MAKE A "SUBJECTIVE DETERMINATION" THROUGH A RE-CLASSIFICATION OF ELEMENTS OF THE OFFENSE AS "MEANS"—TO CIRCUMVENT ELEMENTAL REVIEW — **AMPLIFIES** THE VIOLATION OF DUE PROCESS BY OMISSION OF THE MANDATE UNDER JACKSON v VIRGINIA. THE PROSECUTOR'S EXAMPLES OF "DIFFERENT APPROACHES" ARE MISLEADING. UNITED STATES v HART, 635 F.3d 850 (6th CIR. 2011) AND UNITED STATES v JOCKISCH, 857 F.3d 1122 (11th CIR. 2017); ARE DISTINGUISHABLE FROM ISABELLA; WHERE BOTH CASES CONCERN PREDATORY SOLICITATION OF PARTICULAR SEX ACTS PROHIBITED BY STATE LAW; A SPECIFIED MEETING TIME AND PLACE "TO ENGAGE IN" THE UNDERLYING CHARGEABLE OFFENSE; TRAVEL TO THE **RENDEZVOUS**; AND A SURPRISE ARREST BY THE UNDERCOVER AGENT PRETENDING TO BE A TEEN. THE "MINOR'S ASSENT" CONCEPT APPLIES TO SUCH ATTEMPT CASES WHERE ACTUAL SEX WITH A MINOR IS AN IMPOSSIBILITY. ALL SUCH CASES CITE SOME FORM OF UNEQUIVOCAL SOLICITATION, SETTING MEETING TIME AND PLACE FOR "§2422(b) ENGAGING IN THAT SEX ACT, AND THE "SUBSTANTIAL STEP" "[Montholland] AFTER PREPARATIONS ARE MADE"—TRAVEL TO ENGAGE IN SEX. COMPARE HART, JOCKISCH AND LEE TO ISABELLA. UNITED STATES v LEE, 603 F.3d 904 (11th CIR. 2010) (LEE MARKED HIS INTENT AS CRIMINAL THROUGH "TWENTY-THREE" OVERT ACTS, WHICH INCLUDED HIS UNEQUIVOCAL SOLICITATION DIRECTING THE PHOTO SHOOT TO PRODUCE SEXUALLY EXPLICIT VISUAL DEPICTIONS OF MINORS ("CHILD PORNOGRAPHY" AT §2256(8)), THEN STEPPED TO RECEIVE WHAT HE "KNEW OR HAD REASON TO KNOW" WAS CHILD PORNOGRAPHY.)

10.   LEE'S SOLICITATION ALSO INVOLVED AN UNDERCOVER AND HIS SUBSTANTIAL STEPS, DESCRIBING IN GRAPHIC DETAIL THE PARTICULAR LASCIVIOUS EXHIBITION OF THE "MINOR GIRL'S" GENITALIA THAT HE DESIRED COULD ONLY RESULT IN THE PRODUCTION OF CHILD PORNOGRAPHY, WHICH HE THEN KNOWINGLY RECEIVED.   FOR THE PROSECUTOR TO ASSERT TO THE PANEL THAT HART, LEE AND JOCKISCH WERE DECIDED WITHOUT REGARD FOR THE UNDERLYING CONDUCT BECAUSE "THE UNDERLYING OFFENSE IS MEANS. THEY'RE NOT ELEMENTS" ONLY SERVES TO MISLEAD THE PANEL. THESE THREE CASES ARE NOT AUTHORITY FOR INTERPRETING 18 U.S.C. §2422(b)'S ACTUS REUS TO BE A "MINOR'S ASSENT." AND THE PREDICATE SEX OFFENSE WHICH UNDERLIES THE STATUTE AS MERELY "ALTERNATIVE MEANS." THE PANEL WAS STILL REQUIRED TO REVIEW THE SUFFICIENCY OF EVIDENCE TO SUPPORT THE JURY'S FINDING OF THE "ENGAGED IN" ELEMENT, AS WELL AS THE OFFENSE THEY NAMED THE PREDICATE IN COUNT ONE AT THE "THIRD ELEMENT." DOC. 222 P. 20.   NO AUTHORITY RELIEVED THE GOVERNMENT TO PROVE, OR THE PANEL TO REVIEW, THESE ELEMENTS FOR SUFFICIENCY OF THE EVIDENCE BEYOND A REASONABLE DOUBT.

11.   WHETHER THE PANEL DID APPLY A MODIFIED CATEGORICAL APPROACH TO A CRIME OF CONVICTION DETERMINATION, DISREGARDED ELEMENTAL REVIEW TO AVOID AN ISSUE OF DOUBLE JEOPARDY, OR MERELY OVERLOOKED MOVANT'S SUFFICIENCY CHALLENGE OF THREE DISTINCT AND "SEPARATE" CONVICTIONS OF JUDGMENT IS NOT KNOWN. T.TR 290 @4.   EITHER OF THE THREE EQUATE TO THE SAME RESULT: THE COURT OF APPEALS MADE A SUBJECTIVE DETERMINATION OF GUILT IN CONFLICT WITH THE SUPREME COURT'S DECISION UNDER JACKSON V VIRGINIA, WHICH FORBIDS "A COURT TO MAKE ITS OWN SUBJECTIVE DETERMINATION OF GUILT OR INNOCENCE." Id. "THE ROLE OF AN APPELLATE COURT IN JUDGING THE SUFFICIENCY OF THE EVIDENCE IS FUNDAMENTALLY DIFFERENT FROM THE ROLE OF THE JURY IN FINDING THE FACTS AND DETERMING GUILT... A COURT REVIEWING FOR SUFFICIENCY IS NOT PERMITTED TO MAKE ITS OWN SUBJECTIVE DETERMINATION OF GUILT OR INNOCENCE." UNITED STATES V LUNA CARDALES- 632 F.3d 734 (1ST CIR. 2011) (QUOTING JACKSON V VIRGINIA) AT 734; UNITED STATES V GILLIS, 942 F.2d 707 (10TH CIR. 1991) (HOLDING THAT A PREVIOUS PANEL DECISION "IS STARE DECISIS ON THE ISSUE OF SUFFICIENCY OF THE EVIDENCE."); Id. @ 735.

12. The Appellate Panel's 57-page opinion has overlooked addressing the sufficiency of evidence to support "each element" as a matter of law, as mandated by the Supreme Court in Jackson v Virginia.[113] The Panel Opinion merely cites that, "Because the evidence" supporting both counts is identical, our sufficiency of the evidence analysis is the same for Counts 1 and 2." Isabella @834. It is the Requirements, not the "evidence" that matter in an objective review. If the evidence were the same in an hypothetical case, where a defendant "pulled a trigger on a gun," could the elements of "murder" be proven through the elements of "unlawful discharge of a firearm" — since the "evidence supporting both counts is identical"? I.e. 18 U.S.C. §2251(a) cannot be proven through "evidence supporting" 18 U.S.C. §2422(b), due to the several unique expressly proscribed elements. See ¶6 @ "a." – "g." The Panel Opinion states "the parties agree," because the attempt charges were analyzed "without distinguishing between them." Isabella @834. But the record shows no such agreement, with the Initial Brief clearly and immediately distinguishing between the requirements of the two counts, "Similarly, to be convicted of... §2251(a), Mr. Isabella must have (a) enticed a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct..." Id., Initial Brief p.16 (Doc. 010199943690).[17-1197]

13. PREJUDICE
Without having performed an objective review of the elements essential for committing each crime of conviction and sentence (completed §2422(b) and attempted §2251(a)), Movant has been denied due process of law, a constitutional right of protection from a wrongful conviction. Fifth Amendment. "The reviewing court considers only the 'legal' question whether after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Musacchio v United States, 57 US __ (2015). "No person shall be made to suffer the onus of a criminal conviction except upon sufficient proof — defined as evidence necessary to convince a trier-of-fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v Virginia. See Ground Eight, ten, eleven, and sixteen for the prejudicial effect caused by no objective review for a "legal conclusion" of elemental sufficiency. Jackson

# GROUND EIGHT

AO 243 (Rev. 01/15)

ERRONEOUS JURY INSTRUCTIONS SO BROADENED THE BASES AS TO UNCONSTITUTIONALLY AMEND THE INDICTMENT; RELIEVING THE GOVERNMENT'S BURDEN TO PROVE MENS REA AND THE JURISDICTIONAL NEXUS AT 18 U.S.C § 2251(a), THUS DIVESTING THE COURT OF JURISDICTION

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
ISSUE IS COGNIZABLE AT 28 U.S.C § 2255   SEE KEATING v HOOD, 191 F.3d 1053 (9TH CIR. 1999)
(HABEAS RELIEF GRANTED "BECAUSE IT WAS UNCLEAR WHAT THEORY THE JURY USED TO CONVICT... OMISSION OF THE MENS REA ELEMENT FROM THE JURY INSTRUCTIONS VIOLATED PETITIONER'S RIGHT TO DUE PROCESS.")

SEE NEXT PAGE

(b) Direct Appeal of GROUND EIGHT

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes [ ]   No [X]

(2) If you did not raise this issue in your direct appeal, explain why:
ATTORNEY CONFLICT DOCUMENTED AT APPELLATE CASE (10TH CIR) 17-1197 SEE DOC. 010110090673 UNREASONABLY WINNOWED OUT. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL. MOVANT REFUSED TO WAIVE THE ISSUE AND DILIGENTLY PRESERVED IT.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes [X]   No [ ]

(2) If you answer to Question (c)(1) is "Yes," state:
Type of motion or petition: PETITION FOR REHEARING EN BANC
Name and location of the court where the motion or petition was filed:
TENTH CIRCUIT COURT OF APPEALS, DENVER, CO
Docket or case number (if you know): 17-1197
Date of the court's decision: REH. DENIED JUNE 4, 2019
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?
Yes [ ]   No [X]

(4) Did you appeal from the denial of your motion, petition, or application?
Yes [X]   No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes [X]   No [ ]

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state: PETITION FOR WRIT OF CERTIORARI
Name and location of the court where the appeal was filed:
SUPREME COURT OF THE UNITED STATES
Docket or case number (if you know): 19-7775
Date of the court's decision: HEARING DENIED MARCH 30, 2020
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

1. Changes to key statutory words within the Jury Instructions so broadened the bases as to cause an unconstitutional amendment of the Indictment in Count Two. Unconstitutional language combined with alternative permissions to relieve the Governments burden to prove (A) the explicit and unambiguous **Mens Rea** element, (B) a jurisdictional **Nexus** to "visual depictions" of "sexually explicit conduct" at 18 u.s.c. §2256(2) required to be "child pornography" as defined at §2252(8) and (C) its movement in interstate commerce as expressly limited at §2251(a). 18 u.s.c. §2251(a), The Fifth Circuit has analyzed requirements at §2251(a).

2. "Under 18 u.s.c. §2251(a), the Government must prove that the defendant (1) employed, used, persuaded, induced, enticed, or coerced a minor **to engage in** sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and (2) a jurisdictional [hook] nexus. 18 u.s.c. §2251(a) (West 2003). As to the jurisdictional **nexus** element, it may be satisfied:

    [(a)] if such person knows or has reason to know that such visual depiction will be transported in interstate commerce or mailed,

    [(b)] if that visual depiction was produced using materials that have been mailed, shipped or transported in interstate or foreign commerce by any means including by computer,

    or [(c)] if such visual depiction has actually been transported in interstate or foreign commerce or mailed." **United States v Terrell**, 700 F.3d 755 (5th Cir. 2002) at 759.

3. Congress has expressly limited jurisdiction by three discreet pathways. Id. "The statute's repetition of 'if' indicates that each clause following 'if' is distinct." Id. Each pathway independantly ensures that the contraband "child pornography" actually impacts interstate commerce. Id. By omitting the word "if" from the Indictment; Doc. 1 p. 2; and from the Jury Instructions; Doc. 222 p. 24; the Government enabled itself to conflate the jurisdictional requirement at §2251(a). "Section 2251(a)'s jurisdiction requirement ... contains three jurisdictional hooks, each of which is prefaced by the word 'if.'" United States v Lively, 2017 U.S. App'x Lexis 19 (6th Cir. 2017).

4.  Because it is uncontroverted that no "child pornography" as federally defined at §2256(8) "was produced" or "has actually been transported," the second and third jurisdictional hooks — clearly referring to completed child pornography— do not apply here. Terrell (above at #2.); §2251(a). Accordingly, only the first jurisdictional hook applies in this case. "[(a)]" in Terrell above at item 2. Because Count Two is attempt alone and no completed production of child pornography could impact interstate commerce, a mens rea element is required to violate the statute. "Section 2251(a) contains an explicit jurisdictional element. It mandates ... that the defendant knows or has reason to know that such visual depiction will be transported in interstate commerce or mailed." United States v Buculei, 262 F.3d 329 (4th cir. 2001). "Such visual depiction" is a depiction of the subject minor engaging in "sexually explicit conduct" as a matter of law at §2256(2), otherwise a nexus to "child pornography" is lost. Conflating evidence across the three jurisdictional hooks destroys their distinctive jurisdictional limitation. "[O]nly the first basis for jurisdiction requires proof of mental state." United States v Smith, 459 F.3d 1276 (11th cir. 2006).

5.  Thus, the jurisdiction of this court is expressly limited by Congress and contingent upon the government's satisfying of one of the jurisdictional bases, which hook a violation at §2256(8) (actual "child pornography")—to knowing movement, a production that used materials that moved, or depictions that have actually moved—in interstate commerce. "[T]his jurisdictional element represents a limitation of §2251(a) to a discreet set of activities — defendants who plan to transport visual depictions of minors engaged in sexually explicit conduct in interstate commerce." Buculei. Because the government's evidence conflates across the three jurisdictional contingencies, yet fails to satisfy any one jurisdictional basis as expressly proscribed, the court is divested of its limited jurisdiction to render judgment at 18 u.s.c.§2251(a) and (e). Numerous erroneous jury instructions illustrates those evidentiary deficiencies, as listed herein.

6. By omitting the word 'IF' from both the indictment and the jury instructions, the limitations caused by that contingency was LOST. Doc.1 p.2; Doc.222 p.24; §2251(a); Terrell. Even if this were harmless on its own, when in conjunction with omission of the words "SUCH" and "THAT" which statutorily precede "visual depiction", the plain language of the jurisdictional element is so altered as to losing its meaning. 18 U.S.C. §2251(a). The words "SUCH" and "THAT" in the jurisdictional element are intentionally used to draw a direct nexus to the requisite violation at §2256(2) ("Sexually Explicit Conduct"), where the unconstitutional word "THE" does not. Doc.222 p.24. Thus, the alteration, substituting "THE" for "SUCH" and "THAT" in all three jurisdictional contingencies, suggests this was a strategic move to reduce the burden of proof of MENS REA and the NEXUS to actual "child pornography" required in the "production" plain language. §2251(a). Had proof of these two expressly proscribed jurisdictional elements been overwhelming, this might not be thought a material change. But when in conjunction with ONLY CONFLATED EVIDENCE at the jurisdictional element AND omission of the 'if' contingencies, it would appear that the jury was erroneously instructed with the intent of reducing or even relieving the government's burden of proving the clear unambiguous expressly proscribed jurisdictional element, MENS REA and NEXUS to "child pornography" moving in interstate commerce. And without proof of THIS express jurisdictional element the court is robbed of its limited jurisdiction. 18 U.S.C. §2251(a); Terrell.

7. "The most natural reading of §2251(a) is clear: 'THAT' clarifies that the 'visual depiction' in the first half of §2251(a) is the SAME 'visual depiction' the second jurisdictional hook addresses." App'x G United States v Lively, 852 F.3d 558 (6th Cir. 2017). The alternate word "THE" does not accomplish this. Doc.222 p.24. Likewise, "[SUCH] clarifies that the 'visual depiction' in the first half of §2251(a) is the SAME 'visual depiction' the [FIRST] jurisdictional hook addresses." Id. Thus, to omit the word "SUCH" from the element is to cut the jurisdictional NEXUS requirement from the statute. This places doubt on the integrity of the jury's verdict.

PREJUDICE

8. THE JURY WAS NOT REQUIRED TO DECIDE "IF" THE MOVANT "KNEW OR HAD REASON TO KNOW THAT **SUCH** VISUAL DEPICTION" — A DEPICTION OF S.F. ENGAGING IN SEXUALLY EXPLICIT CONDUCT — "WILL BE TRANSPORTED" VIA INTERSTATE COMMERCE. 18 U.S.C. §2251(a). DOC. 222, P. 24. BUT FOR THE ERRONEOUS JURY INSTRUCTIONS, THE JURY WOULD HAVE FOUND THE GOVERNMENT'S CONFLATED EVIDENCE INSUFFICIENT TO PROVE THE MENS REA/NEXUS TO "CHILD PORNOGRAPHY" AT THE EXPRESS JURISDICTIONAL ELEMENT.

9. THE GOVERNMENT'S EVIDENCE INCLUDED JUDICIAL NOTICE THAT S.F.'s "SAMSUNG SCH-i200", AND MOVANT'S "iPHONE" AND "iMAC" WERE "MADE IN CHINA." DOC. 222, P. 9. THIS EVIDENCE IS IRRELEVANT TO THE "FIRST JURISDICTIONAL ELEMENT" AT §2251(a). TERRELL @759. "MATERIALS USED" APPLIES ONLY TO THE SECOND JURISDICTIONAL ELEMENT, WHERE ACTUAL CHILD PORNOGRAPHY "WAS PRODUCED." "THE DEFENDANT USED THE INTERNET... USED THE CELLULAR NETWORK... SMS AND MMS MESSAGES... KIK MESSENGER AND EMAIL." T.TR. P. 2335 @ 13-22. AGAIN, THESE MEANS OF TRANSPORT, "INCLUDING BY COMPUTER," ARE ONLY RELEVANT "**IF THAT VISUAL DEPICTION WAS PRODUCED** USING MATERIALS THAT HAVE" CROSSED INTERSTATE COMMERCE. 18 U.S.C. §2251(a), LIVELY. IT IS UNCONTROVERTED THAT "MR. ISABELLA DID NOT PLAY A ROLE IN THE PRODUCTION OF THE ONLY ALLEGED CHILD PORNOGRAPHY IN THIS CASE." ISABELLA @ n.2. IF NO "CHILD PORNOGRAPHY" "WAS PRODUCED" THEN THE GOVERNMENTS EVIDENCE PROVING "MATERIALS USED" AND INTERSTATE NETWORKS "INCLUDING BY COMPUTER" ARE BOTH IRRELEVANT. §2251(a). THEY ARE A RED HERRING. THE GOVERNMENT'S SUMMATION OF PROOF OF THE ONLY APPLICABLE JURISDICTIONAL BASIS (THE FIRST) WAS THE CONCLUSORY STATEMENT "HE KNEW OR HAD REASON TO KNOW THAT **THE** VISUAL DEPICTION WOULD BE TRANSPORTED USING THAT NETWORK." T.TR. P. 2335 @ 14-16. THE NEXUS TO "CHILD PORNOGRAPHY," THUS, HAS NO PROOF.

10. BY ASKING THE JURY TO DECIDE WHETHER CERTAIN MATERIALS WHICH CROSSED INTERSTATE COMMERCE WERE USED TO PRODUCE "THE VISUAL DEPICTION" WHICH "**WAS PRODUCED**" A PRESUMPTION OF GUILT IS ESTABLISHED. SEE JURISDICTIONAL INSTRUCTION FOR THE SECOND BASIS OF TERRELL (@759) AT APP'X G DOC. 222, P. 24 AT THE "FIFTH" ELEMENT. ONLY THE "TORSO PIC" WAS PRODUCED.

11.   The Government effectively diverted the Jury's concern from deciding whether Movant had knowledge that actual child pornography depicting S.F. will be transported via interstate commerce. Omitting the word 'if' eliminates the decision of whether the sexually explicit conduct engaged in for the purpose of producing child pornography was done so with the knowledge that actual child pornography would cross interstate channels. Altering "such visual depictions" to "the visual depictions" eliminates the Jury's need to decide whether Movant knew that a visual depiction of S.F. engaging in "sexually explicit conduct" at §2256(2) and at Instruction No. 25 (Doc.222, p.33), "will be" transported via interstate commerce. If such diversion was intentional (through the Court's inquiry and evidentiary hearing), [DECIDED] then Movant's right under the Due Process Clause is implicated. "Your Honor, the production of child pornography doesn't include the knowledge prong; @11-12; ...there is not an [T.Tr. p.308] element of knowing in the statute..." P.310 @4-5. "2251...mandates...the defendant knows or has reason to know..." Buculei. The "if," "such," and "that" errors had a powerful accumulative effect. These erroneous instructions denied Movant his right of protection under the requirement that every element be proved beyond a reasonable doubt. In re Winship

12.   [PRESENCE] There is a question of whether the offense charged by the Grand Jury, and the statutory law cited in the indictment are the same offense or different than the offense found by the petit Jury through their reliance upon the evidence adduced at trial and the instructions to the Jury. See United States v Farr, 536 F.3d 1174 (10th cir. 2008) (distinguishing constructive amendments from variances on the basis that the former broadens the possible bases for conviction from that which appeared in the indictment.) at 1181.

3.   Where Congress wrote the language of 18 U.S.C. §2251(a) to be clear and unambiguous, as seen in the Terrell example in item 2, the Jury instructions were confusing. [Doc.222 @ P.24] This ambiguity shielded the Government by ▓▓▓▓ the Jury being unable to reconcile the weakness of evidence with the appropriate jurisdictional basis (the first), and enabled the Government to conflate their evidence and claim sufficiency.

PREJUDICE

4. MOVANT WAS PREJUDICED BY THE DENIAL OF DUE PROCESS CAUSED BY THE ERRONEOUS INSTRUCTIONS RELIEVING THE JURY OF THEIR DUTY UNDER STATUTORY LAW TO DECIDE:

   1. WHETHER THEIR FINDINGS IN THE FIRST FOUR ELEMENTS WAS CONTINGENT UPON A FURTHER FINDING OF THE EXPRESS JURISDICTIONAL ELEMENT CAUSED BY "IF";

   2. WHETHER MOVANT "KNEW OR HAD REASON TO KNOW" THAT "SUCH VISUAL DEPICTION" — A DEPICTION OF S.F. ENGAGING IN "SEXUALLY EXPLICIT CONDUCT" AT §2256(2)(A)—WILL BE PRODUCED AS A RESULT OF HIS WORDS TEXTED TO S.F.; DOC.222 DOC.1 P.24; P.2; §2251(A); APP'X 6

   3. WHETHER MOVANT "KNEW OR HAD REASON TO KNOW" THAT A NEW PRODUCTION OF CHILD PORNOGRAPHY "WILL BE" TRANSPORTED VIA INTERSTATE COMMERCE; §2251(A)

   BUT FOR THE ERRONEOUS INSTRUCTIONS, THE JURY WOULD NOT HAVE BEEN ABLE TO RECONCILE THE GOVERNMENT'S CONFLATED EVIDENCE, e.g. DEVICES "MADE IN CHINA" AND "USE OF THE INTERNET," WITH THE EXPRESSLY PROSCRIBED REQUIREMENTS TO ESTABLISH JURISDICTION AT 18 U.S.C. §2251(A), AND THE OUTCOME WOULD HAVE BEEN DIFFERENT. SEE KEATING v HOOD, 191 F.3d 1053 (9th CIR. 1999).

PREJUDICE

15. SINCE ELEMENTS AT §2251(A) WERE REQUIRED TO PROVE COUNT ONE'S PREDICATE, PER THE COURT'S RULE THAT THE "PREDICATE CONTEMPLATED BY §2422(B) IS AN ELEMENT.. NOT A MEANS," AND SINCE THE JURY HAD ACQUITTED MOVANT IN COUNTS THREE AND FOUR, THE ERROR IS AT HARM OF LIBERTY. DOC.221 P.20, n.2.

16. EVEN IF THIS WERE NOT ENOUGH TO SHOW A FATAL VARIANCE, THE FACTUAL STORY IS NOT ENDED. THE JURY WAS GIVEN EXPLICIT PERMISSION TO ABANDON THEIR DECISION REGARDING THE FIFTH (EXPRESS JURISDICTIONAL) ELEMENT ALTOGETHER. THUS, THE INTEGRITY OF THE JURY'S ULTIMATE DECISION IS THROWN INTO GRAVE DOUBT BY THE PERMISSION GIVEN:

   "IF YOU DECIDE THAT THERE WAS ANY EFFECT AT ALL ON INTERSTATE OR FOREIGN COMMERCE, THEN THAT IS ENOUGH TO SATISFY THIS ELEMENT." (JURY INSTR. №30) DOC.222, P.38.

17. USED TO ESTABLISH JURISDICTION IN GENERAL CRIMES SUCH AS ARSON, THE INSTRUCTION WAS ERRONEOUSLY APPLIED TO "DEFINE[]... INTERSTATE AND FOREIGN COMMERCE" TO THE JURY. Id. THE PERMISSION CIRCUMVENTS THE EXPRESSLY PROSCRIBED JURISDICTIONAL REQUIREMENTS AT 18 U.S.C. §2251(A).

PREJUDICE

18. THE ERRONEOUS ALTERNATIVE PERMISSION CONTINUED — DESTROYING THE INTEGRITY OF THE JURY'S FINDINGS: "ALL THAT IS NECESSARY IS THAT THE NATURAL AND PROBABLE CONSEQUENCE OF THE ACTS MR. ISABELLA TOOK WOULD BE TO AFFECT INTERSTATE OR FOREIGN COMMERCE." DOC.222, P.38.

THIS INSTRUCTION ACTUALLY MILITATES AGAINST THE EXPLICIT REQUIREMENTS FOR ESTABLISHING JURISDICTION UNDER §2251(a). FURTHERMORE, THE JURY WAS GIVEN PERMISSION TO "SATISFY THE ELEMENT" BY THE "NATURAL AND PROBABLE CONSEQUENCE OF THE ACTS." Id. THIS STANDARD, AKIN TO PROBABLE CAUSE, IS. "MORE LIKELY THAN NOT TO FOLLOW ITS SUPPOSED CAUSE." BLACK'S LAW DICTIONARY, 9TH ed., BRYAN GARNER, (WEST 2009). AS A CONSEQUENCE OF THIS ERRONEOUS JURY INSTRUCTION, THE JURY WAS PERMITTED TO DECIDE THE FIFTH ELEMENT AT §2251(a) — ESTABLISHING JURISDICTION — BY A "PROBABLE CAUSE" STANDARD RATHER THAN BY THE "BEYOND A REASONABLE DOUBT" STANDARD OF PROTECTION GUARANTEED BY THE DUE PROCESS CLAUSE OF THE CONSTITUTION. JACKSON V VIRGINIA; FIFTH AND FOURTEENTH AMENDMENTS; DOC.222, P.38

PREJUDICE

19. THE ERRONEOUS LANGUAGE AT THE JURISDICTIONAL ELEMENT AT §2251(a), COMBINED WITH THE ALTERNATIVE PERMISSION TO "DECIDE" OR "SATISFY THIS ELEMENT," Id. BY "ANY EFFECT AT ALL" ON INTERSTATE COMMERCE, AT THE PROBABLE CAUSE STANDARD, BOTH DESTROYED THE IMPARTIALITY GUARANTEE AT THE SIXTH AMENDMENT, AND RENDERED THE JURY'S VERDICT TO BE UNRELIABLE. TO NOT GRANT RELIEF WOULD PERMIT A FUNDAMENTAL "MISCARRIAGE OF JUSTICE." MURRAY V CARRIER.

PREJUDICE

20. ACTUAL PREJUDICE IS ESTABLISHED WHERE WE CANNOT KNOW WHETHER ANY OR ALL JURORS ACTUALLY APPLIED SOME OR ANY OF THE ERRONEOUS PERMISSIONS GIVEN, OR DECIDED THE JURISDICTIONAL ELEMENT BY A STANDARD OF MERE PROBABILITY RATHER THAN "BEYOND A REASONABLE DOUBT." "WE NEED NOT ESTABLISH OR ASSUME THE JURY'S TRUE RATIONALE. REVERSAL IS REQUIRED IF SUCH RATIONALE WAS PERMISSIBLE UNDER THE COURT'S INSTRUCTIONS, THE EVIDENCE ADDUCED AND THE ARGUMENTS OF COUNSEL." HUNTER V NEW MEXICO, 916 F.2d 595 (10TH CIR. 1990). "WE CANNOT ASSUME THAT LAY TRIERS OF FACT WERE SO WELL INFORMED UPON THE LAW OR THAT THEY DISREGARDED THE PERMISSION GIVEN TO IGNORE THAT VITAL DIFFERENCE." BOLLENBACH V UNITED STATES, 326 US 612 (1946)("A CONVICTION OUGHT NOT TO REST ON AN EQUIVOCAL DIRECTION TO THE JURY ON A BASIC ISSUE").

PREJUDICE

21. EACH ERRONEOUS INSTRUCTION AND EACH ALTERNATIVE PERMISSION GIVEN, ERODED THE REQUIREMENT BROADENING THE BASES FOR FINDING THE APPROPRIATE JURISDICTIONAL HOOK TO SATISFY THE ELEMENT. CUMULATIVELY, THE ERRORS SO REDUCED THE GOVERNMENT'S BURDEN OF PROOF AS TO CAUSE AN AMENDMENT TO THE INDICTMENT, WHICH CITES THE STATUTE AT 18 U.S.C. §2251(a). Doc. 1 p. 2; Doc. 222 p. 24. THE PLAIN LANGUAGE OF THE JURISDICTIONAL ELEMENT IS NEITHER VAGUE, AMBIGUOUS, NOR OVERLY GENERALIZED TO WARRANT SUCH AMENDING. RATHER, CONGRESS WAS EXPLICIT AND CLEAR IN LAYING OUT THE THREE SPECIFIC PATHWAYS WHICH A PERSON CAN TAKE TO CAUSE THEIR ACTION IN THE "FIRST HALF" OF THE STATUTE TO BECOME PROHIBITED UNDER §2251(a) — THE **NEXUS** TO ACTUAL "CHILD PORNOGRAPHY" AT §2256(8). INCONSISTENT WITH (b) "WAS PRODUCED" OR (c) "HAS ACTUALLY BEEN TRANSPORTED", THIS CASE REQUIRED THE GOVERNMENT TO PROVE, MENS REA, AND THE JURY TO DECIDE THAT MOVANT'S WORDS AND ACTS WERE OF SUCH SUBSTANTIABILITY AS TO CAUSE S.F. TO ENGAGE IN AN EXHIBITION OF GENITALIA DEEMED "LASCIVIOUS" AS A MATTER OF LAW AT §2256(2)(A)(e), THEN SUCCESSFULLY PHOTOGRAPH THAT EXHIBITION AS TO CAPTURE THE LASCIVIOUSNESS ("MERE NUDITY" OR "EROTICA" DO NOT VIOLATE §2256(2)), THEN TO SUCCESSFULLY TRANSPORT THE COMPLETED "CHILD PORNOGRAPHY," AND THAT THE MOVANT (a) "KNEW OR HAD REASON TO KNOW THAT SUCH VISUAL DEPICTION ("CHILD PORNOGRAPHY" DEPICTING S.E.), "WILL BE TRANSPORTED" IN INTERSTATE COMMERCE AS A RESULT OF HIS WORDS AND ACTS. THE JURY NEITHER MADE, NOR WAS ASKED TO MAKE SUCH A DETERMINATION. AND SINCE THE GOVERNMENT'S EVIDENCE FAILED TO PROVE THIS ELEMENT (BY EVIDENCE CONFLATING ACROSS THE JURISDICTIONAL HOOKS), BUT FOR THE CUMULATIVE ERRORS DIVERTING THE JURY'S INQUIRY, NO REASONABLE JUROR WOULD HAVE FOUND THE JURISDICTIONAL ELEMENT AT §2251(a) TO BE SATISFIED.

PREJUDICE-PER-SE

22. THIS COMBINATION OF ERRORS AT THE JURISDICTIONAL ELEMENT SO DIFFERED FROM THE STATUTORY REQUIREMENT AND THE INDICTMENT AS TO CAUSE A FATAL VARIANCE. "AN UNCONSTITUTIONAL CONSTRUCTIVE AMENDMENT OF THE GRAND JURY'S INDICTMENT OCCURS WHEN THE EVIDENCE PRESENTED AT TRIAL, TOGETHER WITH THE JURY INSTRUCTIONS, SO ALTER, [THE INDICTMENT] AS TO CHARGE A DIFFERENT OFFENSE FROM THAT FOUND BY THE GRAND JURY." FARR. "A MODIFICATION AT TRIAL THAT ACTS TO BROADEN THE CHARGE CONTAINED IN AN INDICTMENT CONSTITUTES REVERSIBLE ERROR." LUCAS V O'DEA, 179 F.3d 412 (6th CIR. 1999).

PREJUDICE

23. Because Jury Instructions broadened the bases and permitted the Jury to circumvent their duty to decide the Fifth Element (mens rea and a nexus to child pornography), by the alternative permission "If you decide there was any effect at all on interstate commerce," the integrity of their verdict is thrown into doubt. Doc. 222 p. 38. "[B]ecause the charged conduct approached the outer limits of §2251(a)'s proscription, it was of utmost importance that the trial court give a proper jury instruction . . . It is quite possible that properly instructed, the jury would find [Movant's] conduct falls outside §2251(a)'s prohibition." United States v M<sup>c</sup>Cauley, 983 F.3d 690 (4th cir. 2020)

PREJUDICE

24. Because the Court of Appeals disregarded an objective review of each element, as mandated under Jackson v Virginia, the express jurisdictional element, mens rea and a nexus to "child pornography as defined in section 2256(8)" has not been tested as a matter of fact or as a matter of law. 18 U.S.C. §2427. 18 U.S.C. §2251(a) required elemental proof both at Count 2 and as it was named by the Jury to be the predicate offense element—Not charged by the Grand Jury. And where trial counsel failed to challenge sufficiency of evidence at §2251(a) to the District Court, the jurisdictional element has yet to be litigated or reviewed for sufficiency of evidence as a matter of law. "If the Court finds the judgment was rendered without jurisdiction" — established through a nexus of "child pornography" as defined at §2256(8) with its movement in interstate commerce... — "the Court shall vacate...or grant a new trial"; 28 U.S.C. §2255 (a). Or if evidence was insufficient to support the jurisdictional element. United States v Addonizio, 442 U.S. 178 (1979); United States v Ryan, 227 F.3d 1058 (8th cir. 2000).

25. The issue of constructive amendment of the indictment was raised to the Court of Appeals but not addressed or considered; Doc. 01019985125; 01011009073; 01011009189; preserved in a Petition for Rehearing and Rehearing En Banc (pro se); Doc. 310; and again to the Supreme Court of the United States, 140 S. Ct. 2586, 206 L. Ed. 2d 508 (2020) — (19-7775). The fatal variance / Constructive Amendment issue is not barred under the procedural default rule. Bousley v United States, 523 U.S. 614 (1998).

SEE SUPPLEMENTAL CLAIM - IN PROPRIA PERSONA

6. The Movant requests an Evidentiary Hearing be held on this matter, to Determine:

A.) Whether the Jury was misled by the accumulation of erroneous instructions;

B.) Whether alternative permissions undermined due process;

C.) Whether the Jury instructions at the Jurisdictional Element were Constitutional;

D.) Whether the variance from the statute cited by indictment was fatal;

E.) Whether the erroneous instructions constructively amended the indictment; *

F.) Whether the Jury could decide — absent the errors — if Movant knew or had reason to know that his words were of such substantiability to S.E., as to necessarily or automatically carry the expectation that "Child Pornography" "will be" transported by interstate facilities;

G.) Whether the phrase "the visual depiction" carried the Nexus to "Child Pornography" required by the statute;

H.) Whether any such errors could be rendered harmless;

I.) Whether Congress' explicit Jurisdictional limitation — absent the necessary factual evidence — divested the Court of limited Jurisdiction at §2251(a) and (e); and

J.) Whether, under the Double Jeopardy Clause, a new trial is constitutional.

* See Lucas v O'Dea, 179 F.3d 412 (6th Cir 1999) ("Variance between the instruction and the indictment," not raised on appeal constituted ineffective assistance of counsel and was not procedurally barred to raising the issue in a habeas petition — Granted).

# GROUND NINE

AO 243 (Rev. 01/15)

APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE THE MERITORIOUS ISSUE THAT ERRONEOUS JURY INSTRUCTIONS SO BROADENED THE BASES AS TO UNCONSTITUTIONALLY AMEND THE INDICTMENT.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE NEXT PAGE

(b) Direct Appeal of **GROUND NINE**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☒     RAISED SUBSTANTIVE ISSUE, BUT NOT INEFFECTIVE ASSISTANCE CLAIM. SEE GROUND EIGHT.

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

1. While it is true that trial counsel failed to object to each individual erroneous instruction, thus failing to preserve those issues on appeal, it is the cumulative effect viewed in hindsight which reveals the damage done at trial. Appellate Counsel's review of the transcripts and jury instructions alone should have identified the unconstitutional amendment to the indictment this collection of errors caused. See Gray v Lynn, 6 F.3d 265 (5th cir. 1993) (Holding that "the failure by [Movant's] counsel to object to the erroneous instruction in question cannot be considered to be within the wide range of professionally competent assistance.").

2. Where a single error may not have affected the jury's decision in a prejudicial way, the cumulative effect of these errors served to so reduce the Government's burden, as to relieve them from proving the Jurisdictional Mens Rea / Nexus to Child Pornography element at 18 U.S.C. § 2251(a). Since the indictment included the "such visual depiction" nexus to a violation at § 2256(2), and required the element of jurisdiction and Mens Rea be proven "beyond a reasonable doubt," the permissions given to the jury served to circumvent the element. This caused a variance between the indictment and the Government's proof — and between the indictment and the jury instructions. See United States v McKee, 506 F.3d 225 (3rd Cir. 2007) ("An indictment can be constructively amended through evidence, arguments, or the District Court's instructions, if they effectively amend the indictment by broadening the possible bases for conviction from that which appeared in the indictment.").

3.  Trial Counsel, Ron Gainor, raised the issue that the Government's theory and proof was premised on a different set of facts than was presented to the Grand Jury — an unconstitutional variance of the indictment. T.TR. p. 283@11 -284@15; p. 710@17 -715@8; DOC. 96.99.

In conferences Mr. Gainor expressed to Movant that he had intended to follow-up and raise the constructive amendment/variance issue on appeal. When the First Draft of the Initial Brief failed to raise the issue (and others), Movant had a phone conference with Mr. Gainor. He said he "thought it was included." Another conference included his law partner, Amber Donner. While Ms. Donner was not the Appellate Attorney, she was the primary writer of the Direct Appeal. Arguments ensued between Movant and Ms. Donner concerning the issues raised, the strength of the legal position on appeal, and the unproven elements at § 2257(a). App'x B. Communications immediately broke down, leading Movant make attempts to supplement the brief. Mr. Gainor entertained the idea of a supplemental brief only to later veto the idea. Movant wrote the Court of Appeals and attempted to both explain the conflict and request leave to supplement the brief in propria persona. (Not addressed). Appl cs. 17-1197. DOC. 01019985126; 01019985125. When it became clear that irreconcilable differences and communications breakdown was furthered by a conflict of adverse counsel, Movant attempted to file a motion to notify the Court of Attorney Conflict (2nd Notice) due to adverse counsel and again requested leave to supplement the brief. (Not addressed). DOC. 01011009 0673 and 01011009 1189. The conflict was detailed within this document—under penalty of perjury—and issues were preserved. The conflict focuses on the "Involuntary Waiver of Meritorious Issues" that was "Unreasonably Forc[ed]" onto Movant by counsel. The issue of Ineffective Assistance is not ripe until "collateral" review, per Tenth Circuit rule. United States v Porter, 405 F.3d 1136 (10th Cir. 2005). While the issue of constructive amendment/fatal variance was not raised by counsel on direct appeal, it was neither waived due to Movant's diligence in preserving the issues. See Massaro v United States, 538 U.S. 500 (2003).

4.  THE OMITTED ISSUE WAS DILIGENTLY PRESERVED BY THE MOVANT IN A PRO SE PETITION FOR REHEARING TO THE TENTH CIRCUIT COURT OF APPEALS (DENIED), AND PRO SE PETITION FOR WRIT OF CERTIORARI TO THE SUPREME COURT OF THE UNITED STATES, (DENIED). APPLT CS. 17-1197 (JUNE 4, 2019); 140 S.CT. 2586; 206 L.ED. 2d 508 (2020); 19-7775. THEREFORE, THE ISSUE IS NOT PROCEDURALLY DEFAULTED, AND IS COGNIZABLE UNDER 28 U.S.C. §2255. SEE BROWN V UNITED STATES, 167 F.3d 109 (2nd CIR. 1999).

5.  THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IS "THE RIGHT OF THE ACCUSED TO REQUIRE THE PROSECUTION'S CASE TO SURVIVE THE CRUCIBLE OF MEANINGFUL ADVERSARIAL TESTING," LEST "THE CONSTITUTIONAL GUARANTEE IS VIOLATED." UNITED STATES V CRONIC, 466 U.S. 648 (1984). THE ISSUE OF CONSTRUCTIVE AMENDMENT/FATAL VARIANCE WAS RAISED BY MOVANT TO APPELLATE COUNSEL IN TIME TO RESEARCH, PERFECT AND INCLUDE WITHIN THE DIRECT APPEAL. THE ISSUES UNDER GROUND EIGHT, WHICH ARE THE FOCUS OF THIS GROUND HAVE NEITHER BEEN ADDRESSED NOR SUBJECTED TO "THE CRUCIBLE OF MEANINGFUL ADVERSARIAL TESTING," AND THIS AT NO FAULT OF THE MOVANT. CRONIC. THE ADVERSE COUNSEL CONFLICT CAUSED THE ISSUE TO NOT BE RAISED ON DIRECT APPEAL, WHILE MOVANT'S IMMEDIATE AND PERSISTENT DILIGENCE PRESERVED THE ISSUE. NO FURTHER ACTION WAS AVAILABLE FOR MOVANT TO TAKE THAN THE ACTIONS TAKEN, (MAXIMUM DILIGENCE).

PREJUDICE

6.  NO ISSUE RAISED ON APPEAL WAS STRONGER THAN WAS THE CONSTRUCTIVE AMENDMENT/FATAL VARIANCE ISSUE. DOC. 01019943690; GROUND EIGHT. APPELLATE COUNSEL'S FAILURE TO RAISE THE MERITORIOUS ISSUE ON DIRECT APPEAL ESTABLISHED CAUSE." UNITED STATES V COOK, 45 F.3d 388 (10th CIR. 1995). PREJUDICE IS PROPORTIONATE TO THE MERIT OF THE OMITTED ISSUES VERSUS THOSE ISSUES RAISED. A COMPARISON OF THE INITIAL BRIEF TO GROUND EIGHT DEMONSTRATES THE PREJUDICE OF THE INEFFECTIVENESS OF COUNSEL'S ASSISTANCE, BY OMITTING THE FAR STRONGER ISSUE FROM THE DIRECT APPEAL. BUT FOR COUNSEL'S OMISSION OF THE MORE MERITORIOUS ISSUE WITH OBVIOUS ERROR, THERE IS A "REASONABLE PROBABILITY" (MORE LIKELY THAN NOT) THAT THE OUTCOME OF THE DIRECT APPEAL WOULD BE DIFFERENT. STRICKLAND V WASHINGTON.

7.  TRIAL COUNSEL'S GENERIC SUFFICIENCY OF THE EVIDENCE CHALLENGES WERE FUTILE WITHOUT DIRECTLY CHALLENGING THE SPECIFIC "ELEMENTS" AT 18 U.S.C. §2251(a), NECESSARY FOR PROVING BOTH COUNTS ONE AND TWO. AT A RULE 29 HEARING THE COURT QUESTIONED MS. DONNER AS TO WHETHER SHE WAS "ACTUALLY" CHALLENGING THE "ELEMENTS," PER SE. (T.TR. NOT AVAILABLE TO MOVANT). MS. DONNER ANSWERED IN THE AFFIRMATIVE, BUT FAILED TO BREAK §2251(a) DOWN INTO THE SPECIFIC ELEMENTS REQUIRED, BUT NOT PROVEN. ELEMENTS BEING THE BITE OF SUCH AN ARGUMENT, THE OMISSION WEAKENED THE ARGUMENT, LEADING TO CERTAIN OVERRULING. MOVANT REPEATEDLY AND CONSISTENTLY STRESSED THE VITAL IMPORTANCE OF CHALLENGING "ELEMENTS" AT §2251(a) TO COUNSEL, AND INSISTED ON A SUFFICIENCY OF THE ELEMENTS CHALLENGE WITHIN THE MOTION FOR JUDGMENT OF ACQUITTAL. DESPITE CALLS AND LETTERS FROM MOVANT AND CALLS AND EMAILS FROM MOVANT'S WIFE, LISA, COUNSEL FAILED TO CHALLENGE SUFFICIENCY OF ELEMENTAL PROOF IN THE J.O.A.   THE REASON COUNSEL GAVE FOR ITS OMISSION WAS THAT THEY FEARED THE COURT WOULD "DIG IN DEEPER" ON THE COURT'S "POSITION" REGARDING "ELEMENTS". BUT IT IS PRECISELY THAT SORT OF ACTION THAT WOULD HAVE BEEN USEFUL FOR CHALLENGING ELEMENTS ON APPEAL. AS A PREJUDICIAL CONSEQUENCE, COUNSEL PRESENTED A SUFFICIENCY OF THE EVIDENCE CHALLENGE ON DIRECT APPEAL WITHOUT THE COURT'S EXPLANATION OR REASONING ON HOW THE CONVICTION COULD STAND, ABSENT PROOF OF "EVERY ELEMENT" UNDER THE SUPREME COURT'S ELEMENTAL MANDATE AND DOCTRINE AT JACKSON v VIRGINIA. DID COUNSEL BELIEVE THAT A SUFFICIENCY CHALLENGE ON DIRECT APPEAL — ABSENT BOTH A CHALLENGE OF ELEMENTAL SPECIFICS AND THE COURT'S REASONING OF HOW EVIDENCE WAS RULED SUFFICIENT WITHOUT ADDRESSING THE ELEMENTS — WOULD REALLY PREVAIL? AND COULD COUNSEL HAVE BELIEVED SUCH A POSITION, WITHOUT DIRECT CONFRONTATION OF SPECIFIC ELEMENTAL PROOF AT §2251(a), WAS MORE MERITORIOUS THAN RAISING THE WELL-PRESERVED ISSUE OF CONSTRUCTIVE AMENDMENT/ FATAL VARIANCE? "BECAUSE IT EXPOSED [MOVANT] TO CHARGES FOR WHICH HE HAD NO NOTICE AND THUS NO OPPORTUNITY TO PLAN A DEFENSE, THE VARIANCE FROM THE INDICTMENT TO THE JURY INSTRUCTION CONSTITUTED A CONSTRUCTIVE AMENDMENT THAT DEPRIVED HIM OF HIS FOURTEENTH* AMENDMENT RIGHT TO NOTICE OF THE CHARGES AGAINST HIM". LUCAS v O'DEA, 179 F.3d 412 (6TH CIR. 1999), AT 417.

* THE SIXTH CIRCUIT MEANT TO SAY "SIXTH" AMENDMENT, ALTHOUGH EQUAL PROTECTION FAIRLY APPLIES.

PREJUDICE

c. Likewise, five challenges to evidentiary rulings — each of which within the range of the Court's discretion and under a harmless error analysis — were raised in lieu of the far stronger issue of Constructive Amendment or Fatal Variance. As this issue was objected to under the Grand Jury Clause, counsel could have raised an argument for appellate review under the favorable Chapman standard. See Ground One @ Item 12, 16.

And where the Court had already ruled on the evidence, none of the positions raised by Counsel in the Initial Brief indicated clear or reversible error likely to result in a different appellate outcome. By contrast, the issues raised herein under Ground Eight were obvious and clearly erroneous. Under a Chapman standard, where the Government would have been required to prove the errors in Ground Eight to be harmless beyond a reasonable doubt, there is a "reasonable probability" — more likely than not — that, but for Appellate Counsel's failure to raise the issue, the outcome would be different.

"Ineffective assistance of counsel is not established by all errors, but rather by errors so serious that the defendant is not receiving the counsel guaranteed by the Sixth Amendment." Lucas v O'Dea, 419. "We conclude that the failure of [Movant's] attorney to raise the fatal variance argument on direct appeal was sufficiently serious as to deprive [Movant] of such counsel. Thus [Movant] need not show that some external factor caused his attorney to be able to comply with [ ] procedural requirements. The District Court therefore properly granted habeas corpus relief on [Movant's] claim that there was a fatal variance between the indictment and the jury instructions." Id. Also see Keating v. Hood, 191 F.3d 1053 (9th cir. 1999) ("Omission of the mens rea element from the jury instructions violated petitioner's right to due process... Conviction was reversed," and habeas relief granted, "because it was unclear what theory the jury used to convict.").

# GROUND TEN

AO 243 (Rev. 01/15)

WHERE THE QUESTION WAS CLEAR AND OBVIOUS, APPELLATE COUNSEL'S FAILURE TO CHALLENGE 18 U.S.C. § 2251(a) FOR BEING UNCONSTITUTIONAL AS APPLIED CONSTITUTED INEFFECTIVE ASSISTANCE.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE NEXT PAGE

(b) Direct Appeal of **GROUND TEN**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

COUNSEL WAS INEFFECTIVE ASSISTANCE ON APPEAL.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

1. Where issues raised were not as strong; had Appellate Counsel Gainor raised the constitutional challenges he had intended to raise, it is more likely than not that the outcome of the appeal would be different. Since the government conceded that Mr. Isabella did not play a role in the production of the ONLY alleged child pornography in this case," neither did he and/or S.F. engage in any sexually explicit conduct, Movant's conduct did not fit the "class of activities" contemplated under 18 U.S.C. §2251(a) + (e). The relevant question that would have been significantly stronger than the issues Appellant Counsel raised is e.g.: With no "sexually explicit conduct" at §2256(2)(A) engaged in with the specific intent to attempt to produce "child pornography" at §2256(8) and no solicitation of such criminal conduct with a minor, how then could Movant "know or have reason to know" that "child pornography" "will be transported" in interstate commerce and how would Movant's conduct affect interstate commerce in a substantial way? §2251(a).

2. Engaging in "sexually explicit conduct" distinguishes this case from nearly all §2251(a) cases and as-applied challenges. In the Tenth Circuit, three cases challenged the constitutionality of §2251(a) with respect to the requisite violation of sexually explicit conduct, specifically the lascivious exhibition of genitalia. United States v Reedy, 845 F.2d 239 (10th cir. 1988); United States v Esch, 832 F.2d 531 (10th cir. 1987); and United States v Wolf, 890 F.2d 241 (10th cir. 1989); are all distinguishable from the instant case because they all include a minor actually engaging in "sexually explicit conduct." "Lascivious exhibition of the genitals or pubic area" defined at §2256(2)(A)(v) has been the subject of some controversy with courts split on whether the 6th factor under United States v Dost, 636 F.Supp. 828 (S.D.Cal. 1986), is helpful or unconstitutional. See Judge Higginbotham's criticism of Dost, for example, in United States v Steen, 634 F.3d 822 (5th cir. 2011) (Section 2251(a) reversed for insufficiency of the evidence, because the pubic area was not the "focal point" of the surreptitious filming of a 16 year old nude); explaining that "lascivious exhibition" is a child's genitalia displayed lasciviously, without regard for what the photographer or viewer find sexually of interest. It is not a "lascivious exhibition of children in winter coats." (Higginbotham concurring). The jury did not "unanimously" decide that any conduct or image did or would be "sexually explicit conduct." Richardson; §2256(2)(A).

3. UNITED STATES v. ISABELLA IS THE FIRST CASE AT 18 U.S.C. §2251(a) & (e) TO BE AFFIRMED WITHOUT EITHER THE ENGAGING IN OF "SEXUALLY EXPLICIT CONDUCT" AT §2256(a) OR AN UNEQUIVOCAL SOLICITATION TO A MINOR, DIRECTING A PHOTO SHOOT OR VIDEO TO INCLUDE "SEXUALLY EXPLICIT CONDUCT." ACCORDINGLY, A CHALLENGE TO THE CONSTITUTIONALITY OF §2251(a), AS-APPLIED TO THE MOVANT'S CONDUCT NOT INCLUDING SEXUALLY EXPLICIT CONDUCT, SHOULD HAVE BEEN AN OBVIOUS CHOICE TO APPELLATE COUNSEL. AND SINCE CONDUCT NOT INCLUDING "SEXUALLY EXPLICIT CONDUCT" CANNOT QUALIFY MOVANT'S CONDUCT UNDER A "CLASS OF ACTIVITIES" AT §2251(a), APPELLATE COUNSEL'S WINNOWING OUT THIS STRONGER, MORE MERITORIOUS ISSUE, IN FAVOR OF ONE OF MANY ADMISSIBILITY OF EVIDENCE ISSUES UNDER A HARMLESS ERROR STANDARD, WAS OBJECTIVELY UNREASONABLE. WHETHER ASSESSING CONDUCT UNDER LOPEZ, MORRISON, WICKARD OR RAICH, WITHOUT ENGAGING IN SEXUALLY EXPLICIT CONDUCT OR UNEQUIVOCALLY SOLICITING SAME, SUCH ASSESSMENT WOULD BE UNABLE TO IDENTIFY ANY SUBSTANTIAL EFFECT ON INTERSTATE COMMERCE — ESPECIALLY WHERE §2251(a) ATTEMPTS REQUIRE A PERSON "KNOWS..." "CHILD PORNOGRAPHY" WILL MOVE IN INTERSTATE COMMERCE.

4. MR. GAINOR HAD INTENDED TO CHALLENGE THE CONSTITUTIONALITY OF THE CONVICTION AS-APPLIED, EXPRESSING HIS VIEWS CONCERNING THE FIRST AMENDMENT AND SEXTING TO THE MOVANT AND COURT ALIKE. UPON RAISING THE ISSUE TO COUNSEL THAT AN ATTEMPT CANNOT BE "INTENT ALONE", MS. DONNER DISAGREED AND A LEGAL "DEBATE" ENSUED. APPELLATE COMMUNICATIONS BROKE DOWN AND PROGRESS SLOWED. WHEN THE INITIAL BRIEF DID NOT REFLECT MANY OF MR. GAINOR'S CHOSEN ISSUES, MOVANT FILED A MOTION TO SUPPLEMENT THE BRIEF IN PROPRIA PERSONA AND SECOND NOTICE OF ATTORNEY CONFLICT/ADVERSE COUNSEL. SEE DOC.01011009067 3, p. 13-15; 01099 85125 - 26. MS. DONNER EXPRESSED SYMPATHIES WITH THE GOVERNMENT'S THEORY THAT SEXTING SHOULD BE ENOUGH TO VIOLATE §2251(a) AND §2422(b). DESPITE MR. GAINOR BEING SOLE ATTORNEY OF RECORD ON APPEAL, IT IS MS. DONNER WHO WRITES THE BRIEFS IN THEIR FIRM. "ONE-HALF OF HIS LAW FIRM HOLDS A DIFFERENT OPINION – THE HALF THAT WRITES THE BRIEFS. [A]N ATTORNEY WHO IS BURDENED BY CONFLICT BETWEEN HIS CLIENT'S INTERESTS AND HIS OWN SYMPATHIES TO THE PROSECUTION'S POSITION IS CONSIDERABLY WORSE THAN AN ATTORNEY WITH LOYALTY TO OTHER DEFENDANTS, BECAUSE THE INTERESTS OF THE [GOVERNMENT] AND THE DEFENDANT ARE NECESSARILY IN OPPOSITION." CM01009067 3 @ p. 13-15 (CITING OSBORN v. SHILLINGER, 861 F.2d 612 (10th cir. 1988) (QUOTING UNITED STATES v. CRONIC, 466 U.S. 648 (1984)).

5. THE EVIDENTIARY ADMISSIBILITY ISSUES Mr. GAINOR DID RAISE ON DIRECT APPEAL WERE NOT REMOTELY AS MERITORIOUS AS CHALLENGING THE CONSTITUTIONALITY OF §2251(a)'s PROHIBITION ON ENGAGING IN "SEXUALLY EXPLICIT CONDUCT" "FOR THE PURPOSE OF PRODUCING "CHILD PORNOGRAPHY," ABSENT ANY "SEXUALLY EXPLICIT CONDUCT" BEING ENGAGED IN, ABSENT ANY "CHILD PORNOGRAPHY" BEING PRODUCED, AND ABSENT ANY CRIMINAL SOLICITATION OR TRAVEL ATTEMPT IN FURTHERANCE OF SUCH CONDUCT. 18 U.S.C §2251(a) AND (e); §2256(2),(8). THE ELEMENTS OF ATTEMPTED PRODUCTION ARE EXACTLY THE SAME AS THE ELEMENTS OF THE SUBSTANTIVE OFFENSE, WITH THE ADDITION OF THE "OVERT ACT POINTED DIRECTLY TOWARD THE COMMISSION OF THE CHARGED OFFENSE" REQUIREMENT. MONHOLLAND. "MERE ACTS OF PREPARATION", (SUCH AS SEXTING, FLIRTING, EVEN "GROOMING,") "NOT PROXIMATELY LEADING TO THE CONSUMMATION OF THE CRIME, (PRODUCING CHILD PORNOGRAPHY), "WILL NOT SUFFICE TO ESTABLISH AN ATTEMPT TO COMMIT IT, ESPECIALLY WHEN MADE AT A DISTANCE FROM THE PLACE WHERE THE SUBSTANTIVE OFFENSE IS TO BE COMMITTED." Id. THE JURY DID NOT DECIDE ANY ACT THAT WOULD SATISFY THE ELEMENTS OF "SEXUALLY EXPLICIT CONDUCT" AND "CHILD PORNOGRAPHY" REQUIRED BY THE STATUTE AT §2251(a). SEE RICHARDSON v UNITED STATES, 526 U.S. 813 (1999). THUS, THE JURY'S VERDICT DOES NOT CAUSE ANY EVIDENCE TO BE CULPABLE CONDUCT. FOR THAT, WE ARE LIMITED TO THE RECORD.

6. THE UNIT OF PROSECUTION AT 18 U.S.C §2251(a) IS MULTI-FOLD: ENGAGING IN SEXUALLY EXPLICIT CONDUCT WITH A MINOR, AND DOING SO "FOR THE DOMINANT PURPOSE OF" PRODUCING THE COMMODITY OF CHILD PORNOGRAPHY FOR INTERSTATE MOVEMENT. UNITED STATES v MCCAULEY, 983 F.3d 690 (4TH CIR. 2020), (SECTION 2251(a) VACATED SINCE ENGAGING IN SEXUALLY EXPLICIT CONDUCT WITH A MINOR AND PHOTOGRAPHING THAT CONDUCT "FALLS OUTSIDE §2251(a)'s PROHIBITION ON USING MINORS FOR "THE PURPOSE" OF PRODUCING CHILD PORNOGRAPHY.) THE FOURTH CIRCUIT FOUND A JURY INSTRUCTION SUBSTITUTED THE WORD "THE" FOR THE WORD "AN" PREJUDICED DEFENDANT. "IN PALOMINO-CORONADO, [UNITED STATES v] [805 F.3d 127 (4TH CIR. 2015)], WE VACATED A DEFENDANT'S CONVICTION BECAUSE "THE SINGLE PHOTO WAS ~~BECAUSE~~ NOT EVIDENCE THAT PALOMINO-CORONADO ENGAGED IN SEXUAL ACTIVITY... TO TAKE A PICTURE, ONLY THAT HE ENGAGED... AND TOOK A PICTURE." Id. "WHILE THE IMAGE ITSELF CAN BE PROBATIVE OF INTENT... IT CANNOT BE THE ONLY EVIDENCE." Id. "ANY INTERPRETATION OF §2251(a) MUST GIVE FULL EFFECT TO THE SPECIFIC INTENT ELEMENT." Id. ALSO SEE UNITED STATES v CRANDON, 173 F.3d 122 (3RD CIR. 1999) (SECTION 2251(a) REVERSED WHERE COURT FAILED TO MAKE "ANY ACTUAL EXAMINATION... OF HIS PURPOSE.")

PREJUDICE

A. But for the conflict concerning adverse counsel, Mr. Gainor would have raised the argument that sexting with a minor, without more, is outside the purview of 18 U.S.C. §2251(a). And without §2251(a) as the predicate offense in Count One (and Counts Three and Four acquitted by the jury); Movant's liberty for the remainder of his *natural* life expectancy hangs squarely on the determination of whether Movant's "sexting" behavior was prohibited at §2251(a), and so categorically affected interstate movement of "child pornography".

B. If Movant's communications with S.F. were not his attempt to use her to produce child pornography for him, then, what was his purpose for "requesting photos," engaging in role-play scenarios with her, and *T.T.R. p. 583 @13-23.* "exchanging" a single nude or semi-nude photo toward the start of "their three-month relationship"? Isabella @836: "'SEXTING' is the practice of sending or posting sexually suggestive text messages and images, including nude or semi-nude photographs, via cellular phones or over the internet." Miller v. Mitchell, 598 F.3d 143 (3rd Cir. 2010).

Mr. Gainor understood that the whole of the communications "amount to nothing more than sexting." *Doc. 78, p. 14.* *T.T.R. p. 265* "[S]imple sexting, that doesn't request something illegal to occur, is protected. @ 4-24. Mr. Gainor is correct that "simple sexting" which is merely suggestive, romantic and playful is protected speech. Commonly called "the new first base," tens of millions of American of nearly all age groups engage in some form of sexting, on cellphones or through one of the online dating websites, i.e. Plenty of Fish, Tagged. See Terri Day, The New Dating Behavior: Sexting, 33 Hastings Comm. & Ent. L.J. 69 (2010). Commonly engaged in by strangers, sexting is a form of entertainment which yields immediate gratification. *Id.* This is quite different from the Government's theory of "grooming" a future sexual abuse — a preparatory act rejected for being an unvalidated behavioral science theory, like "polygraph" or the "Horizontal Gaze Nystagmus". See State v Henley, Or. S.C. S064494 (7/19/18) *OR.S.C. №. 37* at pg. 297-304. "Grooming" was also rejected as the "substantial step" without "other acts" to mark criminal intent. United States v Howard, 766 F.3d 422 (5th Cir. 2014). Where "grooming" is to prepare a child for a sexual encounter in the future, sexting is entertainment occurring in the present, such as when S.F. initiates common role-play sexting: "dream of u kissing me...then kissing ur body and touching you and slowly unzipping ur pants;" "sliding my hand...... now you come up with what you want." *T.T.R. 583 @13-23.* It is clear and irrefutable that S.F. is engaging in common sexting without more with Movant. Id. Sexting with a minor without more is not within §2251a's reach.

**9.** THE FIRST AMENDMENT, WHILE PROTECTING SIMPLE SEXTING DOES NOT PROTECT THE CLASS OF CONDUCT THAT §2251(a)

PROHIBITS — SPEECH WHICH COERCES, USES OR OTHERWISE CAUSES A MINOR TO ENGAGE ACTUALLY —

(NOT VIRTUALLY) IN "SEXUALLY EXPLICIT CONDUCT," THE PREDICATE CONDUCT REQUIRED BY THE STATUTE.

THE SUPREME COURT HAS RECOGNIZED "CHILD PORNOGRAPHY AS A CATEGORY OF MATERIAL OUTSIDE THE PROTECTION

OF THE FIRST AMENDMENT." NEW YORK v FERBER, 458 U.S. 747 (1982). BUT WHERE MOVANT MADE NO

REQUEST FOR S.F. TO ENGAGE ACTUALLY IN SEXUAL INTERCOURSE, MASTURBATION OR AN EXHIBITION OF HER

GENITALIA THAT IS BEYOND "MERE NUDITY" TO BE LEWD AND LASCIVIOUS", (AND TO DO SO FOR THE PURPOSE

OF PRODUCING "CHILD PORNOGRAPHY), THEN MOVANT'S ACTS AND WORDS ARE NOT WITHIN THE

"CHILD PORNOGRAPHY" EXCLUSION CONTEMPLATED IN FERBER. . See 18 U.S.C. §2256(8). BUSIC v UNITED STATES,

ALSO SEE:

446 U.S. 114 (1979)

(WHEN A STATUTE IS SPECIFICALLY TAILORED" TO THE [SEXTING] OFFENSE INVOLVED, A

PROSECUTOR MUST CHARGE A DEFENDANT UNDER THAT STATUTE.")

**10.** SEXTING WITH A MINOR, WHICH STEPS BEYOND COMMON OR SIMPLE SEXTING TO INCLUDE **OBSCENITY**,

IS FEDERALLY PROSCRIBED AND CODIFIED AT THREE STATUTES. "[T]HE TEST FOR CHILD PORNOGRAPHY

IS SEPARATE FROM THE OBSCENITY STANDARD ENUNCIATED IN MILLER [v CALIFORNIA, 413 U.S.15 (1973]." Id @764.

THIS DISTINCTION IS VITAL TO A DETERMINATION OF WHETHER MOVANT'S CONDUCT FALLS OUTSIDE THE

DEFINITION AT §2256(2)(A), AND HENCE §2251(a). 18 U.S.C. §1470 PROHIBITS THE TRANSFER OF SEXUALLY EXPLICIT

SEE          §1470

IMAGES TO A MINOR UNDER 16 YEARS OF AGE. UNITED STATES v ROGERS, 474 Fed.App'x 463 (7th CIR. 2012)(SEXTING INCLUDED DEFENDANT

SENDING OF AN IMAGE OF HIM HOLDING HIS ERECT PENIS, SUGGESTING "MASTURBATION" AT §2256(2)). THE SEVENTH CIRCUIT

REVERSED A CONVICTION AT §2422(b), DECIDING THAT VIRTUAL SEXUAL ACTIVITY COULD NOT SUPPORT THE REQUIREMENT,

BUT NOTED THE PROSECUTOR COULD HAVE CHARGED [DEFENDANT] WITH AT LEAST TWO FEDERAL [SEXTING] OFFENSES :

SEE

18 U.S.C. §1470; . . . OR 47 U.S.C. §223(d)(1)." UNITED STATES v TAYLOR, 640 F.3d 264 (7th CIR. 2011). CONGRESS NEVER

INTENDED §2251(a) TO REACH SO FAR AS TO SWEEP IN EITHER COMMON OR OBSCENE SEXTING WITH A MINOR. WE

KNOW THIS BY COMPARING §2251(a)'s 15-YEAR MANDATORY SENTENCE WITH §1470'S LACK OF A MANDATORY

MINIMUM AND ITS 10 YEAR MAXIMUM PUNISHMENT. LIKEWISE, BOTH 47 U.S.C. §223(A)(1) AND (a)(1)(B) ARE

PUNISHABLE BY A "FINE OR UP TO 2 YEARS IMPRISONMENT." WHILE MOVANT'S SEXTING WITH S.F. MAY OR MAY NOT HAVE

CROSSED THE OBSCENITY LINE INTO DESPICABLE SEXTING WITH A MINOR, THE FACT THAT NO "SEXUALLY EXPLICIT

CONDUCT" AT §2256(2)(A) IS ENGAGED IN ACTUALLY OR ACTUALLY ATTEMPTED INDICATES THAT THAT SEXTING

CONDUCT (███████████████), IS NOT WITHIN THE PURVIEW OF §2251(a) — HAVING NO

IMPACT ON THE INTERSTATE PRODUCTION OF CHILD PORNOGRAPHY.

11. When it comes to determing constitutionality as-applied to conduct concerning the production of child pornography, where NO SEXUALLY EXPLICIT CONDUCT WAS ENGAGED IN, or explicitly, or criminally, solicited from a minor, and no "child pornography" was produced, the stand-by Supreme Court cases, i.e. Morrison, Lopez, Raich and Wickard are not helpful. The closest comparison is Wickard; had he planted his wheat seeds but failed to water them; there would be no crop with which to feed his v Filburn, 317 u.s. 111 (1942); family; and no commodity to affect supply and demand in the interstate market. Had the Movant engaged in "sexually explicit conduct" at §2256(2)(A) with S.E. there would be the potential for "harvesting a crop" by taking a photo of that conduct. But, Because no "sexually explicit conduct" was engaged in, no "child pornography as defined in Section 2256(8)" was possible. §2251(a); §2427. Not only are the silos empty but the stray crop has gone to the birds. Without a crop to harvest, there can be no commodity to effect the interstate market for wheat. Thus, Wickard's inability, or choice, not to bring a crop to harvest and/or market Had no intrastate effect. In such scenario, the Supreme Court would have been unable to draw a nexus between Wickard's inability to grow wheat (or perhaps his preference for watermelon), and the interstate market for wheat. "We are not inclined to expand the limits of federal commere power beyond what the Supreme Court has suggested to be its OUTER LIMITS. United States v Smith, 402 F.3d @1318 (11th cir. 2005) (Section 2251(a) was reversed for being unconstitution- al as-applied, since Defendant's purely intrastate, noncommercial production...of child pornography did not substantially affect interstate commerce). The Eleventh Circuit decided this issue under United States v Maxwell, 386 F.3d @1058 (11th cir.   ), reversing §2251(a) for being unconstitutional as-applied to Maxwell's "exceedingly attenuated" effect on interstate commerce. Id. Considering the Supreme Court's description of Wickard as the "most far reaching example of Commerce Clause authority, the Maxwell Court reasoned that "the causal chain necessary to link his activity with any substantial impact on interstate commerce might be long enough to reach the outer limits of the solar system." Id. @1058. Both Smith and Maxwell engaged in sexually explicit conduct with a minor and produced visual depictions of such conduct. Movant did neither

12. THE SIXTH CIRCUIT DECIDED THAT A DEFENDANT, WHO ENGAGED IN SEXUALLY EXPLICIT CONDUCT WITH A MINOR AND PHOTOGRAPHED THAT CONDUCT, "WAS NOT INVOLVED, NOR INTENDED TO BE INVOLVED IN THE DISTRIBUTION OR [PRODUCTION, MANUFACTURING OR PUBLISHING AT §2256(3)] OF THE PICTURES IN QUESTION." UNITED STATES v. CORP, 236 F.3d 325 (6TH CIR. 2001). LIKE THE MOVANT IN THE INSTANT CASE, "CORP WAS NOT ALLEGED TO BE A PEDOPHILE NOR WAS HE ALLEGED TO HAVE BEEN ILLEGALLY SEXUALLY INVOLVED WITH MINORS . . . [c]LEARLY NOT THE TYPICAL OFFENDER FEARED BY CONGRESS THAT WOULD BECOME ADDICTED TO PORNOGRAPHY AND PERPETUATE THE INDUSTRY VIA INTERSTATE CONNECTIONS." Id. THE SIXTH CIRCUIT DECIDED THAT BECAUSE CORP WAS "NOT INVOLVED . . . IN THE DISTRIBUTION . . . OF THE PICTURES IN QUESTION," THAT HIS ACTIVITY WAS "NON-COMMERCIAL" IN NATURE. Id. CORP'S CHALLENGE TO THE CONSTITUTIONALITY OF A NEARLY IDENTICAL STATUTE AT §2252(a)(4)(B) PREVAILED.

13. SIMILARLY, THE NINTH CIRCUIT DECIDED THAT THE "HOME-GROWN PHOTOGRAPH" OF A WOMAN DEFENDANT AND HER MINOR DAUGHTER'S GENITALIA "NEVER ENTERED IN AND WAS NEVER INTENDED FOR INTERSTATE COMMERCE," FINDING NO "SUBSTANTIAL CONNECTION BETWEEN HER" . . . — SEXUALLY EXPLICIT CONDUCT WITH A MINOR FOR THE PURPOSE OF PRODUCING VISUAL DEPICTIONS OF THAT ENGAGING — "AND ANY INTERSTATE COMMERCIAL ACTIVITY." UNITED STATES v. McCOY, 323 F.3d 1114 (9TH CIR. 2003). "IN BOTH CORP AND McCOY, A MINOR WAS INDUCED TO ENGAGE IN SEXUALLY EXPLICIT CONDUCT FOR THE PURPOSE OF PRODUCING A VISUAL DEPICTION THAT COULD FIND ITS WAY INTO THE NATIONAL MARKET FOR PORNOGRAPHY." Id. (TROTT DISSENTING). NEITHER MOVANT, NOR MINOR S.F. "ENGAGED IN ANY SEXUALLY EXPLICIT CONDUCT" AT §2256(2)(A) FOR ANY REASON. THE GOVERNMENT FAILED TO PROVE ANY NEXUS TO "CHILD PORNOGRAPHY" AT §2256(8), AS PLED IN GROUND EIGHT. AND NO ATTEMPT WAS MADE TO PHOTOGRAPH S.F.'S "SEXUALLY EXPLICIT CONDUCT." IN FACT, NO EVIDENCE WAS OFFERED SUGGESTING THAT, [AFTER THE "CHILD PORNOGRAPHY" WAS PRODUCED APART FROM MOVANT'S INVOLVEMENT, ("TORSO PIC" WAS PRODUCED ON "AUGUST 9, 2013")], S.F. HAD EVER ENGAGED IN SEXUALLY EXPLICIT CONDUCT DURING THE PERIOD OF THE INDICTMENT: DOC. 1 pt.2 "SEPTEMBER 1, 2013" TO "FEBRUARY 14, 2014." IN SHARP CONTRAST, BOTH CORP AND McCOY DID ENGAGE IN THE SUBJECT SEXUALLY EXPLICIT SEX ACTS AND PHOTOGRAPHED IT. THEIR CONVICTIONS WERE REVERSED BECAUSE §2251(a) WAS UNCONSTITUTIONAL AS-APPLIED. HOW MUCH MORE SO WAS §2251(a) UNCONSTITUTIONAL AS-APPLIED TO MOVANT'S CONDUCT?

14. "THE COURTS CONCLUDED — EXPLICITLY IN M$^c$COY, AND IMPLIEDLY IN CORP — THAT THE CONDUCT WAS NON-ECONOMIC AND NON-COMMERCIAL IN NATURE." UNITED STATES v MORALES-DE JESUS, 372 F.3d 6 (1ST CIR. 2004) AT 20. THIS FACT ENABLED THE COURTS TO "AVOID APPLYING THE WICKARD AGGREGATION PRINCIPLE TO THE AS-APPLIED CHALLENGE." Id. @ 19. "WHEREAS THE WICKARD STATUTE REGULATED AN INTERSTATE MARKET INDIRECTLY THROUGH REGULATION OF PURELY LOCAL PRODUCTION, THE SAME CANNOT BE SAID OF § 2251(a). 🖎 THE ELEVENTH CIRCUIT'S DECISION TO REVERSE MAXWELL AND SMITH'S §2251(a) SMITH. CONVICTIONS WAS DUE TO THEIR NON-COMMERCIAL CONDUCT "DID NOT SUBSTANTIALLY AFFECT INTERSTATE COMMERCE," AND SO WERE NOT REGULATED UNDER THE COMMERCE CLAUSE, U.S. CONST. art. 1, § 8, cl. 3." SMITH.

15. WHERE CHALLENGES TO THE CONSTITUTIONALITY OF §2251(a) AS-APPLIED TO CORP, M$^c$COY, MAXWELL, AND SMITH, ALL PREVAILED DESPITE THEIR HAVING ENGAGED IN SEXUALLY EXPLICIT CONDUCT WITH A MINOR AND TAKING A PHOTO OF THAT ENGAGING, HOW MUCH MORE SO WAS §2251(a) UNCONSTITUTIONAL AS-APPLIED TO MOVANT'S CONDUCT — WHERE HE NEITHER ENGAGED, NOR PHOTOGRAPHED SUCH ENGAGING, NOR "SOLICITED" S.F. TO DO SO? THE JURY'S VERDICT IS NOT EVIDENCE OF A FACT WHICH DID NOT OCCUR. IT IS EVIDENCE THAT THE JURY'S VERDICT IS INCONSISTENT WITH FACTS ON RECORD. WITH THE PERMISSIONS GIVEN AT THE JURISDICTIONAL ELEMENT AND CLEARLY ERRONEOUS PREJUDICIAL INSTRUCTIONS AT GROUND EIGHT; COMBINED WITH NO "EXAMINATION OF" SPECIFIC INTENT; CRANDON; AND UNCONSTITUTIONAL INTERPRETATION AT §2256(2); GROUND SIXTEEN; ALL OF WHICH SERVING TO BROADEN THE BASES FOR FINDING GUILT AT §2251(a) (ISSUE PRECLUSION ASIDE); 🖎 THE INFERENCES REQUIRED FOR A REASONABLE JUROR TO FIND ALL OF THE ELEMENTS IN COUNT TWO BASED ON THE CONDUCT ON RECORD MUST NECESSARILY EXTEND BEYOND "THE OUTER LIMITS" CONTEMPLATED UNDER WICKARD. CONSEQUENTLY, THE GOVERNMENT DID NOT AND CANNOT DEMONSTRATE HOW MOVANT'S CONDUCT UNDER §2251(a)'s PROHIBITION HAD A "SUBSTANTIAL EFFECT ON INTERSTATE COMMERCE." SMITH.

PREJUDICE

16. IF NOT FOR APPELLATE COUNSEL GAINOR LABORING UNDER A BURDEN OF CONFLICT WHICH AMOUNTED TO SOME MEASURE OF ADVERSE COUNSEL, HE WOULD HAVE STUCK TO HIS ORIGINAL PLAN AND CHALLENGED THE CONSTITUTIONALITY OF THE MOVANT'S CONVICTION, DUE TO OVERBREADTH AS-APPLIED. HAVING EXPRESSED HIS VIEW THAT HE BELIEVED THE SEXTING CONDUCT WAS NOT PROHIBITED UNDER §2251(a), HIS FAILURE TO RAISE SUCH A MERITORIOUS ISSUE WAS NOT ATTRIBUTED TO WINNOWING OUT THE CLAIM, BUT RATHER WAS A MOVE IN ALLIANCE WITH HIS LAW PARTNER. "THE RIGHT OF THE ACCUSED TO REQUIRE THE PROSECUTION'S CASE TO SURVIVE THE CRUCIBLE OF MEANINGFUL ADVERSARIAL TESTING." MUST NOT "LOSE ITS CHARACTER AS A CONFRONTATION BETWEEN ADVERSARIES, [OR] THE [SIXTH AMENDMENT] CONSTITUTIONAL GUARANTEE IS VIOLATED. UNITED STATES v CRONIC, 466 US 648 (1984). AN EVIDENTIARY HEARING IS NEEDED TO DETERMINE WHETHER APPELLATE COUNSEL WAS LABORING UNDER A CONFLICT, CONTRIBUTING TO HIS FAILURE TO RAISE THE MERITORIOUS ISSUE ON APPEAL. UNITED STATES v COOK, 45 F.3d 388 (10th CIR. 1995). SUCH CONFLICT AND THE RESULTING FAILURE, ESTABLISHES "CAUSE" AND, BUT FOR COUNSEL'S FAILURE TO RAISE THE CONSTITUTIONAL CHALLENGE ON DIRECT APPEAL — MORE MERITORIOUS THAN ISSUES RAISED — IT IS MORE THAN LIKELY THAT THE "OUTCOME WOULD BE DIFFERENT." STRICKLAND v WASHINGTON, 466 U.S. 668 (1984); GRAY v GREER. "DEFAULT OF AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS EXCUSED, WHEN THE DEFENDANT'S TRIAL LAWYER ALSO PROSECUTED THE APPEAL." LAMBRIGHT v STEWART, 220 F.3d 1022 (9th CIR. 2000).

# GROUND ELEVEN

AO 243 (Rev. 01/15)   BY NOT REQUIRING PROOF OF THE ACTUS REUS ELEMENT, 18 U.S.C. §2422(b)
IS UNCONSTITUTIONAL AS APPLIED AND VIOLATED DUE PROCESS BY ELEMENTS.

APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE THE ISSUE.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE NEXT PAGE

(b) Direct Appeal of **GROUND ELEVEN**

   (1) If you appealed from the judgment of conviction, did you raise this issue?
       Yes ☐    No ☒

   (2) If you did not raise this issue in your direct appeal, explain why:
       APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE

(c) Post-Conviction Proceedings:

   (1) Did you raise this issue in any post-conviction motion, petition, or application?
       Yes ☐    No ☒

   (2) If you answer to Question (c)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed:

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available):

   _____

   (3) Did you receive a hearing on your motion, petition, or application?
       Yes ☐   No ☐
   (4) Did you appeal from the denial of your motion, petition, or application?
       Yes ☐   No ☐
   (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
       Yes ☐   No ☐

AO 243 (Rev. 01/15)

   (6) If your answer to Question (c)(4) is "Yes," state:

   Name and location of the court where the appeal was filed:

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available):

   _____

   (7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
   issue:

1.   THE JURY WAS PERMITTED TO CONVICT THE MOVANT OF THE SAME OFFENSE AND UNDER THE SAME FACTUAL BASES AS THAT WHICH THE COURT HAD DISMISSED — OR, IN EFFECT, HAD ACQUITTED.  GROUND TWO, ¶¶1,2.  THIS CAUSED A TWO-SIDED ISSUE: (A) WHERE THE GOVERNMENT WAS REQUIRED TO PROVE THE PREDICATE OFFENSE ELEMENT (PER THE COURT'S RULING), THAT MOVANT HAD PRODUCED CHILD PORNOGRAPHY WITH S.F. BETWEEN SEPTEMBER 1, 2013 AND FEBRUARY 14, 2014; AND (B) WHERE SUCH PROOF WAS BARRED UNDER THE COMMON LAW PRINCIPLE OF COLLATERAL ESTOPPEL (ISSUE PRECLUSION) UNDER THE DOUBLE JEOPARDY CLAUSE OF THE CONSTITUTION.  DOC. 228 p. 20 @ n.2; ASHE v SWENSON.  SEE AP'X G-6  UNITED STATES v ARTERBURY 961 F.3d 1095 (10TH CIR. 2020)

2.   TO CIRCUMVENT THIS REQUIREMENT, THE GOVERNMENT USED A NOVEL ARGUMENT UNSUPPORTED BY CASE LAW — THAT THE CRIME OF COERCION AND ENTICEMENT IS "COMPLETED" UPON ACHIEVING A MINOR'S "ASSENT," WITH NO "REQUIREMENT" TO "ENGAGE IN" THE PREDICATE OR TARGET OFFENSE.  CHALLENGED ON DIRECT APPEAL THAT IN ALL CASES OF "COMPLETED" §2422(b), "THE DEFENDANT ENGAGED IN THE SUBJECT SEXUAL ACTIVITY;" APP'LT 17-1197 I.B. DOC. 01019943690, p. 18 @ ¶ 2; THE GOVERNMENT WAIVED THE ISSUE BY BEING UNABLE TO CITE A SINGLE CASE WHERE COMPLETED §2422(b) DID NOT REQUIRE THE DEFENDANT "ENGAGE IN" THE SEX ACT; CITING TWO "ATTEMPT" CASES; A.B. Id., DOC. 01019987743, p. 23, ¶ 1.  WITH NO CASE OF "COMPLETED" ASSENT, THE GOVERNMENT CITED DICTA FROM SEVEN MORE ATTEMPT CASES; Id. p. 24;  "[EVERY ONE OF THE CASES CITED INVOLVED THE ATTEMPTED AND NOT THE COMPLETED OFFENSE ... [WITH] DEFENDANT'S INTENT TO ENGAGE ... CLEARLY EVIDENCED ... DESPITE THE DICTA "CONCERNING "ASSENT." R.B. DOC. 01011002563H, p. 1;  SEE PAGES 1-4; ("RICCARDI ENTICED [TWO BOYS] TO HIS HOME TO POSE FOR PICTURES AND ENGAGE IN OTHER ILLICIT CONDUCT.); ("[JOHNSON] AND THE VICTIM ENGAGED IN NUMEROUS SEXUAL ACTS.") Id.  SUPPORTED PURELY BY DICTA, THE ARGUMENT THAT §2422(b) IS "COMPLETED" UPON ACHIEVING A MINOR'S ASSENT WITHOUT A NEED TO PROVE INTENT TO ENGAGE IN THE PREDICATE OFFENSE, EFFECTIVELY TRUNCATES THE ACTUS REUS — TO ENGAGE IN THE PREDICATE OFFENSE — FROM THE STATUTE.  A SINGLE CASE NOW STANDS FOR THIS NOVEL INTERPRETATION : UNITED STATES v ISABELLA, THE SEVENTH CIRCUIT REVERSED A CASE OF §2422(b), DECIDING THAT DEFENDANT AND A MINOR-ENGAGING IN VIRTUAL SEX BY MASTURBATING ON WEBCAMS-WAS NOT A CHARGEABLE "SEXUAL ACTIVITY;" "THE PROSECUTOR WAS FREE TO CHARGE TAYLOR WITH MANY OTHER [SEXTING] CRIMES, i.e. 18 U.S.C. §1470 ... AND 47 U.S.C. §223(a)(1)." UNITED STATES v TAYLOR, 640 F.3d 255 (7TH CIR. 2011).  ACHIEVING A MINOR'S "ASSENT" WAS NOT A CONCERN OF THE SEVENTH CIRCUIT, WHICH FOCUSED ON THE ACTUS REUS — THE DEFENDANT'S ENGAGING IN THE CHARGEABLE PREDICATE OFFENSE.

Coercion and Enticement

3. The ELEMENTS at 18 U.S.C. § 2422(b) include: "WHOEVER..."; (IN RELEVANT PART)

a. | INTERSTATE COMMERCE | "USING THE MAIL OR ANY FACILITY OR MEANS OF INTERSTATE OR FOREIGN COMMERCE";

b. | MENS REA | "KNOWINGLY";

c. | UNDUE INFLUENCE | "PERSUADES, INDUCES, ENTICES, OR COERCES";

d. | MINOR STATUS | "ANY INDIVIDUAL WHO HAS NOT ATTAINED THE AGE OF 18 YEARS";

e. | ACTUS REUS | "TO ENGAGE IN";

f. | PREDICATE REQUIREMENT | "PROSTITUTION"; OR ANY SEXUAL ACTIVITY FOR WHICH ANY PERSON

CAN BE CHARGED WITH A CRIMINAL OFFENSE;" 18 U.S.C. § 2422(b).

18 U.S.C. § 2427 - PROVIDES THAT "THE PRODUCTION OF CHILD PORNOGRAPHY AS DEFINED IN SECTION 2256(8)"

MAY BE THE PREDICATE OFFENSE REQUIRED AT § 2422(b), WHICH "CAN BE CHARGED."*

SAID SIMPLY, THE GOVERNMENT WAS REQUIRED TO PROVE THAT: *Movant* USED INTERSTATE FACILITIES TO KNOWINGLY

(ENTICE OR) UNDULY INFLUENCE S.F. TO ENGAGE IN "THE PRODUCTION OF CHILD PORNOGRAPHY

AS DEFINED IN SECTION 2256(8)." § 2427; § 2422(b) * § 2427 MAKES NO PROVISION FOR ATTEMPT.


4. 18 U.S.C. § 2256 PROSCRIBES: "FOR THE PURPOSES OF THIS CHAPTER [18 U.S.C.S. §§ 2251 ET SEQ.], THE TERM —

(8) "CHILD PORNOGRAPHY" MEANS ANY VISUAL DEPICTION, INCLUDING ANY PHOTOGRAPH, FILM, VIDEO, PICTURE,

OR COMPUTER OR COMPUTER GENERATED IMAGE OR PICTURE... OF SEXUALLY EXPLICIT CONDUCT, WHERE —

(A) THE PRODUCTION OF SUCH VISUAL DEPICTION INVOLVES THE USE OF A MINOR ENGAGING IN SEXUALLY EXPLICIT CONDUCT;

(B) SUCH VISUAL DEPICTION IS A DIGITAL IMAGE, COMPUTER IMAGE... OF A MINOR ENGAGING IN SEXUALLY EXPLICIT CONDUCT;

OR (C) SUCH VISUAL DEPICTION HAS BEEN CREATED... TO APPEAR [AS]... A MINOR ENGAGING IN SEXUALLY EXPLICIT CONDUCT."
18 U.S.C. § 2256(8)

THUS, "THE PRODUCTION OF CHILD PORNOGRAPHY AS DEFINED IN SECTION 2256(8)" AS PROSCRIBED AT § 2427(IN RELEVANT PART)

INCLUDES: (1.) AN ACTUAL "VISUAL DEPICTION"; OF A (2.) "MINOR" OR "PRODUCTION... INVOLV[ING] THE USE OF A MINOR";

(3.) "ENGAGING IN" (ACTUS REUS); (4.) "SEXUALLY EXPLICIT CONDUCT" — (DEFINED AT § 2256(2)).

Doc. 221, p. 20

SINCE THE COURT RULED THAT "THE PREDICATE SEXUAL ACTIVITY CONTEMPLATED BY § 2422 IS AN ELEMENT, NOT A MEANS,"

AND ELEMENTS REQUIRE PROOF AND NOTICE, THE GOVERNMENT WAS REQUIRED TO PROVE "THE PRODUCTION OF "AN ACTUAL

"VISUAL DEPICTION" OF "S.F." "ENGAGING IN" "SEXUALLY EXPLICIT CONDUCT," (i.e. INTERCOURSE, MASTURBATION,

OR EXHIBITION OF GENITALIA RULED "LASCIVIOUS" AS A MATTER OF LAW), AND TO INCLUDE THAT ELEMENT ON THE INDICTMENT.

o.   THE GOVERNMENT ADDUCED **NO EVIDENCE** AT TRIAL TO SUGGEST TO THE JURY THAT:

    (A) "CHILD PORNOGRAPHY" AT §2256(8) WAS PRODUCED;

    (B) S.F. HAD ACTUALLY **ENGAGED** IN ANY "SEXUALLY EXPLICIT CONDUCT"; §2256(=)(A)

    (C) S.F. WAS "USED" IN A PRODUCTION OF "CHILD PORNOGRAPHY"; §2256(8);

    (D) MOVANT HAD INFLUENCED S.F. TO ENGAGE IN "SEXUALLY EXPLICIT CONDUCT"; Id. OR

    (E) MOVANT HAD TAKEN A DIRECT STEP POINTED TOWARDS COMMISSION OF THE PREDICATE ~~CHARGEABLE~~ OFFENSE

        OF PRODUCING A VISUAL DEPICTION OF S.F. **ENGAGING IN** SEXUAL INTERCOURSE, MASTURBATION,

        OR AN EXHIBITION OF HER GENITALIA ON CAMERA, SO LEWD AS TO BE "LASCIVIOUS" AS A MATTER OF

        LAW. 18 U.S.C. §2256(2)(A); MONHOLLAND.

THE GOVERNMENT DREW **NO NEXUS** CONNECTING "SEXUALIZED COMMUNICATIONS" OR SEXTING BETWEEN

MOVANT AND S.F., WITH "ANY VISUAL DEPICTION... OF SEXUALLY EXPLICIT CONDUCT, WHERE ... THE PRODUCTION OF

SUCH VISUAL DEPICTION INVOLVES THE USE OF [S.F.] **ENGAGING IN** SEXUALLY EXPLICIT CONDUCT" —

"CHILD PORNOGRAPHY" AS DEFINED AT 18 U.S.C. §2256(8).


7.   WITH NO NEXUS CONNECTING MOVANT'S CONDUCT WITH ACTUAL "CHILD PORNOGRAPHY," OR ITS PRODUCTION

    FEATURING S.F. **ENGAGING IN** "SEXUALLY EXPLICIT CONDUCT," COUNT ONE'S CONVICTION IS RESTING UPON

    FACTS WHICH LACK THE REQUISITE PREDICATE OFFENSE AT 18 U.S.C. §2422(b). A CONVICTION AT

    §2422(b) WITHOUT A VALID "CHARGEABLE" PREDICATE OFFENSE IS AN UNCONSTITUTIONAL CONVICTION.

    TO BE A VALID APPLICATION AS A PREDICATE OFFENSE, §2251(A) MUST BE "CHARGEABLE" DUE TO S.F. HAVING

    **ENGAGED IN** "SEXUALLY EXPLICIT CONDUCT" AT §2256(2), OR A PRODUCTION WAS UNDERWAY FEATURING S.F.

    **ENGAGING IN** THE PROHIBITED "SEXUALLY EXPLICIT CONDUCT." §2256(8) FEDERAL LAW DOES NOT PROHIBIT S.F. TO ENGAGE IN

    "TEEN EROTICA" OR "MERE NUDITY," AS THIS IS PROTECTED SPEECH. LOCAL OBSCENITY LAWS MAY APPLY AND DIFFER,

    BUT THE ONLY CONDUCT WHICH CONGRESS HAS PROSCRIBED AND §2427 DRAWS INTO §2422(b)'S PURVIEW, IS

    "SEXUALLY EXPLICIT CONDUCT" AT §2256(2). AND THIS "SUCH CONDUCT" WAS NEITHER "ENGAGED IN," NOR WAS

    IT UNEQUIVOCALLY SOLICITED FROM A MINOR. §2251(A) WITHOUT SUCH **NEXUS** TO "CHILD PORNOGRAPHY AS DEFINED

    BY LAW AT §2256(8)," THE PROVISION AT §2427 DOES NOT APPLY. AND WITHOUT §2427, COUNT ONE

    IS UNCONSTITUTIONAL AS-APPLIED. MOVANT STANDS CONVICTED OF AN UNCONSTITUTIONAL OFFENSE.

8. THE "ENGAGE IN" ELEMENT WAS REQUIRED AT §2422(b) IN COUNT ONE. IT IS REQUIRED AT §2251(a) AS THE PREDICATE OFFENSE ELEMENT IN COUNT ONE. AND IT IS REQUIRED IN ORDER TO FIND "CHILD PORNOGRAPHY" AT §2256(8), AS INSTRUCTED AT §2427. BECAUSE THE JURY DID NOT "UNANIMOUSLY" DECIDE THIS ESSENTIAL ELEMENT WAS SATISFIED BEYOND A REASONABLE DOUBT AND BECAUSE OF PERMISSIONS GIVEN REGARDING THE FAR BROADER "ASSENT" THEORY BROADENED THE BASES FOR FINDING THAT ESSENTIAL ELEMENT, §2422(b) WAS UNCONSTITUTIONALLY APPLIED. RICHARDSON v. UNITED STATES, 526 U.S. 813 (1999); SEE ¶12-22 ("PRETTYFACE... IS CHILD PORNOGRAPHY") [T.TR. 2393]; P.23.9¶2 (TO FIND ATTEMPT [DOC.222] IN COUNT ONE, JURY NEED ONLY FIND "INTEN[T] TO PERSUADE."). BY CONVICTING, SENTENCING, AND AFFIRMING ISABELLA IN COMPLETED COERCION AND ENTICEMENT, WITHOUT PROOF OR AFFIRMATION OF THE ACTUS REUS "ENGAGED IN," A FEDERAL PRECEDENT WAS SET. WITHOUT THE INTENT TO ENGAGE IN THE PREDICATE OFFENSE ELEMENT, THE COMMERCE CLAUSE CANNOT APPLY TO MOVANT'S SPEECH ALONE. PERHAPS STATE OR LOCAL LAW MAY PROHIBIT SEXUALIZED CHATS. AND CERTAINLY 47 U.S.C. 223(a)(1)(B) PROHIBITS OBSCENE PROPOSALS AND REQUESTS TO A MINOR, FEDERALLY, PUNISHED BY A "FINE OR UP TO 2 YEARS IMPRISONMENT." BUT THIS IS PROOF POSITIVE THAT CONGRESS DID NOT ALSO PROSCRIBE OBSCENE PROPOSALS AND REQUESTS TO A MINOR PUNISHABLE BY A MANDATORY MINIMUM SENTENCE OF 10 YEARS-TO-LIFE IMPRISONMENT WITHOUT MORE, AT §2422(b). THERE IS NO DIFFERENCE BETWEEN ATTEMPTING TO GET "A MINOR'S ASSENT" TO SEXUAL ACTIVITY, AND ATTEMPTING TO "MAKE REQUESTS, PROPOSALS, IMAGES," TO A MINOR THAT ARE "OBSCENE OR CHILD PORNOGRAPHY" USING AN INTERACTIVE COMPUTER SERVICE SUCH AS "KIK" AND "TEXT NOW." 47 U.S.C. §223(a)(1)(B). UNDER THE GOVERNMENT'S NOVEL "MINOR'S ASSENT" LEGAL THEORY AT §2422(b), A PERSON MAKING AN INDECENT "PROPOSAL, COMMENT, SUGGESTION OR REQUEST" TO A MINOR OVER A COMPUTER SERVICE SHOULD BE PUNISHED AT "10-YEARS-TO-LIFE." WHERAS, CONGRESS HAS DECIDED — AND MEANT WHAT IT SAID — THAT SUCH CONDUCT CAN BE MISDEMEANOR PUNISHABLE BY A "FINE" WITHOUT IMPRISONMENT. 47 U.S.C. §223(a)(1)(B); 18 U.S.C. §2422(b). WE KNOW BY LEGISLATIVE INTENT AND STATUTORY ELEMENTS THAT A VIOLATION AT §2422(b) REQUIRES INTENT OR ATTEMPT TO ACTUALLY ENGAGE IN THE PREDICATE OR TARGET OFFENSE. THIS WAS EXTENSIVELY ANALYZED IN UNITED STATES v. SCHELL, 71 M.J. 585 (C.C.A. 2012), DECIDING THAT "INTENT TO ENGAGE IN" A SEX CRIME IS AN ESSENTIAL ELEMENT AT §2422(b), NOTING "THE SENATE REJECTED [H.R. REP. NO. 105-557]... [BECAUSE] IT WOULD MOVE THE LAW TOO CLOSE TO A THOUGHT CRIME... CONGRESS UNDERSTOOD §2422(b) AS REQUIRING MORE THAN... ASSENT... OR CYBERSEX

The Government can point to no case law authority, where Coercion and Enticement is completed upon a "minor's assent." They have repeatedly cited attempt cases of §2422(b), yet in every one of those cases, the defendant had either made a criminal firm solicitation, set a meeting time and place for sex, traveled to the location for sex with a stranger; made a plan to "resume" contact with a minor already having engaged; or used an adult intermediary who was actually law enforcement to gain a minor's assent to engage in sex acts which would be impossible to do actually. The Government has not admitted such, but the case law examples from pre-trial through oral arguments on appeal bear this out. Pressed at a Rule 29 hearing, the prosecutor had no response; "There is case law that stands for the proposition that the completed offense can be complete without proving ... completed or attempted ... sexual activity," T.Tr. 1268 @ p. 24 – 1269 @ 3; "There is case law ... that assent is not required for the completed offense." Id. p. 1270 @ 12-14. There is no such case law. Reducing that logic to the absurd, it should follow that an attempt at "assent is not required for an attempt offense." Id. If evidence were not insufficient, the Government would have no reason to lower the violative bar, or to argue that they have an authority they do not have.

The decision under Isabella lowers the bar below sister circuits reversing for more culpable conduct. See Judge Posner's opinion in United States v Gladish, 536 F.3d 646 (7th cir. 2008); Broxmeier in the Second was mis-charged, as was Taylor in the Seventh, because the statute did not reach their completed conduct. The Tenth Circuit has recognized the distinction between the completed offense and an attempt. "Munro never actually engaged in sexual activity with a minor, therefore the prosecution charged him with attempt." United States v Munro, 394 F.3d 869 (10th cir. 2005). It is the underlying predicate offense that a person engages in that marks completion at §2422(b). "Christy could not have committed the underlying [predicate] crime and thus could not be guilty of the federal crime of Coercion and Enticement." United States v Christy, 683 Fed. App'x 710 (10th cir. 2017). Without a completed depiction of S.F. engaging in sexually explicit conduct, as required at §2256(8) under §2427, "[Isabella] could not have committed the underlying [and dismissed] crime and thus could not be guilty of the federal crime of Coercion and Enticement." Id.

PREJUDICE

14. §2422(b) IS UNCONSTITUTIONAL AS-APPLIED, SINCE THE §2427 PROVISION a) DOES NOT PROVIDE FOR ATTEMPT, (b) WAS APPLIED TO ENABLE WHAT WAS IN EFFECT ACQUITTED CONDUCT TO BE THE PREDICATE OFFENSE ELEMENT, AND (c) WAS IMPROPERLY INSTRUCTED AS "CHILD PORNOGRAPHY AS WILL BE FURTHER DESCRIBED TO YOU," Doc. 221, P. 21 RATHER THAN THE STATUTORY PHRASE "CHILD PORNOGRAPHY AS DEFINED IN SECTION 2256(8)." 18 U.S.C. §2427 THE INSTRUCTION LED JURORS ON A HUNT FOR WHAT WAS TO BE "FURTHER DESCRIBED." IT WAS NOT. THE FOLLOWING PAGES PROVIDED 11 PAGES OF RELATED DEFINITIONS. WHERE THE STATUTORY LAW LED TO THE PRECISE DEFINITION WHICH THREE TIMES REQUIRES THE "ENGAGE IN" ELEMENT, THE JURY INSTRUCTION OMITTED THE DIRECTION TO THE PROPER DEFINITION. THIS PREJUDICED MOVANT WHERE THE DEFINITION OF CHILD PORNOGRAPHY @ §2256(8) REQUIRES A DETERMINATION OF A VIOLATION OF "SEXUALLY EXPLICIT CONDUCT AT §2256(2), AND BECAUSE "CHILD PORNOGRAPHY AS DEFINED IN SECTION 2256(8)" REQUIRES THE "ENGAGED IN" CONDUCT, WHICH THE GOVERNMENT'S LEGAL THEORY OF A "MINOR'S ASSENT" OMITS. THERE CAN BE NO "CHILD PORNOGRAPHY" WITHOUT **"ENGAGING IN"** "SEXUALLY EXPLICIT CONDUCT" AT §2256(2). THIS LEGAL RULE AS SET BY CONGRESS WAS NOT CONVEYED TO THE JURY IN LAY TERMS. HAD THE JURY BEEN INSTRUCTED THAT, TO DECIDE THAT MR. ISABELLA COMMITTED OR INTENDED OR ATTEMPTED PRODUCTION OF "CHILD PORNOGRAPHY," YOU MUST FIRST DECIDE WHETHER MINOR S.E. "ENGAGED IN" OR WAS USED IN A PRODUCTION OF HER "ENGAGING IN" "SEXUALLY EXPLICIT CONDUCT" (AS DEFINED ON PAGE 33) FOR A VISUAL DEPICTION OF THAT ENGAGING, THE OUTCOME WOULD HAVE BEEN DIFFERENT; THIS WOULD BE ESPECIALLY SO, HAD THE JURY BEEN FURTHER INSTRUCTED: "IF YOU ARE UNABLE TO DECIDE THAT S.E. WAS "ENGAGING IN" SEXUALLY EXPLICIT CONDUCT (AS DEFINED ON PAGE 33 AT a) THEN YOU CANNOT ELECT PRODUCTION OF "CHILD PORNOGRAPHY," AS THE "SEXUAL ACTIVITY FOR WHICH MR. ISABELLA CAN BE CHARGED. WHETHER THROUGH IMPROPER JURY INSTRUCTION, VERDICT FORM INTERROGATORIES, OR MISLEADING ARGUMENT, §2422(b), AS WAS APPLIED TO THE MOVANT'S CONVICTION, WAS UNCONSTITUTIONAL.

PREJUDICE

15. COURT RULINGS: PRIOR TO ESTABLISHING THE LAW OF THE CASE — THE PRENICATE IS AN ELEMENT — THE COURT DECIDED THERE WAS SUFFICIENT EVIDENCE OF ACHIEVING OR ATTEMPT TO OBTAIN, REQUEST A "MINOR'S ASSENT." THE DECISIONS WERE HEAVILY INFLUENCED BY THE GOVERNMENT'S NOVEL LEGAL THEORY SUPPORTED PURELY IN DICTA. SEE T.TR. p. 289 @ 12 – p. 322; p. 1277 DENIAL RE: Jo. p. 1503 1504 Doc. 221 290 @ 5; @ 22-25; @ 1-8 ("ASSENT"@ RULE 29); COMPARE WITH @ 25 – @ 14; p. 20 @ n. 2.

THE DECISION UNDER _UNITED STATES v ISABELLA_ HAS DEPARTED FROM STARE DECISIS TO UNSETTLE LAW AT THE _TENTH CIRCUIT_ CONCERNING THE LIABILITY OF THE COMPLETED OFFENSE AT §2422(b), THE CRIME OF CONVICTION AND SENTENCE IN COUNT ONE, UNDER WHICH THE PRISONER PLEADS. BEING ELECTED, JUDGED, AND AFFIRMED GUILTY OF ENTICING S.F. TO ENGAGE IN THE TARGET OFFENSE:

[ACTUS REUS]

[§2251(a)] ENGAGING IN SEXUALLY EXPLICIT CONDUCT WITH A MINOR FOR THE PURPOSE OF PRODUCING VISUAL [SPECIFIC INTENT] DEPICTIONS OF SUCH CONDUCT — KNOWING THAT "CHILD PORNOGRAPHY" WAS PRODUCED AND "WILL [MENS REA] [EXPLICIT NEXUS] BE TRANSPORTED" IN INTERSTATE COMMERCE — 18 U.S.C. §2422(b) WAS UNCONSTITUTIONAL AS APPLIED. NO "SEXUALLY EXPLICIT CONDUCT" WAS ENGAGED IN, SO "CHILD PORNOGRAPHY"'S PRODUCTION WAS NOT POSSIBLE AS A MATTER OF LAW. THE DISMISSAL OF THE IDENTICAL CONDUCT NAMED AT THE PREDICATE OFFENSE CONFIRMS THAT THE _MOVANT_ "COULD NOT HAVE COMMITTED THE UNDERLYING CRIME AND THUS COULD NOT BE GUILTY OF [§2422(b)]." CHRISM. THE CONVICTION IN COUNT ONE IS UNCONSTITUTIONAL. THE VIOLATIVE BAR AT §2422(b) WAS SO LOWERED AS TO BE UNCONSTITUTIONAL — EX POST FACTO. MOVANT COULD NOT HAVE KNOWN THAT SEXTING AND A MINOR'S ASSENT WITHOUT MORE WOULD CARRY A POTENTIAL LIFE SENTENCE. "AN UNFORESEEABLE JUDICIAL ENLARGEMENT OF A CRIMINAL STATUTE, APPLIED RETROACTIVELY, OPERATES PRECISELY LIKE AN EX POST FACTO LAW." _MARKS v UNITED STATES_ 430 U.S. 188 (1977).

CONGRESS'S INTENT IS CLEAR: TO BE LIABLE AT §2422(b) A PERSON MUST ENGAGE IN (OR ATTEMPT TO ENGAGE) THE PREDICATE OFFENSE. AT NEARBY §2423(b), THE _THIRD CIRCUIT_ DECIDED THE GOVERNMENT MUST SHOW _UNITED STATES v HAYWARD_, 359 F.3d 631 (3rd Cir. 2004); "THE CRIMINAL SEXUAL ACT WAS THE DOMINANT PURPOSE" OF TRAVEL — "FOR THE PURPOSE OF ENGAGING IN ILLICIT SEXUAL ACTIVITY" PUNISHABLE BY 0 TO 30 YEARS. §2422(b)'S 10-TO-LIFE SENTENCE MUST REQUIRE THE "ENGAGE IN" ELEMENT — THE ACTUS REUS — FOR COMPLETION AS CONGRESS WROTE IT AND INTENDED IT.

THE STRENGTH OF THIS ISSUE COMPARED WITH ISSUES RAISED BY APPELLATE COUNSEL IS _THE PROOF OF PREJUDICE ON APPEAL._ PRECISELY AS ARGUED IN GROUND TEN ¶¶13-15, MOVANT'S CONDUCT HAD NO SUBSTANTIAL EFFECT ON INTERSTATE COMMERCE. AND, LIKE GROUND TEN ¶16, BUT FOR COUNSEL'S FAILURE TO CHALLENGE CONSTITUTIONALITY AS APPLIED — AN ISSUE MORE MERITORIOUS THAN THOSE RAISED — THERE IS A "REASONABLE PROBABILITY" THAT THE OUTCOME WOULD BE DIFFERENT. A HEARING IS NEEDED MAKE SUCH DETERMINATION.

# GROUND THIRTEEN

AO 243 (Rev. 01/15)   TRIAL COUNSEL WAS INEFFECTIVE ASSISTANCE FOR OPENING THE DOOR WITHOUT FIRST INVESTIGATING EVIDENCE, INTERVIEWING WITNESSES, GATHERING VITAL IMPEACHMENT EVIDENCE AND PREPARING CHARACTER WITNESSES

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE NEXT PAGE

(b) Direct Appeal of **GROUND THIRTEEN**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

APPELLATE COUNSEL NEED NOT RAISE HIS OWN INEFFECTIVENESS AT TRIAL. NICHOLS V UNITED STATES 75 F.3d 1137 (7TH CIR 1996)

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☐

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

THE PANEL OPINION NOTED THAT MR. GAINOR HAD "OPENED THE DOOR" TO WHAT HE LATER REFERRED TO AS "403 DAMNING" EVIDENCE WHILE CALLING FOR A MISTRIAL. *ISABELLA* @ 841; T.TR. - "DAY 10" (Oct. 6) → MOVANT HAS ½ THE TRANSCRIPTS TWELVE-MINUTES OF THE ORAL ARGUMENT ON APPEAL WAS SPENT DISCUSSING MR. GAINOR'S OPENING OF THE DOOR TO THE ONLY ALLEGATION OF PREDATORY BEHAVIOR IN THIS CASE — PAINTING A FAR DARKER PICTURE FOR THE JURY. SEE UNOFFICIAL O. ARG. TRANSCRIPT (APPENDIX H) @ Tr 9:20-15:00; 23:38-26:30; pgs. 6-9; 13-15; OR HEAR AT 17-1197.mp3 (Nov. 27, 2019). MR. GAINOR ELECTED TO INTRODUCE M.E. EVIDENCE IN OPENING STATEMENTS, THEN BY DIRECT EXAMINATION OF MOVANT, IN CONFLICT WITH HIS IN LIMINE MOTION TO EXCLUDE M.E. EVIDENCE AS UNRELATED. THE COURT REJECTED THE GOVERNMENT MOTION TO ADMIT THE EVIDENCE AS AN INSTANCE OF MOLESTATION UNDER 412, DUE TO MOVANT'S TOUCHING OF M.E.'s SKIRT. SEE MOVANT'S "AFFIDAVIT CONCERNING M.E." THE EVIDENCE WAS ADMITTED UNDER 404(b) TO SHOW "MODUS OPERANDI" - M.E.'s DRIVING 90-MINUTES FOR AN INITIAL DATE ON VALENTINE'S DAY FOLLOWING ADULT ONLY DATING SERVICE OK CUPID'S "PERFECT MATCH" NOTIFICATION (M.E. ADMITTEDLY HELD HERSELF OUT TO BE 18 YEARS OLD TO SOME MEN SHE MET AND 17 TO OTHERS); Id; T.TR. Id. UNAVAILABLE; ... WAS SIMILAR TO INITIAL CONTACT WITH S.F. ON THE "MINUS" DATING APPLICATION. MR. GAINOR STATED "THEY SHIFTED IT FROM THE CASE-IN-CHIEF TO REBUTTAL." O. ARG. Tr. Hp. 8. @ 13:30; THE PANEL JUDGE NOTED, "YOU CAN'T HAVE IT BOTH WAYS." "BY MENTIONING IT IN THE OPENING, RAISING IT YOURSELF IN TESTIMONY, AND THEN CHALLENGING THAT IT WAS PERMITTED; " Id. @ 13:00; p. 8; "MR. ISABELLA MOVED FOR A MISTRIAL." *ISABELLA* @ 840. "I DON'T THINK YOU MADE THE ABSOLUTELY RIGHT TACTICAL DECISION FOR TRIAL," A PANEL JUDGE CONCLUDED. O. Arg. Tr. @ 14:00; H. p. 8.

✳ THE PANEL OPINION IMPLIEDLY DISAGREED WITH THE COURT'S DECISION TO ADMIT THE M.E. EVIDENCE UNDER THE NON-STATUTORY PERMISSION UNDER RULE 404(b)(2); *ISABELLA* @ 840; AND NOTED "WE ACKNOWLEDGE THAT MR. ISABELLA'S INTERACTIONS ~~WE~~ WITH M.E. WERE NOT IDENTICAL TO HIS COMMUNICATIONS WITH S.F." Id. @ n. 24.

"THE SUPREME COURT IN STRICKLAND EXPRESSLY CONTEMPLATED JUDICIAL EVALUATION OF COUNSEL'S PERFORMANCE IN ACCORDANCE WITH AN OBJECTIVE STANDARD OF REASONABLENESS AS MEASURED AGAINST THE PREVAILING NORMS OF THE LEGAL COMMUNITY. STRICKLAND v WASHINGTON, 466 U.S. AT 688.... IT IS UP TO THE DISTRICT COURT... TO DETERMINE." WARD v UNITED STATES, 995 F.2d 1317 (6ᵗʰ Cir. 1993). IN A SIMILAR CASE, WHERE THE SIXTH CIRCUIT GRANTED AND REVERSED WARD'S CONVICTION UNDER 28 U.S.C. § 2255 BECAUSE HIS COUNSEL OPENED THE DOOR TO DAMAGING CHARACTER EVIDENCE," THE COURT HELD. "[W]HEN DEFENSE COUNSEL'S PERFORMANCE IS EVALUATED IN THE CONTEXT OF THE EXCLUSIVELY CIRCUMSTANTIAL NATURE OF THE EVIDENCE... IT IS HIGHLY PROBABLE THAT BETTER LAWYERING WOULD HAVE PRODUCED A DIFFERENT RESULT." Id. @ 1322.

THE "PREVAILING NORMS OF THE LEGAL COMMUNITY," ACCORDING TO THE SIXTH CIRCUIT, WOULD HAVE ELECTED NOT TO OPEN THE DOOR IN THE FIRST PLACE. Id. BUT THE MOVANT HAD EXPLAINED HIS CONDUCT WITH M.E. TO HIS PRIOR COUNSEL, MATTHEW BELCHER, ABOUT A YEAR-AND-A-HALF AHEAD OF TRIAL AND FOLLOWED THROUGH WITH DESCRIBING THE NATURE OF THE RELATIONSHIP AND THE LUNCH DATE (To Mr. Gainor) ABOUT A YEAR BEFORE TRIAL. SO MR. GAINOR HAD PLENTY OF OPPORTUNITY TO INTERVIEW M.E. PRIOR TO TRIAL — THEN 21 YEARS OF AGE... AKIN TO CHECKING WHAT IS BEHIND THE DOOR BEFORE OPENING IT. HAD HE DONE SO — (AN INVESTIGATION BUDGET WAS GRANTED BY THE COURT) — HE WOULD HAVE GATHERED VALUABLE IMPEACHMENT EVIDENCE FOR HIS REBUTTAL CROSS-EXAMINATION. M.E. WOULD HAVE CLARIFIED THE NATURE OF ALL OF HER "RELATIONSHIPS" AND "DATES" WITH "OLDER MEN" — MONEY. T.TR. Id. AFFIDAVIT RE: M.E. @ ¶¶ 19,26; HE WOULD HAVE FOCUSED ON HER INTENT IN DRIVING TO NUMEROUS CITIES ON VALENTINE'S DAY, 2013 TO HAVE INITIAL MEET-UPS WITH "OLDER MEN" (GENERALLY BETWEEN 10 AND 30 YEARS) TO SEE WHAT THEY WOULD "GIFT" HER IN EXCHANGE FOR HER SEXUAL ACTIVITY. SEE T. TR. Id. ¶¶ 25-26. MR. GAINOR DOES IDENTIFY SEVERAL OF THE "OLDER MEN" THAT M.E. HAD SOLICITED BY HER ADVERTISEMENT ON "SUGARDADDY.COM," NOTING THAT ONE "GIFTED" HER $100 AND THE OTHER "$50" FROM CHAT LOGS. T.TR. Id. BUT WHAT MR. GAINOR MISSED WAS THE QUID PRO QUO ASPECT. IN CHAT ON THAT SAME DAY, M.E. TRIES HARD TO MAKE MOVANT FEEL BAD — PUNISHING HIM FOR NOT HANDING HER THE $35 SHE REQUESTED IN EXCHANGE FOR SEXUAL CONDUCT OF SOME KIND. COMPARE T.TR. RE: CHAT/TEXTS ON 2-14-2013 WITH MOVANT'S AFFIDAVIT RE: M.E. HAD MR. @ ¶¶ 19, 22, 24, 26 GAINOR REVIEWED MOVANT'S BRIEFING TO HIM ALONG WITH HIS OWN INVESTIGATION AND INTERVIEW OF M.E. (AS AN ADULT) PRIOR TO TRIAL, HER INTENT OF TRADING "SEXUAL FAVORS" (UNNAMED) FOR CASH ("GIFTS") WOULD HAVE BEEN READILY APPARENT. THUS, HER STORY OF BEING "AFRAID" WOULD HAVE BEEN IMPEACHED BY HER "ANGER" AT THE MOVANT FOR REJECTING HER SERVICES, OR IMPLIED OFFER. SEE AFFIDAVIT RE: M.E. WHEN M.E. READ ALOUD HER TEXT MESSAGE ON THAT DAY (2-14-13) THAT THESE OTHER MORE GENEROUS OLDER MEN "LIKED THE WAY I SMELL," MR. GAINOR WOULD HAVE UNDERSTOOD THIS TO BE IN REFERENCE TO THE SMELL OF HER VAGINA, WHICH THE MOVANT HAD EXPLICITLY EXPRESSED TO M.E. WAS A FOUL ODOR WHICH SMELLED LIKE HERPES. Id. @ ¶¶ 22,27 MR. GAINOR OPENED THE DOOR TO DAMAGING EVIDENCE WITHOUT GATHERING READILY AVAILABLE IMPEACHMENT EVIDENCE. HAD MR. GAINOR INVESTIGATED THE SOURCE AND NATURE OF THE EVIDENCE CONCERNING M.E. AS GUIDED WELL-PRIOR TO TRIAL, HE WOULD HAVE BEEN ABLE TO IMPEACH M.E.'s CREDIBILITY.

WHILE INVESTIGATING M.E. IN CANTON, OH, MR. GAINOR COULD HAVE INTERVIEWED MISS CHELSEY PRITCHARD, A FRIEND OF THE MOVANT. AS MISS PRITCHARD HAS SWORN IN AN ATTACHED AFFIDAVIT, M.E. HAD TOLD A LIE ABOUT HER HOUSE BURNING DOWN IN HOPES THAT MOVANT WOULD TAKE M.E. SHOPPING FOR NEW CLOTHES. MOVANT'S CALL TO MISS PRITCHARD LED TO M.E. LEAVING MISS PRITCHARD'S HOUSE WITH BAGS FULL OF CHELSEY PRITCHARDS CLOTHING. SEE MOVANT'S AFFIDAVIT RE: M.E. AND CHELSEY PRITCHARD'S AFFIDAVIT. HAD MR. GAINOR INVESTIGATED THE EVIDENCE, HE WOULD HAVE LEARNED THAT, NOT ONLY DID M.E. LIE ABOUT BEING AN ADULT WOMAN — SENDING PHOTOS OF SEMI- NUDE ADULT WOMEN TO THE MANY "OLDER MEN" SHE TESTIFIED TO HAVING MET ON ADULT DATING AND SUGARDADDY WEBSITES — BUT HER LIES EXTENDED TO THEFT OF CLOTHING UNDER THE FRAUD OF AN EMERGENCY. AND HE WOULD HAVE IDENTIFIED "SEXUALLY EXPLICIT" PHOTOS M.E. PRODUCED OF HERSELF AND SENT TO SOME OF THE MEN SHE ENCOUNTERED ON SUGARDADDY.COM IN EXCHANGE FOR MONEY. Id. HAVING BEEN GRANTED A BUDGET FOR INVESTIGATION FROM THIS COURT, PLUS NUMEROUS EXTENSIONS FOR MORE TIME, BUT FOR AN OBJECTIVELY UNREASONABLE DECISION BY MR. GAINOR, NOT TO INVESTIGATE EVIDENCE CONCERNING M.E., THE OUTCOME WOULD BE DIFFERENT. PARTICULARLY, HE WOULD HAVE BEEN ARMED WITH KNOWLEDGE, IMPEACHMENT EVIDENCE, AND AN IMPEACHMENT WITNESS, PRIOR-TO OPENING THE DOOR. ONLY BY HIS KNOWLEDGE AND AWARENESS MADE THROUGH CAREFUL INVESTIGATION, CAN HE CLAIM THAT HIS DECISION TO OPEN THE DOOR WAS STRATEGIC.

M.E.'S CREDIBILITY COULD HAVE EASILY BEEN IMPEACHED, HAD MR. GAINOR (1) CONSULTED HIS NOTES FROM MOVANT'S DESCRIPTION OF EVENTS A YEAR EARLIER (2) CONSULTED MR. BELCHER REGARDING M.E. (3) ACTUALLY INTERVIEWED M.E. (4) FOLLOWED UP MOVANT'S REQUEST THAT HE INTERVIEW AND CALL AS BOTH AN IMPEACHMENT WITNESS AND CHARACTER WITNESS, MISS CHELSEY PRITCHARD TO TESTIFY. SINCE THE ONLY EVIDENCE THAT THE MOVANT HAD PREDATORY INTENT WAS M.E.'S TESTIMONY OF MOVANT'S PLACING A HAND ON HER THIGH — WITH SO MUCH MORE TO THAT STORY — IT IS MORE LIKELY THAN NOT THAT, WITH M.E.'S CREDIBILITY IMPEACHED AT TRIAL THE OUTCOME WOULD HAVE BEEN DIFFERENT.

Since M.E. was listed as a witness in the Government's case-in-chief, Mr. Gainor had both a fundamental and essential responsibility to learn the nature of M.E.'s testimony before trial, with the benefit of time and resources. His last ditch effort to learn about M.E. after her testimony was shifted and slated for the rebuttal case was too little too late. The actual attorney-client conference to discuss all events with M.E. occurred during trial when Mr. Gainor requested the Marshal Service to permit a conference at the Courthouse. While a van load of prisoners waited, Movant was led to a visitation window at about 5:20pm where he met Mr. Gainor for approximately 10 minutes. That was it. Other than the chat logs Mr. Gainor's cross-examination of M.E. relied on what could be conveyed and notated in a 10-minute window.

Opening the door error is proportionate to the damage caused in its opening. Mr. Gainor's own words in a side bar to the court after he called for a mistrial were "This is not just 403 prejudicial, your Honor, this 403 damning." T.TR. ? [estimated quote] (unavailable to Movant).

It was objectively unreasonable for trial counsel to open the door to evidence, THEN to investigate what that evidence was. Once the door was opened and the "damning" evidence reached the jury, Mr. Gainor's job shifted from litigating a defense to mitigating damage done. The 10-minute window refresher could not undo what had been done. And this event demonstrates that Movant did not receive the assistance of counsel in his defense of the allegation, but rather assistance of counsel to mitigate damage done by opening the door WITHOUT first (A) learning what evidence lies behind that door (B) whether sufficient impeachment evidence is ready in reserve and (C) whether character witnesses are lined up to mitigate the damage caused by a rebuttal witness under 404b). "It is highly probable that better lawyering would have produced a different result." WARD,

# GROUND FOURTEEN

AO 243 (Rev. 01/15)   WITH NO LEGITIMATE FACTUAL OR LEGAL BASIS, BUT FOR PROSECUTOR'S CONDUCT IN SHIFTING THEORIES, EXCEEDING AUTHORITIES, MISSTATING LAW, DISPARAGING VICTIM AND RELYING ON COLLATERALLY BARRED EVIDENCE, NO CONVICTION COULD BE OBTAINED OR SUCCESSFULLY DEFENDED ON APPEAL.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE  SIDDIQI v UNITED STATES, 98 F.3d 1427 (2ⁿᵈ CIR. 1996)

SEE NEXT PAGE

(b) Direct Appeal of GROUND FOURTEEN

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why:

ATTORNEY CONFLICT OVER RAISING ISSUES NOT AS MERITORIOUS AS OTHERS AVAILABLE.  INEFFECTIVE ASSISTANCE.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☒   No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:  SECOND NOTICE OF ATTORNEY CONFLICT AND REQUEST TO

Name and location of the court where the motion or petition was filed:  SUPPLEMENT THE BRIEF

TENTH CIRCUIT COURT OF APPEALS, DENVER, CO

Docket or case number (if you know):  17~1197  SEE DOCUMENT 010110090673

Date of the court's decision:  NOT ADDRESSED

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☒

AO 243 (Rev. 01/15)

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:  NO STANDING UNTIL COLLATERAL §2255 REVIEW

1. A SEARCH OF MOVANT'S OHIO HOME FAILED TO SHOW A NEXIS TO AN INTEREST IN CHILD PORNOGRAPHY, e.g. COLLECTION, HASH VALUES, SEARCH TERMS. SEE DOC. 184, pg. 7. A WEEK LATER, ON FEBRUARY 22, 2014, MINOR S.F. WAS QUESTIONED CONCERNING "56 IMAGES" OF CHILD PORNOGRAPHY FOUND ON HER CELLPHONE, DOC. 153, pg. 2. A 90-MINUTE FORENSIC VIDEO* WAS MADE OF THAT INTERVIEW, BUT NOT INTRODUCED AT TRIAL OR TO THE GRAND JURY. * [Id. UNAVAILABLE - No DISCOVERY HAS BEEN PERMITTED INTO FCI LORETTE AND FDC ENGLEWOOD DESTROYED MOVANT'S METICULOUS NOTES, PLUS TRIAL TRANSCRIPTS, ETC.] IN THAT INTERVIEW, S.F. IS REPEATEDLY SHOWN PHOTOS AND ASKED THE QUESTION, "DID RANDY (PRONOUNCED RAN-DEE) ASK FOR THIS?" OR "DID YOU TAKE THIS FOR RANDY?" S.F.'S ANSWER WAS ALWAYS "YES," INCLUDING PHOTOS TAKEN IN THE YEAR PRIOR TO THE "TORSO PIC," (WHEN S.F. WAS IN "8TH GRADE")Id. REPEATEDLY, S.F. WAS ASKED WHERE PHOTOS WERE TAKEN — CONFIRMING THE EXIF DATA AGENTS HAD.Id. ABOUT HALF OF THE RESPONSES INDICATED THE PHOTO SHOOTS OCCURED "IN SILVERTON," CO "AT MY MOM'S BOYFRIEND'S HOUSE" AND "IN HIS BEDROOM" OR "ON HIS BED."Id. S.F.'S MOM'S FORMER BOYFRIEND'S NAME IS RANDY TANO, (PRONOUNCED RANDEE). NEAR THE END OF THE VIDEO, THE INTERVIEWER ASKS ABOUT "ISABELLA," TO WHICH S.F. EMPHATICALLY REPLIES, "No, I CALL HIM RAND — I DON'T KNOW WHO YOU'VE BEEN TALKING ABOUT."Id. T.TR. p. 418@21-425@1 DESPITE NUMEROUS INCONSISTENCIES AND S.F.'S CLEARLY REHEARSED 30-SECOND ALLEGATION AGAINST MOVANT, THE PROSECUTOR USED THIS EVIDENCE TO OBTAIN AN INDICTMENT. AGENT JEFF WILLIAMS DESCRIBED WHAT HE HAD HEARD S.F. TELL THE INTERVIEWER THAT MOVANT HAD TOLD HER — (TRIPLE HEARSAY?) DOC. 111, pg. 29 @ 1-21. THIS, DESPITE THE FORENSIC VIDEO AND S.F. BEING READILY AVAILABLE. SEE UNITED STATES V ESTEPA, 471 F.2d 1132 (2ND CIR. 1972) (THE PROSECUTOR'S RELIANCE ON HEARSAY IS DISFAVORED PRECISELY BECAUSE IT IS NOT FIRST-RATE PROOF); "DOUBLE HEARSAY SPECULATION SERIOUSLY ERODED THE GRAND JURY'S INTEGRITY TO INDEPENDANTLY EVALUATE THE EVIDENCE," UNITED STATES V HOGAN, 712 F.2d 757 (2ND CIR. 1983)(REVERSED). ONE OF JUST A FEW QUESTIONS BY GRAND JURORS ASKED WHETHER RANDY TANO HAD BEEN INVESTIGATED CONCERNING HIS RELATIONSHIP WITH S.F. THE AGENT MISLED THE GRAND JURY BY HIS ANSWER THAT HE WAS NOT INVOLVED "WHATSOEVER." DOC. 111, pg. 37@20-38@4 HAD THE GRAND JURY BEEN PRESENTED AVAILABLE "FIRST-RATE" PROOF, SUCH AS THE FORENSIC VIDEO, THEY WOULD HAVE BEEN PERPLEXED BY EVIDENCE CONCERNING "RANDY" AND THE LACK OF A NEXIS CONNECTING CHILD PORNOGRAPHY PHOTOGRAPHED ON "RANDY'S" BED WITH THE PERSON S.F. "CALLS" "RAND." DOUBLE HEARSAY AND A MISLEADING RESPONSE "SERIOUSLY ERODED THE GRAND JURY'S INTEGRITY TO INDEPENDANTLY EVALUATE THE EVIDENCE." HOGAN.

2. BECAUSE AGENTS TESTIFIED THAT THE EXIF DATA SHOWING WHEN AND WHERE THE CHILD PORNOGRAPHY ON S.F.'s CELLPHONE WAS CREATED, THE PROSECUTOR KNEW OR HAD REASON TO KNOW THAT SOMEONE OTHER THAN THE MOVANT HAD ACTUALLY PRODUCED THE IMAGES — AND KNEW FROM THE START OF THE INVESTIGATION. T.TR. p. 1105 @ 25 - 1116 @ 24, (EXIF DATA EXPLAINED — SHOWING IMAGES TAKEN IN AUGUST OF 2013); Doc. III, p. 7 @ 16-23, HARRIS v LAFLER 553 F.3d 1028 (6th 2009) (PROSECTOR "SHOULD KNOW" WHAT AGENT KNOWS) (NOVEMBER OF 2013 AGENTS KNEW S.F.'s PHONE CONTAINED CHILD PORNOGRAPHY AND PHOTOS WERE READILY AVAILABLE — WITH METADATA); T.TR. p. 1113 @ 22 - 1114 @ 11; (STORED IN THE DEFAULT LOCATION — "AUGUST 9, 2013"); FORENSIC VIDEO OF S.F. (EACH IMAGE WAS REVIEWED ON FEBRUARY 22, 2014): THE GOVERNMENT KNEW THAT THESE PHOTOS ON S.F.'s CELLPHONE HAD BEEN TAKEN IN AUGUST OF 2013 AND GOING BACK TO S.F.'s "EIGHTH GRADE" SCHOOL YEAR (2012-13). Id. AT THE TIME OF GRAND JURY PRESENTATION, THE PROSECUTOR KNEW THAT MOVANT AND S.F. "BEGAN COMMUNICATING ... ON OR ABOUT SEPTEMBER 19 [2013]." Doc. III, p. 35 @ 14. T.TR. 1149 @ 14-19. BECAUSE THIS DATE IS INCONSISTENT WITH THE TIME PERIOD THE "CHILD PORNOGRAPHY" ON S.F.'s CELLPHONE WAS PRODUCED (SEPTEMBER OF 2012 - AUGUST OF 2013), THE DISCLOSURE OF EXIF DATA WOULD HAVE PRECLUDED THE GRAND JURY FROM CHARGING MOVANT IN THE PRODUCTION OF CHILD PORNOGRAPHY. KNOWING AND HAVING REASON TO KNOW THAT THE EXIF DATA NEGATED GUILT, THE PROSECUTOR WITHHELD SEE ABA STANDARDS FOR CRIM. J. §3-2.8(a) (3rd ed. 1993). THIS EVIDENCE FROM THE GRAND JURY, DESPITE AN OBLIGATION TO DISCLOSE IT. "WHEN A PROSECUTOR THROUGH NONDISCLOSURE AFFIRMATIVELY DECEIVES THE GRAND JURY, IN EFFECT TRANSFORMING EXCULPATORY EVIDENCE INTO INCULPATORY EVIDENCE, COURTS HAVE INVALIDATED RESULTING INDICTMENTS. CASES OF DELIBERATE DECEPTION REASONABLY INVITE SANCTION OF DISMISSAL." PROSECUTORIAL MISCONDUCT, 2d ed. 2011 (WEST), BENNETT L. GERSHMAN. SEE UNITED STATES v OMNI INTERN. CORP, 634 F.SUPP. 1414 (D. Md 1986), "A CONVICTION OBTAINED THROUGH THE USE OF FALSE EVIDENCE, KNOWN TO BE SUCH BY [THE PROSECUTOR], 'VIOLATES DUE PROCESS.'" UNITED STATES v McCULLAH, 136 Fed. App'x 189 (10th Cir 2005) AFTER DECEIVING THE GRAND JURY, THE PROSECUTOR ARRIVED AT TRIAL 3 DAYS AFTER THE JURY WAS EMPANELED AND SWORN — READY TO PROSECUTE MOVANT FOR COMPLETING THE PRODUCTION OF CHILD PORNOGRAPHY — STILL WITHHOLDING THE KNOWLEDGE THAT SOMEONE OTHER THAN THE MOVANT HAD ACTUALLY PRODUCED THE CHILD PORNOGRAPHY. WITHHOLDING EVIDENCE "CLEARLY NEGATING GUILT" DESTROYS MOVANT'S RIGHT UNDER THE GRAND JURY CLAUSE. UNITED STATES v BASURTO 497 F.2d 781 (9th Cir. 1974). KNOWINGLY DOING SO VIOLATES DUE PROCESS. NAPUE v ILLINOIS, 360 U.S. 269 (1959). SEE Doc. 180, 180-1; T.TR. p. 286 @ 4-25. GIGLIO v UNITED STATES 405 U.S. 150 (1972).

3. It should have come as no surprise to the prosecution that S.F. began to RECANT HER ALLEGATIONS soon after making them. T. Tr. p. 650 @ 14 - 652 @ 7; see p. 651 @ 24 - 652 @ 7 ("That was one of the first things I told you guys when I met with you"... "May or June of 2015"). The rehearsed nature of her 30-second allegation (followed by a 1.5-second sniffle) should have been obvious to the prosecution that she was not being truthful. See F.V.I. FORENSIC VIDEO INTERVIEW (at approximately 10 minutes into the 90-minute video) — [discovery unavailable to Movant, record needs expanded to include]. Movant's "involvement" in producing the child pornography on her phone was inconsistent with EXIF data known to the prosecution. Her allegations of "threat of harm" were also inconsistent with chat logs. Her recantation negated guilt. Rather than to disclose this highly relevant exculpatory evidence to the defense, "at least 11 interviews" were made to try to "rehabilitate" S.F. to abort her recantation. T. Tr. p. 621 @ 10-19. The jury empaneled and sworn on September 19, 2016, S.F.'s recantation came during direct examination on September 27 — too late for the defense counsel to litigate in limine. "Exculpatory information may come too late if it is given only at trial... BRADY v MARYLAND must therefore require earlier production." UNITED STATES v DEUTSCH, 375 F. Supp. 289 (S.D. N.Y. 1974). Sanctions for late disclosure include vacating the conviction. LEKA v PORTUONDO, 257 F. 3d 89 (2ᵈ Cir. 2001). The late disclosure of this evidence — so exculpatory as to negate guilt — tactically precluded defense from (1) moving in limine to preclude or dismiss, (2) move for a continuance to prepare accordingly, (3) shifting to the more appropriate defense: AFFIRMATIVE "SEXTING" with a minor while challenging "elements" at §2251(a) and §2422(b). (When ruled "obscene", "messages, images, proposals... or child pornography" sent to a minor is federally proscribed at 47 U.S.C. §223 (a)(1)(B) and punishable by a fine or up to 2 years.") But for the prosecution's withholding of the forensically proven knowledge that someone other than the Movant had committed the crime of production, AND withholding of S.F.'s recantation, no conviction could have been obtained in counts 1 & 2. What should have been a winning defense proving Movant's actual innocence was snatched away, resulting in an unfair trial. This issue was addressed in GRANT v ALLDREDGE, 498 F. 2d 376 (2ᵈ Cir. 1974); also see DiSIMONE v PHILLIPS, 461 F. 3d 181 (2ᵈ Cir. 2006)(belated disclosure... came too late to allow defense an opportunity to use it). This issue was supplemented but not addressed in propria persona, prior to government's answer brief on direct appeal. Applt. Case 17-1197, Doc. 010199985125, pg. 32-37. Therefore it was NOT waived.

4. On September 16, 2016, defense counsel filed a motion including a supplemental digital forensics report. Doc. 180, 180-1. The report identified the "torso pic" of S.F. as one in a series of 18 photos taken by "S.F. and a blond white male during a sexual encounter." Id. EXIF data (known by government agents) proved this encounter occurred prior to Movant and S.F.'s initial contact on the minus dating site. Id. [T.Tr. p. 452 @ 12-16] Since this evidence ultimately led to the prosecutor moving to dismiss, the prosecutor understood that the report negated the Movant's guilt in production of the child pornography. Yet, on September 19, 2016 the prosecutor questioned prospective jurors on aspects of production at voir dire. T.Tr. 163 @ 7-8. With "11 interviews" with S.F., it is inconceivable that she did not recant the allegation of a "threat of harm" prior to day 4 of trial, yet the prosecutor insisted on planting this seed at voir dire. See p. 163 @ 7 - 165 @ 4. The planting of knowingly false evidence set the first spark of an unfair trial. On September 22, 2016 — with the jury empaneled and sworn — the prosecutor elected to dismiss the substantive offense in Count 2, only to argue to permit that same offense as the target offense (predicate) in Count 1. T.Tr. p. 286-90. With digital forensics, EXIF data, chat log dates and S.F.'s recantation all indicating someone other than Movant producing the child pornography on her phone, the prosecutor withheld knowledge of this evidence and proceeded to prosecute Movant for completed coercion at § 2422(b) with the underlying target offense being production at § 2251(a) — the dismissed offense under identical factual particulars. See United States v Gonzales 164 F.3d 1285 (10th Cir. 1999)(Prosecutor misleads Court and Defense for tactical advantage); also see ABA Standards for Criminal Justice § 3-3.9 (a),(f); § 3-1.2(c) (3d ed. 1993); § 11-2.1 (c)(d) (2d ed. 1982). The Supreme Court stated that a prosecutor has a duty to learn of any exculpatory evidence known to others; Kyles v Whitley, 514 US 419 (1995); and an ethical obligation to disclose it; SEE Giglio v. United States, 405 US 150 (1972); In re Attorney C, 47 P.3d 1167 (Colo. 2002); Litigating Brady v Maryland: Games Prosecutors Play, 57 Case Western L.Rev. 531 (2007). Knowing Movant is innocent of producing child pornography on S.F.'s cellphone, the prosecutor flagrantly misled the Court and the defense by proceeding to prosecute Movant in that same offense and factual particulars, FOR the predicate in Count 1. Since the purpose of the misleading was to gain a tactical advantage — to win — at trial, the action violates Movant's right under due process. The Supreme Court has addressed bad faith prosecutions. Berger v United States 295 U.S. 78 (1935) (prosecutor's duty is not to win, but that justice be done). A hearing is warranted on the matter. Withholding evidence and wrongful prosecution claims are not procedurally barred. Cone v Bell [see e.g.] 129 S.Ct. 1769 173 L.Ed. 2d 701 (2009)

5. With Factual Particulars being identical in Counts One and Two, the Court recognized that the Substantive Production offense at §2251(a) cannot be both (A) dismissed at trial for insufficiency of the evidence to charge the offense, and (B) the "sexual activity for which Mr. Isabella could be charged with a criminal offense." Doc. 1, p. 1-2; Doc. 222, pg. 21. The Court explained at a charge conference that "on the elements of completed coercion and enticement, we have to take out the production of child pornography." Id.; T. Tr. p. 287 @ 1-290 @ 13. The significance of this statement cannot be underestimated, since taking out "production" as the predicate offense in Count One (completed + attempt) leaves "sexual intercourse with a minor under Colorado law" as the only option. Since Movant made no attempt to travel to Colorado and made no criminal solicitation chargeable under Colorado law, the jury would likely (— and did —) wholly reject this option. With insufficient evidence to support a predicate offense in Count One that "can be charged," the prosecution was facing a certain acquittal in Count One after the dismissal in Count Two. 18 U.S.C. §2422 (b) Rather than conceding insufficient evidence to charge Count One, the prosecutor elected to **misstate law to the Court and failed to correct it**, despite being obliged to do so. "Your honor, the production of child pornography, the federal statute that is referenced under 2427... **does include attempt**." p. 289 @ 8-11. If "attempt" were to be proscribed at 18 U.S.C. §2427, then an attempt at §2422(b) with the predicate as an attempt at §2251(a) would constitute an impermissible "attempt to attempt." But by not correcting this misstatement of law, the Court was misled, dismissed completed production (despite Movant's refusal to consent at Rule 48(a) and objection to the material change to the indictment under the Grand Jury clause), and proceeded to permit the dismissed offense (completed production) to be the option for the predicate the jury did elect under both theories in Count One. But for the prosecutor's misstatement of law to the Court, Count One would have had no "chargeable" offense the jury would find acceptable, and the outcome of the trial would have been different. Ground 2 ¶14, Ground Eleven ¶8.

___

* "To obtain a conviction under §2422(b), the government must also prove the additional elements of [the underlying offense] were satisfied." United States v Kaye, 243 Fed App'x 763 (4th Cir. 2007); also see United States v Mannava, 565 F.3d 412 (7th Cir. 2009) (Liability at §2422(b) depends on a violation of the elements of the underlying offense).

6. DIGITAL FORENSICS EXPERT, KEVIN PEDEN'S SUPPLEMENTAL REPORT RELEASED ON SEPTEMBER 16, 2016 REVEALED NOTHING THE GOVERNMENT DID NOT KNOW AS MUCH AS **34 MONTHS** BEFOREHAND, SINCE THESE SAME IMAGES AND EXIF DATA WERE READILY ACCESSIBLE ON S.F.'s CELLPHONE. Doc. 111, p. 7 @ 22-23; T.TR. p. 1114 @ 3-11; Doc. 180-1; COMPARE TO GOVERNMENT'S FORENSIC REPORT (UNSEEN BY MOVANT/UNAVAILABLE) IN DISCOVERY, Doc. 244-1, p. 2. THE REPORTS CONCLUDED THAT SOMEONE OTHER THAN THE MOVANT HAD ACTUALLY PRODUCED THE CHILD PORNOGRAPHY ON SF's CELLPHONE BEFORE HER INITIAL CONTACT WITH THE MOVANT, YET IT TOOK SIX ADDITIONAL DAYS FOR THE GOVERNMENT TO CONCEDE TO WHAT WAS OBVIOUS. T.TR. p. 286 @ 4-13. FED. R. CRIM. P. RULE 48(A) PROVIDES THE UNITED STATES ATTORNEY "MAY DISMISS A CHARGE OF INDICTMENT, WITH THE SOLE LIMITATION THAT IF THE DISMISSAL IS "DURING TRIAL," THEN THE CHARGE CAN ONLY BE DISMISSED WITH THE "CONSENT OF THE DEFENDANT." Id. THE PROSECUTOR DISREGARDED THE RULE AND EXCEEDED LEGAL AUTHORITY BY DISMISSING THE COMPLETED OFFENSE AT § 2251(a) IN COUNT TWO, DESPITE MOVANT'S EXPLICIT OBJECTIONS AND REFUSAL TO "CONSENT" TO DISMISSAL "DURING TRIAL" (3 DAYS AFTER THE JURY WAS EMPANELED AND SWORN). Id. p. 286 @ 14 - 290 @ 13. HAD THE PROSECUTOR NOT EXCEEDED AUTHORITY AS A MATTER OF LAW, THE COURT WOULD HAVE BEEN REQUIRED TO ALLOW COMPLETED PRODUCTION TO STAND, AS CHARGED. GRANTING SUCH DISMISSAL EXCEEDS THE COURT'S RANGE OF DISCRETION AS LIMITED BY CONGRESS AT RULE 48(A). HAVING WAITED 27 MONTHS IN DETENTION FOR THE DAY MOVANT COULD PROVE CONCLUSIVELY TO THE PROSECUTION, THE COURT AND, INDEED TO THE WORLD, THAT "SOMEONE OTHER THAN THE DEFENDANT" HAD ACTUALLY COMMITTED THE CHARGE OF PRODUCING CHILD PORNOGRAPHY, THE MOVANT EMPHATICALLY REFUSED CONSENT TO DISMISS — BECAUSE HE WANTED, AND HAD A "RIGHT TO A DISPOSITION ON THE MERITS." UNITED STATES v. WOODRING, 311 F.2d 417 (8TH CIR. 1963). THE POWERFUL DIGITAL FORENSIC EVIDENCE* PROVING SOMEONE ELSE COMMITTED THE CRIME WOULD HAVE MORE THAN LIKELY ENDED IN A JURY ACQUITTAL. BUT FOR THE PROSECUTOR EXCEEDING AUTHORITY AT RULE 48(A) AND THE COURT GRANTING DISMISSAL WITHOUT MOVANT'S CONSENT, THE OUTCOME WOULD BE DIFFERENT. "JUDICIAL AMENDMENT OF GRAND JURY'S INDICTMENT CANNOT BE ACCOMPLISHED EVEN WITH DEFENDANT'S CONSENT." CROSBY v. UNITED STATES, 339 F.2d 743 (D.C. CIR. 1964). MOVANT WAS DENIED HIS RIGHT OF PROTECTION FROM WRONGFUL CONVICTION, UNDER THE DUE PROCESS CLAUSE.

---

* THE EVIDENCE WAS RENDERED USELESS, LEAVING MOVANT WITHOUT A DEFENSE TO COMPLETED CHARGE OF COERCION IN THE PRODUCTION OF CHILD PORNOGRAPHY WITH S.F. IN COUNT ONE - ADDED PREJUDICE

7. THE COURT'S ADJUDICATION THAT "SOMEONE OTHER THAN THE [MOVANT] WAS THE SOURCE OF THE PHYSICAL EVIDENCE," LED TO AN ISSUE PRECLUSION DIRECTIVE TO THE GOVERNMENT, NOT TO CALL THE "TORSO PIC" "CHILD PORNOGRAPHY." T. TR. p. 327@16-21. BECAUSE THE JURY HAD UNANIMOUSLY REJECTED THE GOVERNMENT'S ALTERNATIVE THEORY (SEXUAL INTERCOURSE UNDER COLORADO LAW) FOR THE PREDICATE CHARGEABLE OFFENSE IN COUNT ONE, BUT FOR THE PROSECUTION'S DISREGARD FOR THE COURT'S DIRECTIVE UNDER THE PRINCIPLE OF COLLATERAL ESTOPPEL, **NO CONVICTION WOULD HAVE BEEN POSSIBLE.** IN A CHARGE CONFERENCE THE COURT QUESTIONED THE RELEVANCE OF THE PHYSICAL EVIDENCE SHOWING SOMEONE ELSE COMMITTING THE CRIME THROUGH A "SERIES OF PHOTOS." Id. p. 290@14-21; 318@2-6. DEFENSE COUNSEL ARGUED THAT IF SOMEONE ELSE PRODUCED THE "TORSO PIC," THAT IT SHOULD BE PRECLUDED BECAUSE "IT IS THE ONLY EVIDENCE OF CHILD PORNOGRAPHY RELATED TO S.F. ... ITS PREJUDICE OUTWEIGHS ITS RELEVANCE." 321@12-18; 295@21-296@7; 320@18-23. THE COURT RECOGNIZED THAT THE "TORSO PIC's" PRODUCTION HAD BEEN ADJUDICATED IN MOVANT'S FAVOR, WARNING THE GOVERNMENT "IT IS **VERY** PREJUDICIAL IF YOU REFER TO IT AS CHILD PORN BUT YOU *KNOW YOU* CAN'T TIE IT TO HIM... BECAUSE THAT IMPLIES THAT HE IS GUILTY OF PRODUCING CHILD PORN." 325@16-326@1. THIS EXPLICIT ISSUE PRECLUSION WAS DISREGARDED BOTH IN THE CASE-IN-CHIEF AND AT SUMMATION. THE "TORSO PIC" WAS SHOWN MORE THAN 10 TIMES AS GOVERNMENT WITNESSES ANALYZED IT, WHILE JURORS VIEWED IT ON THEIR MONITORS — FAR EXCEEDING 404(b) FOUNDATION; Id. 416@17-417@18; 429 @17-431@10; 515@8-517@23; 538@20-539@20; 545@9-17; 558@1-22; 559@3-22; 560@4-562@14; 1124@12- 1125@20; @21-1128@19; 1153@1-1154@6; (ALSO DOC. 261, p. 86@20-87@2). THE GOVERNMENT'S CASE-IN-CHIEF INCLUDED A COMPREHENSIVE ANALYSIS OF THE TECHNICAL SPECIFICATIONS AND DIGITAL FORENSICS FINDINGS FOR THE "TORSO PIC" — COMPRISING MORE THAN 100 PAGES OF TRIAL TRANSCRIPT. T. TR. p. 1105@2 - p. 1203@7. SINCE "PRODUCTION OF CHILD PORNOGRAPHY UNDER FEDERAL LAW" NEEDED TO BE **ELECTED** THE PREDICATE CHARGEABLE OFFENSE IN COUNT ONE AND THE ALTERNATIVE — SEXUAL INTERCOURSE FROM A DISTANCE OF 1400 MILES — WAS TOO UNBELIEVABLE, THE PROSECUTOR FLAGRANTLY DISREGARDED THE COURT'S DIRECTIVE STATING AT SUMMATION, "IN TERMS OF THE PRODUCTION OF CHILD PORNOGRAPHY UNDER FEDERAL LAW, AGAIN, **YOU HAVE SEEN THE IMAGES NUMEROUS TIMES.**" 2324@ 8-10. THE ONLY "IMAGE" SHOWN "NUMEROUS TIMES" WAS THE "TORSO PIC." TO BE THE BASIS FOR THE PREDICATE IN COUNT ONE, MOVANT MUST HAVE PRODUCED IT AND IT MUST BE "SEXUALLY EXPLICIT" OR "CHILD PORNOGRAPHY" AT 18 U.S.C **§2256(8).** THE PROSECUTOR ARGUED THAT THE "TORSO PIC" WAS "CHILD PORNOGRAPHY" DUE TO A "LASCIVIOUS EXHIBITION OF THE GENITALS," AS REQUIRED AT §2256(2)(A)(e), BY CLAIMING **DOST** FACTORS WERE SATISFIED. DOC. 222, pg. 35; SEE T. TR. p. 2325@12-13 ("NUDE GENITALIA"); p. 2325@18-24 ("HER PUBIC AREA"); p. 2326@8-15 ("SEXUAL RESPONSE IN THE VIEWER," "COMPOSITION," "AS THE DEFENDANT ACKNOWLEDGES" "SEXUAL RESPONSE IN THE DEFENDANT"). PROOF THAT THE "TORSO PIC" IS "CHILD PORNOGRAPHY," DUE TO "LASCIVIOUS EXHIBITION," IMPLIES THAT MOVANT "WAS THE ONE WHO PRODUCED IT." 326@1. THE EVIDENCE VIOLATES THE COLLATERAL ESTOPPEL PRINCIPLE AS WARNED BY THE COURT, THEN STEPS BEYOND TO PROVE PRODUCTION OF THE "TORSO PIC" AS THE PREDICATE IN COUNT ONE — REINSTATING THE JEOPARDY DISMISSED/ACQUITTED BY THE COURT. AND SINCE THE GOVERNMENT ACTED KNOWINGLY IN THE MISCONDUCT, MOVANT'S RIGHT UNDER DUE PROCESS WAS VIOLATED.

SEE ABA STANDARDS CRIM. JUSTICE (3d ed. 1993) §3-5.8 (a)(b)(c) & (d), ("THE PROSECUTOR SHOULD NOT INTENTIONALLY MISSTATE THE EVIDENCE... MISLEAD THE JURY... EXPRESS PERSONAL OPINION... DIVERT THE JURY...)

8.   THE GOVERNMENT KNEW THE JURY WOULD REJECT "SEXUAL INTERCOURSE... UNDER COLORADO LAW" AS THE PREDICATE OFFENSE IN COUNT ONE, ESPECIALLY UNDER THE COMPLETED THEORY. THUS, WITHOUT CONVINCING THE JURY THAT MOVANT HAD ACTUALLY PRODUCED CHILD PORNOGRAPHY WITH S.F., THEY WOULD ONLY HAVE HAD MOVANT'S WORDS "PIC NOW" AND "SOMEWHAT NAUGHTY PIC THAT INCLUDES A FACE" — TEXT MESSAGES FAR MORE RELATED TO COMMON SEXTING THAN TO "PRODUCING, DIRECTING, MANUFACTURING, PUBLISHING OR ADVERTISING" (§2256(3)) "CHILD PORNOGRAPHY." SO PROSECUTORS IGNORED THE COURT'S EXPLICIT PRECLUSION ORDER AND SET OUT [p.327@16-21] TO IMPLY THAT MOVANT REALLY DID PRODUCE THE "TORSO PIC" OR THE "56 IMAGES" OF CHILD PORNOGRAPHY THE JURORS READ FROM PUBLICATIONS OF THE U.S. ATTORNEY'S OFFICE PRESS RELEASE. (DISCOVERY REQUIRED). WORKING IN TANDEM, THE FIRST PROSECUTOR FIRST OFFERED EVIDENCE THAT THE "TORSO PIC" DID INCLUDE A "LASCIVIOUS EXHIBITION" AND, THEREFOR WAS "CHILD PORNOGRAPHY." See [T-TR.] p.325@16-326@1; p.2326@8-24. THEN THE PROSECUTOR USED THEIR OWN CREDIBILITY TO SUGGEST THAT S.F. HAD COMMITTED PERJURY — "I WOULD SUGGEST TO YOU, LADIES AND GENTLEMEN OF THE JURY, THAT EVEN WHEN SHE TESTIFIED IN COURT, THAT TO SOME EXTENT SHE WAS STILL PROTECTING HIM." Id. p.2321@9-15. THE GOVERNMENT OFFERED NO EVIDENCE TO SUPPORT THIS PERSONAL OPINION. "THE PROBLEM WITH A PROSECUTOR'S USE OF THE PRONOUN 'I' IS THAT IT TENDS TO MAKE AN ISSUE OF [THE PROSECUTOR'S] OWN CREDIBILITY, OR TO IMPLY THE EXISTENCE OF EXTRANEOUS PROOF." UNITED STATES v NERSESIAN, 824 F.2d 1294 (2nd Cir. 1987). BY IMPLYING THAT THE U.S. ATTORNEYS KNOW ABOUT EVIDENCE APART FROM THE RECORD, AND THAT THAT EVIDENCE SHOWS S.F.'S ORIGINAL ALLEGATIONS WERE TRUTH AND THAT SHE IS LYING NOW IN ORDER TO PROTECT HIM," THEN THE JURY WILL BE MORE INCLINED TO ACCEPT THE UNDERLYING THEORY THAT MOVANT COERCED AND THREATENED S.F. TO PRODUCE THE "TORSO PIC," THE "56 IMAGES" IN THE NEWSPAPERS, OR MORE. THEY WOULD ELECT "PRODUCTION OF CHILD PORNOGRAPHY" AS THE REASON FOR COERCING S.F. WITH A THREAT TO HARM HER AND HER SISTER. See [T-TR.] p.615@6-616@7. THE SECOND PROSECUTOR CONTINUED THIS NEW NARRATIVE AT SUMMATION REBUTTAL - UNRESPONSIVE TO DEFENSE'S CLOSING STATEMENT. AT TRIAL, S.F. WAS ASKED IF SHE "STILL HA[S] FEELINGS FOR HIM," TO WHICH SHE REPLIED "YES, I DO." [T-TR.] p.617@7-9. THE SECOND PROSECUTOR MISSTATED THIS FACT TO INFLAME OR MANIPULATE THE JURY, STATING "SHE TOLD YOU THAT SHE STILL LOVES HIM AFTER ALL THIS TIME." Id. p.2321@7-8. WHERE "FEELINGS" COULD BE COMPASSION, FONDNESS, SYMPATHY, OR EVEN PITY, THE PROSECUTOR FLAGRANTLY "EXAGGERATED" THE EMOTION BY MISSTATING HER TESTIMONY TO SAY "SHE TOLD YOU THAT SHE STILL LOVES HIM..." UNITED STATES v DONATO, 99 F.3d 426 (D.C. Cir. 1996); [T-TR.] p.2321@7-8. SEE DOUGLAS v WORKMAN, 560 F.3d 1156 (10th Cir. 2009)(RELIANCE ON EXTRANEOUS PROOF)

See United States v. Watson, 171 F.3d 695 (D.C. Cir. 1999) ( Reversible Error For Prosecutor's Misstating of Witness Testimony on a Critical Point.)

We know this was an effort to open the jury to manipulation by this prosecutor by the many repititions of the First Prosecutor's opinion that S.F. committed perjury "to protect" the Movant — without evidence in support of this opinion, and again unresponsive to the Defense counsel's statement. The narrative is embedded into the minds of the jury just minutes prior to deliberations and delivered while each juror's monitor displays the word "G U I L T Y" in giant bold red letters. The prosecutor repeats: "You will always protect me," (p.2326); "He will protect her," (@13); "She will protect him" (Id.); "Protect me" (p.2393@9); "...Protect me always.." (2397@15-22); "No need to protect" (Id.); "Only person who needs protection" (Id.); "To protect him always.." (@21-24); "Protect me on here" (p.2410@24-25); "Is he asking for protection from bad cell service?" (Id.); "He is asking her to protect him" (Id.).

The Government has no explanation for opining, then reinforcing the opinion suggesting that their own witness, minor S.F., had lied under oath to the jury — risking a felony charge against her. To make such a claim in the final minutes of a two-week trial is akin to lobbing a "Hail Mary" pass in football's final seconds. Under the completed theory, the Government can name no evidence of "engaging in" — the Actus Reus or element of completion. And with no overt act pointed directly toward the commission of the charged defense" in the attempt, the Government needed to redirect the jury toward extraneous proof or the Government's knowledge of extraneous proof — S.F.'s original allegations on the Forensic Video Interview;" on February 20, 2014; p.642@12-16; Not "worried about getting Mr. Isabella in trouble" when S.F. was not under oath; (p.655@8-19); She was anxious about correcting her statement to law enforcement concerning those allegations; See T.T. p. 651@24-65207.

Prejudice re: #8.

9.   Beginning with this issue, Movant was prejudiced by the encouragement by the United States Attorneys, for the jury to disbelieve S.F.'s recantation of allegations exonerating Movant in the production of child pornography under fear of harm and false persona, and by the encouragement to believe her original allegations — extranous to the record — were the truth. Since this opinion, that S.F. had committed perjury "to protect" the Movant, had no benefit apart from this misconduct, it rises to the level of a due process violation.

PREJUDICE RE: ¶ 1.

10. THE PREJUDICE FROM THE HEARSAY EVIDENCE—TELLING THE GRAND JURY WHAT THE AGENT HEARD S.F. TELL THE INTERVIEW OF THINGS MOVANT HAD TOLD HER—IS BASED ON PRINCIPLES UNDER UNITED STATES v. ESTEPA, 471 F.2d 1132 (2ⁿᵈ c.a. 1972), DECIDING THAT SUCH HEARSAY IS UNACCEPTABLE DUE TO THE "SHODDY MERCHANDISE THEY ARE GETTING." Id. ESPECIALLY WITH S.F.'s RECANTING STARTING WITH THE FIRST INTERVIEW FOLLOWING THE FORENSIC VIDEO INTERVIEW, HAD THE GRAND JURY HEARD FROM S.F. DIRECTLY, THERE IS A "HIGH PROBABILITY" THAT THE GRAND JURY WOULD NOT HAVE "INDICTED" IN COUNTS ONE AND TWO. Id.; T.TR. p. 650 @ 23-652 07. WITH S.F.'s ALLEGATIONS BEING TOO UNBELIEVABLE AND CONTRADICTORY WITHIN THE ~~INTER~~ FORENSIC VIDEO INTERVIEW, HAD THE PROSECUTOR ALLOWED THE GRAND JURY TO WATCH THE VIDEO, RATHER THAN HEAR AN AGENT DESCRIBE WHAT HE VIEWED IN THE VIDEO INTERVIEW, THEY WOULD HAVE BEEN QUICK TO a.) RECOGNIZE THAT S.F. WAS LYING, b.) CATCH THE TIMELINE CONTRADICTIONS, c.) DOUBTED THAT MOVANT HAD PRODUCED HER "8TH GRADE" PORNOGRAPHY THE YEAR PRIOR TO INITIAL CONTACT, AND d.) QUESTIONED WHY CHILD PORNOGRAPHY WAS PHOTOGRAPHED ON "RANDY'S BED" IN "SILVERTON, CO", WHEN S.F. STATES SHE CALLS ISABELLA, "RAND" AND DOESN'T "KNOW WHO" THE INTERVIEWER WAS "TALKING ABOUT" SAYING, "DID RANDY WANT YOU TO TAKE THIS" AND "DID YOU TAKE THIS FOR RANDY"? BUT FOR THE PROSECUTOR PRESENTING "SHODDY MERCHANDISE," WHEN S.F. AND THE FORENSIC VIDEO INTERVIEW WERE AVAILABLE, THERE IS A HIGH PROBABILITY THAT THE GRAND JURY WOULD NOT HAVE INDICTED. ESTEPA. SEE ABA STANDARDS FOR CRIMINAL JUSTICE §3-3.6(b) (3ᵈ ed 1993). §11-2.1(a).; §11-4.3(c)-1.

11. PREJUDICE RE: ¶ 2.

KNOWING AND HAVING REASON TO KNOW THAT THE EXIF DATA AND DIGITAL FORENSIC EVIDENCE CONCERNING THE PHOTOGRAPHS ON S.F.'s CELLPHONE, i.e. "THE TORSO PIC," NEGATED GUILT BY SHOWING SOMEONE OTHER THAN THE MOVANT PRODUCING THOSE "56 IMAGES" OF CHILD PORNOGRAPHY, THE PROSECUTOR THROUGH NON-DISCLOSURE AFFIRMATIVELY DECEIVED THE GRAND JURY, IN EFFECT TRANSFORMING EXCULPATORY EVIDENCE INTO INCULPATORY EVIDENCE." Prosecutorial Misconduct (GERSHMAN). HAD THE GRAND JURY SEEN THE EXIF DATA (METADATA) READILY AVAILABLE ON S.F.'s CELLPHONE, THEY WOULD HAVE IMMEDIATELY RECOGNIZED THAT THE CREATION DATE ON THE "TORSO PIC" SERIES WAS ON OR ABOUT AUGUST 9, 2013. @ 22-1114 @11. T.TR. p. 1113 THE GRAND JURY WOULD HAVE BEEN UNABLE TO RECONCILE THIS EVIDENCE WITH THE DATE THE AGENT STATED MOVANT HAD "BEGAN COMMUNICATING WITH [S.F.]," SEPTEMBER 19, 2013. Doc. 111 p. 3591 4. BUT FOR THE PROSECUTOR'S MISCONDUCT IN WITHHOLDING EVIDENCE "CLEARLY NEGATING GUILT," THE GRAND JURY WOULD NOT HAVE INDICTED. UNITED STATES v. GAVRAN, 845 F.2d 1023 (7ᵗʰ c.a. 1988); ALSO SEE UNITED STATES v. CIAMBRONE, 601 F.2d 616 (2ⁿᵈ c.a. 1979).

12. PREJUDICE RE: ¶3.

HAD THE PROSECUTOR DISCLOSED THE EVIDENCE THAT S.F. HAD BEGUN RECANTING HER ALLEGATIONS FIFTEEN MONTHS AHEAD OF TRIAL, RATHER THAN DURING TRIAL — TOO LATE TO PRECLUDE — MOVANT WOULD NOT HAVE BEEN SURPRISED AT TRIAL, AND WOULD MORE THAN LIKELY HAVE SHIFTED TO AN AFFIRMATIVE SEXTING WITH A MINOR DEFENSE. AND, BUT FOR THE PROSECUTOR'S TOTAL FAILURE IN DISCLOSING TO DEFENSE THAT SOMEONE OTHER THAN THE MOVANT HAD ACTUALLY PRODUCED THE CHILD PORNOGRAPHY FOUND ON S.F.'S CELLPHONE, MOVANT WOULD HAVE MOVED TO DISMISS THE INDICTMENT, PRECLUDE EVIDENCE, AND SHIFT TO A MORE APPROPRIATE DEFENSE AS STATED ABOVE — WITH TIME ENOUGH TO PREPARE. WITH MOVANT'S WINNING "ACTUAL INNOCENCE" DEFENSE EVIDENCE RENDERED USELESS BY THE DISCOVERY DURING TRIAL, BUT FOR THE "BELATED DISCLOSURE[S]...[WHICH] CAME TOO LATE TO ALLOW DEFENSE AN OPPORTUNITY TO USE IT," THE OUTCOME OF TRIAL WOULD HAVE BEEN DIFFERENT. DI SIMONE v PHILLIPS. SUPPLEMENTED IN PROPRIA PERSONA ON APPEAL, THE ISSUE WAS NOT WAIVED. SEE U.S. DEPT. OF JUSTICE, U.S. ATTORNEYS MANUAL 69-5.001 (D)(1)(2) (2006); UNITED STATES v CAMPAGNUOLO, 592 F.2d 852 (5TH CIR. 1979)

13. PREJUDICE RE: ¶4.

KNOWING MOVANT WAS ACTUALLY INNOCENT OF PRODUCING CHILD PORNOGRAPHY FOR OVER TWO-AND-A HALF YEARS AHEAD OF TRIAL, THE PROSECUTOR FLAGRANTLY MISLED THE COURT BY PROCEEDING IN PROSECUTING PRODUCTION OF CHILD PORNOGRAPHY BEFORE IMPROPERLY DISMISSING THAT CHARGE DURING TRIAL, THEN, RELYING ON THE ELEMENTS AND FACTUAL BASES OF THAT DISMISSED OFFENSE TO PROVE THE PREDICATE OFFENSE ELEMENT IN COUNT ONE AND ATTEMPTED PRODUCTION IN COUNT TWO, THE PROSECUTOR IGNORED THE ISSUE PRECLUSION ORDER AND COMMON LAW COLLATERAL ESTOPPEL PRINCIPLES UNDER THE DOUBLE JEOPARDY AND DUE PROCESS CLAUSES. BUT FOR THESE ERRORS OF MISCONDUCT, NO CONVICTION WOULD HAVE BEEN OBTAINED OR SUCCESSFULLY DEFENDED ON APPEAL. SEE MAHORNEY v WALLMAN, F.2d-469-(10TH CIR. 1990). (OVERALL PREJUDICIAL EFFECT OF DENIAL OF FAIR TRIAL IS ANALYZED)

14. PREJUDICE RE: ¶5.

UNDER THE LAW OF THE CASE CONCERNING THE PREDICATE OFFENSE ELEMENT (DOC.221 P.20, n.2) AND CONTROLLING AUTHORITY UNDER UNITED STATES v MANNAVA, BUT FOR THE PROSECUTOR'S MISSTATEMENT OF LAW TO THE COURT AND THE MISAPPLICATION OF 18 U.S.C. §2427 TO AN ATTEMPT, THE JURY WOULD NOT HAVE FOUND A PREDICATE IN COUNT ONE.

15. PREJUDICE RE: ¶6.

HAD THE COURT NOT GRANTED THE GOVERNMENT'S IMPROPER MOTION TO DISMISS THE SUBSTANTIVE OFFENSE IN COUNT TWO — (WAIVING EVIDENCE SUFFICIENCY AND WITH JEOPARDY ATTACHED) — OVER MOVANT'S OBJECTION CITING THE GRAND JURY CLAUSE, MOVANT WOULD HAVE RECEIVED THE FAVORABLE LIGHT OF A JURY "DISPOSITION ON THE MERITS." WOODRING ; SEE RULE 48(a) AND 48(b) FED. R. CRIM. P.  THUS, MOVANT WAS DENIED THE DUE PROCESS OF "FEDERAL RULES OF CRIMINAL PROCEDURE"; AND HIS SUBSTANTIAL RIGHT TO EQUAL PROTECTION UNDER THE LAW; EVIDENCED BY THE INFRINGEMENT OF HIS RIGHT OF PROTECTION; UNDER THE GRAND JURY CLAUSE; AND DUE PROCESS; U.S. CONSTITUTION; AMENDMENTS FIVE, SIX AND FOURTEEN.  BUT FOR THE PRE-MATURE DISMISSAL WITH PREJUDICE AND JEOPARDY, IN COMBINATION WITH THE DENIAL OF MOVANT'S RIGHTS OF PROTECTION FROM WRONGFUL CONVICTION, THE JURY WOULD HAVE VIEWED THE EVIDENCE PROVING SOMEONE ELSE COMMITTED THE SUBSTANTIVE OFFENSE OF PRODUCTION, AND THEY WOULD HAVE BEEN UNABLE TO RECONCILE ATTEMPTED PRODUCTION, AND PRODUCTION AS THE PREDICATE OFFENSE ELEMENT, UNDER THE IDENTICAL FACTUAL-BASES PARTICULARIZED ON THE INDICTMENT.[Doc.1] THE EVIDENCE OF WINNING DIGITAL FORENSICS BEING RENDERED USELESS TO REMAINING COUNTS INCREASED THE PREJUDICE OF THE ERRONEOUS DISMISSAL.

16. PREJUDICE RE: ¶7.

THE PROSECUTOR'S REFERENCE TO THE "TORSO PIC" — "IN TERMS OF THE PRODUCTION OF CHILD PORNOGRAPHY," BECAUSE THE JURY HAS "SEEN THE IMAGES NUMEROUS TIMES" — PREJUDICED THE MOVANT BY IMPLIEDLY STATING THE MOVANT PRODUCED THAT PHOTO, SHOWN "NUMEROUS TIMES." THE FLAGRANT DISREGARD FOR THE COURT'S PRECLUSION ORDER VIOLATED DOUBLE JEOPARDY'S COLLATERAL ESTOPPEL PRINCIPLE AND MOVANT'S RIGHT OF PROTECTION UNDER DUE PROCESS, SINCE THE DISREGARD WAS DONE KNOWINGLY.  BUT FOR EXCESSIVE DIGITAL FORENSIC EVIDENCE CONCERNING THE ORIGINS AND SPECIFICATIONS OF THE TORSO PIC IMPLYING MOVANT DID PLAY A ROLE IN ITS PRODUCTION, COMBINED WITH THE PROSECUTOR'S FLAGRANT DISREGARD FOR THE COURT'S PRECLUSION ORDER, AND THE PROSECUTOR'S IMPLICATION AT SUMMATION, THE JURY WOULD NOT HAVE ELECTED "PRODUCTION" AS THE PREDICATE OFFENSE ELEMENT IN COUNT ONE, MAKING THE OUTCOME DIFFERENT.

PREJUDICE

17. BY ADOPTING SHIFTING POSITIONS, DISREGARDING ACCEPTED PRINCIPLES, RULES OF CRIMINAL PROCEDURE AND THE COURT'S ORDER, THE PROSECUTION HAS STEPPED BEYOND THE BOUNDS OF FAIRNESS. BY PRESENTING AND FAILING TO CORRECT MISSTATEMENTS OF LAW AND FACT AND FAILING TO DISCLOSE EVIDENCE — NEGATING GUILT — TO THE GRAND JURY AND TO THE DEFENSE, THE LEVEL OF UNFAIRNESS RISES TO A FUNDAMENTAL DEFECT IN THE TRIAL PROCEEDINGS. AND BY KNOWINGLY AND FLAGRANTLY DISREGARDING THE BASIC RUDIMENTS OF WHAT IS UNIVERSALLY CONSIDERED FAIR WITH REGARD TO THIS MOVANT'S SUBSTANTIAL RIGHTS — THE GUARANTEES OF PROTECTION FROM WRONGFUL CONVICTION — THE CONDUCT OF THE PROSECUTION HAS CAUSED A FUNDAMENTAL MISCARRIAGE OF JUSTICE. SEE UNITED STATES v BLUEFORD, 279 F.3d 1084 (9TH CIR. 2002) ("PROSECUTION HAD EVIDENCE CONTRADICTING HIS ASSERTIONS.")

18. THIS ISSUE IS COGNIZABLE AND WAS PRESERVED BY MOVANT'S SUPPLEMENTAL BRIEFING TO THE COURT OF APPEALS — WITH NO WAY TO KNOW IT WOULD NOT BE ADDRESSED. THE CLAIM IS NOT BARRED UNDER THE PROCEDURAL DEFAULT RULE, BECAUSE THE RAISED BUT NOT ADDRESSED CLAIM HAS NOT BEEN SUBJECT TO THE "CRUCIBLE OF ADVERSARIAL TESTING" CONTEMPLATED IN UNITED STATES v CRONIC, 466 U.S. 648 (1984). SEE SIDDIQI v UNITED STATES, 98 F.3d 1440 (2ND CIR. 1999) ("THE SHIFTING NATURE OF THE GOVERNMENT'S CASE... MISLED] DEFENSE COUNSEL AS TO THE GOVERNMENT'S THEORY OF GUILT... ENABLED THE GOVERNMENT TO OBTAIN A CONVICTION FROM THE JURY ON A FACTUAL THEORY THAT WAS PUT FORTH FOR THE FIRST TIME IN SUMMATION AND HAD NO FOUNDATION IN FACT."). THE SECOND CIRCUIT DECIDED THAT MOVANT'S TRIAL AND POST-TRIAL PROCEEDINGS "DID NOT MEET THE RUDIMENTARY DEMANDS OF FAIR PROCEDURE... CONSTITUT[ING] A MISCARRIAGE OF JUSTICE." Id. SECTION 2255 RELIEF WAS GRANTED TO REMEDY THIS MISCARRIAGE OF JUSTICE. Id. AN EVIDENTIARY HEARING IS NEEDED TO DETERMINE ISSUES OF FACT AND LAW CONSISTENT WITH THIS ISSUE. SEE UNITED STATES v HENRY 447 U.S. 264 (1980).

## GROUND SIXTEEN

AO 243 (Rev. 01/15)

~~[redacted]~~ 18 U.S.C. §2256(2) IS UNCONSTITUTIONAL AS APPLIED. APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE ISSUE.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AT NO POINT DID MINOR S.F. ENGAGE OR ATTEMPT TO ENGAGE IN, NEITHER DID MOVANT SOLICIT, ENTICE OR REQUEST S.F. TO ENGAGE IN ANY CONDUCT IN VIOLATION AT 18 U.S.C. §2256(2).

SEE PAGE NEXT

(b) Direct Appeal of **GROUND SIXTEEN**

   (1) If you appealed from the judgment of conviction, did you raise this issue?
      Yes ☐   No ☒

   (2) If you did not raise this issue in your direct appeal, explain why:
      APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE.

(c) Post-Conviction Proceedings:

   (1) Did you raise this issue in any post-conviction motion, petition, or application?
      Yes ☐   No ☒

   (2) If you answer to Question (c)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   (3) Did you receive a hearing on your motion, petition, or application?
      Yes ☐   No ☐
   (4) Did you appeal from the denial of your motion, petition, or application?
      Yes ☐   No ☐
   (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
      Yes ☐   No ☐

AO 243 (Rev. 01/15)

   (6) If your answer to Question (c)(4) is "Yes," state:
   Name and location of the court where the appeal was filed: _____

   Docket or case number (if you know): _____
   Date of the court's decision: _____
   Result (attach a copy of the court's opinion or order, if available): _____

   (7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

THE DEFINITION AT 18 U.S.C. §2256(2) WAS SO BROADLY DEFINED AS TO BE, AND TO IN TURN CAUSE THE DEFINITION AT 18 U.S.C. §2256(8) TO BE, UNCONSTITUTIONAL AS APPLIED. "SEXUALLY EXPLICIT CONDUCT" WAS NOT PROSCRIBED TO INCLUDE: (A) SEXTING, (B) OBSCENE SEXTING, (C) "GROOMING", (D) A "MINOR'S ASSENT," (E) "MERE NUDITY," OR (F) "TEEN EROTICA." EVIDENCE AT TRIAL SO BLURRED THE LINES AS TO WHAT CONSTITUTES "SEXUALLY EXPLICIT CONDUCT" UNDER THE LAW, AS TO UNCONSTITUTIONALLY BROADEN THE SUBSEQUENT DEFINITION AT §2256(8), DEFINING "CHILD PORNOGRAPHY." (SUCH TERMS ARE USED THROUGHOUT CASE.)

COMMUNICATIONS ALONE CANNOT BE DEFINED AS "CHILD PORNOGRAPHY" SINCE THEY LACK THE "VISUAL DEPICTION" THAT DEPICTS A MINOR "ENGAGING IN" THE SEXUALLY EXPLICIT CONDUCT AT §2256 (A), i.e. ORAL, ANAL, OR GENITAL INTERCOURSE, MASTURBATION OR DEPICTING OR EXPOSING GENITALIA IN A MANNER DEEMED "LASCIVIOUS," A TERM OF LAW. "BECAUSE THE MEANING OF THE STATUTORY PHRASE 'LASCIVIOUS EXHIBITION' ... POSES A PURE QUESTION OF LAW, OUR REVIEW IS PLENARY." UNITED STATES V KNOX, 32 F.3d 733 (3RD CIR. 1994). THE "LASCIVIOUS EXHIBITION" OF GENITALIA IS NOT A TERM OF ART LEFT TO THE VIEWER OR PHOTOGRAPHER TO DECIDE. SEE UNITED STATES V STEEN, 634 F.3d 822 (5TH CIR. 2011) (SECTION 2251(a) REVERSED ON INSUFFICIENCY OF THE EVIDENCE OF A "LASCIVIOUS EXHIBITION.") JUDGE HIGGENBOTHAM'S CRITICISM OF THE SIXTH DOST FACTOR, RELIED UPON BY THE GOVERNMENT TO BROADEN THE REACH OF "SEXUALLY EXPLICIT CONDUCT," BRINGS A LAWFUL PROSPECTIVE CONSISTENT WITH CONGRESS' PROSCRIPTION AND INTENT, AS WELL AS SUPREME COURT DOCTRINE UNDER MILLER V CALIFORNIA. "CONGRESS DID NOT MAKE PRODUCTION OF CHILD PORNOGRAPHY TURN ON WHETHER THE MAKER OR VIEWER OF AN IMAGE WAS SEXUALLY AROUSED" ... "TO QUALIFY UNDER §2251 THE IMAGES [BEING PRODUCED] MUST SHOW A MINOR BEING USED TO ENGAGE IN SEXUALLY EXPLICIT CONDUCT." STEEN (HIGGENBOTHAM CONCURRING).

NEITHER SEXTING, NOR OBSCENE SEXTING WITH A MINOR INVOLVES "ENGAGING IN" OF SEXUALLY EXPLICIT CONDUCT, AND SO IS INSUFFICIENT TO COMPRISE THE VISUAL DEPICTION REQUIREMENT OF "CHILD PORNOGRAPHY" AT §2256(8). NO AMOUNT OF SEXTING CAN PRODUCE CHILD PORNOGRAPHY WITHOUT A MINOR ACTUALLY ENGAGING IN SEXUALLY EXPLICIT CONDUCT TO DO SO.

NO AMOUNT OF "GROOMING", OR AS AGENT THOMAS MISLED THE JURY BY HIS DEFINITION OF "MORPHING" (DEFINED UNDER Ashcroft v Free Speech Coalition 535 US 234. 2002) AS THE ALTERATION OF "INNOCENT PICTURES" OF CHILDREN TO APPEAR AS IF THEY ARE "ENGAGING IN SEXUALLY EXPLICIT CONDUCT"), CAN RESULT IN CHILD PORNOGRAPHY WITHOUT A MINOR ACTUALLY ENGAGING IN SEXUALLY EXPLICIT CONDUCT.

THE ONLY "ASSENT" APPLICABLE IN THIS CASE IS IF THE MOVANT HAD EXPRESSED AN UNEQUIVOCAL SOLICITATION THAT S.F. ENGAGE — NOT IN MERE NUDITY OR EROTICA — BUT SEXUALLY EXPLICIT CONDUCT, i.e: genitalia exhibited lasciviously or lewdly. ANYTHING LESS IS TOO TENUOUS UNDER THE CONSTITUTIONAL DEFINITION OF "CHILD PORNOGRAPHY" AT §2256(8), WHICH IS FULLY DEPENDANT UPON A VIOLATION OF ONE OF THE PRONGS UNDER THE "SEXUALLY EXPLICIT CONDUCT". DEFINITION AT §2256(2)(A).

NEITHER "MERE NUDITY" OR "TEEN EROTICA" CONTAIN "SEXUALLY EXPLICIT CONDUCT". SO VISUAL DEPICTIONS OF SUCH CONDUCT CANNOT MAKE "CHILD PORNOGRAPHY". MINORS ENGAGING IN MERE NUDITY OR TEEN EROTICA POSING IS NOT PROHIBITED FEDERALLY BECAUSE IT DOES NOT VIOLATE §2256(2), DEFINING THE TERMS OF "SEXUALLY EXPLICIT CONDUCT." SO ANY WORDS MOVANT SAID THAT HELD AN EXPECTATION OF "MERE NUDITY" OR "TEEN EROTICA" COULD NOT HAVE RESULTED IN A VISUAL DEPICTION OF "CHILD PORNOGRAPHY", AS DEFINED BY LAW: §2256(2)+(8) ARE UNCONSTITUTIONAL AS APPLIED; VIOLATING DUE PROCESS.

AO 243 (Rev. 01/15)                                                                                                Page 10

(3)   Did you receive a hearing on your motion, petition, or application?

     Yes ☐    No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

     Yes ☐    No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

     Yes ☐    No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13.   Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL - APPELLATE COUNSEL IS TRIAL COUNSEL
    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL - FACTS NOT YET DEVELOPED
    UNCONSTITUTIONAL CONVICTION - APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE
    UNCONSTITUTIONAL VARIANCE - APPELLATE COUNSEL WINNOWED OUT ISSUE (RAISED/PRESERVED, NOT ADDRESSED)
    DOUBLE JEOPARDY - APPELLATE COUNSEL RAISED MULTIPLICITY, NOT COLLATERAL ESTOPPEL
    JURISDICTION - APPELLATE COUNSEL WAS INEFFECTIVE ASSISTANCE
    DENIAL OF DUE PROCESS PROTECTION - FACTS HAD NOT YET DEVELOPED (RAISED/PRESERVED, NOT ADDRESSED)
    CONSTITUTIONAL CHALLENGE - APPELLATE COUNSEL WINNOWED OUT
    PROSECUTORIAL MISCONDUCT - ATTORNEY CONFLICT (DOCUMENTED). (PRESERVED BY SUPPLEMENTAL MOTION)

14.   Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?   Yes ☒   No ☐

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.   U.S. DISTRICT COURT OF COLORADO   1:14-cr-00207-CMA-01

    MOTION TO VACATE OR MODIFY SENTENCE AT 18 U.S.C. §3582(c)

    "COMPASSIONATE RELEASE" DUE TO PRISON'S INABILITY TO ACCOMMODATE
    PRESCRIBED MEDICAL DEVICE AND TO PRISON'S INABILITY TO MITIGATE
    SPREAD OF COVID TO ESPECIALLY VULNERABLE INMATES.

AO 243 (Rev. 01/15)                                                                                      Page 11

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

SILVIA IRWIN, PUBLIC DEFENDER - JACKSONVILLE, FL

(b) At the arraignment and plea:

MATTHEW BELCHER, FED. PUBLIC DEFENDER - DENVER, CO

(c) At the trial:

RON GAINOR, 3250 MARY ST., STE. 304, MIAMI, FL 33133  AND AMBER DONNER

(d) At sentencing:

RON GAINOR AND AMBER DONNER

(e) On appeal:

RON GAINOR AND AMBER DONNER

(f) In any post-conviction proceeding:

PRO SE   (Pet. Reh.)

(g) On appeal from any ruling against you in a post-conviction proceeding:

SUPREME COURT  -  PRO SE

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?       Yes ☒       No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?       Yes ☐       No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?       Yes ☐       No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

AO 243 (Rev. 01/15)                                                                                    Page 12

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:
A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
   (1)   the date on which the judgment of conviction became final;
   (2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
   (3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
   (4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 01/15)                                                                          Page 13

Therefore, movant asks that the Court grant the following relief: *Movant prays the Honorable Court will grant relief at 28 U.S.C. §2255, will vacate the judgment and will hold an evidentiary hearing to make determinations consistent with the issues.*

or any other relief to which movant may be entitled.

_____

_____
Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____*March 30, 2021*_____.

                                                           (month, date, year)


Executed (signed) on _____*March 30, 2021*_____   (date)


_____
Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

# CERTIFICATION

I HEREBY CERTIFY AND DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND THAT THIS AMENDMENT OF THE MOTION FILED ON MARCH 30, 2020 UNDER 28 U.S.C. § 2255 WAS PLACED INTO THE PRISON MAIL SYSTEM WITH PRE-PAID POSTAGE AFFIXED ON JUNE 23, 2021. 28 U.S.C. § 1746; "PRISON MAIL RULE."

I RESERVE ALL RIGHTS INCLUDING THE RIGHT TO AMEND, SUPPLEMENT OR REPLY AS THE COURT SO ORDERS. HAINES v KERNER, 404 U.S. 519 (1972).

EXECUTED ON JUNE 23, 2021.

SIGNATURE OF MOVANT

# AFFIDAVIT

APPENDIX A

## RE:"M.E."

I HEREBY CERTIFY UNDER PENALTY OF PERJURY THAT THE FOLLOWING IS TRUE AND CORRECT. JUNE 21, 2021. SIGNED _____ 6-21-21

1. I WAS FIRST INTRODUCED TO M.E. THROUGH AN EMAIL NOTIFICATION SENT TO ME BY THE ADULT DATING/MATCHMAKING WEBSITE OKCUPID. THE MESSAGE HAD STATED THE SERVICE HAD IDENTIFIED MY "PERFECT MATCH." AS THIS HAD NEVER BEFORE OCCURRED, THE FACT THAT SOMEONE SHARED IDENTICAL INTERESTS AND VIEWS CAUGHT MY ATTENTION. M.E. AND I BEGAN TO TALK. SHE CALLED FREQUENTLY AT FIRST.

2. I ASSISTED M.E. WITH VARIOUS THINGS AND TALKED HER THROUGH PERSONAL CRISES. BOTH HER OKCUPID AND PLENTY OF FISH ADULT ONLY DATING SITES LISTED HER AGE AT 18. AT TRIAL SHE TESTIFIED SHE NORMALLY TOLD MEN THAT SHE WAS ACTUALLY 17, BUT I LATER LEARNED THIS WAS A TACTIC TO GET RID OF THE OLDER MEN SHE DID NOT — OR NO LONGER — LIKED.

3. WHEN I QUESTIONED M.E. CONCERNING WHY SHE WAS STILL IN HIGH SCHOOL IF SHE WAS 18, SHE STATED THAT SHE HAD FLUNKED THREE SEMESTERS OF HIGH SCHOOL AND WAS FLUNKING HER FOURTH. I OFFERRED TO HELP AND PRESENTED HER WITH EXTENSIVE RESEARCH I HAD DONE ON STARK COUNTY'S MIDDLE COLLEGE PROGRAM — BUILT PRECISELY FOR STUDENTS LIKE HER. SHE WANTED ME TO WRITE TO VARIOUS COLLEGES AS IF SHE WERE WRITING THE LETTER OF INQUIRY. I OBLIGED, AND CRAFTED THE LETTERS. BUT SHE INSISTED I SEND THEM FROM HER GOOGLE MAIL ACCOUNT. M.E. GAVE ME HER ID/PASSWORD AND I USED A UTILITY ON MY BRAND NEW iMAC WHICH INSTALLED HER GOOGLE MAIL ONTO THE iMAC. I SENT OUT HER LETTERS... AS HER.

APPENDIX A

4. I WAS FIRST "INTRODUCED" TO M.E. AT THE END OF DECEMBER, 2012 AND INSTALLED HER EMAIL DURING THE FIRST WEEK OF JANUARY, 2013. WE FIRST MET IN PERSON ON FEBRUARY 14, 2013.

5. M.E. NOTIFIED ME IN FEBRUARY (APPROXIMATE) THAT HER HOUSE HAD BURNED TO THE GROUND AND THAT SHE LOST EVERYTHING. SHE REQUESTED THAT I TAKE HER SHOPPING. INSTEAD, I CALLED A FRIEND, CHELSEY PRITCHARD, WHO AGREED TO DONATE SOME CLOTHES TO M.E. ACCORDING TO CHELSEY, M.E. LEFT HER HOME WITH BAGS FILLED WITH CLOTHING, COSMETICS, PRODUCTS, "EVEN A HAIR DRYER."

6. WITHIN ABOUT 48 HOURS CHELSEY NOTIFIED ME THAT IT FELT MORE LIKE SHE WAS BEING ROBBED THAN DONATING TO SOMEONE WHO SUFFERED DEVESTATION. I BEGAN COLLECTING POLICE AND FIRE BLOTTERS FOR STARK COUNTY AND PLACING THEM INTO MY "M.E." INVESTIGATION FOLDER. [I HAD A .DOC FILE FOR MOST ANYONE WHO I SUSPECTED WERE NOT BEING TRUTHFUL, i.e. "S.F." INVESTIGATION, "LILLY" INVESTIGATION (UCA), AND "LANDIN" ("X.A." HAD PRETENDED TO BE A COLLEGE STUDENT NAMED "JENNIFER LANDIN") — ALL AVAILABLE ON THE iMAC.]

7. FOR SEVERAL WEEKS I SCANNED ALL STARK COUNTY NEWS MEDIA OUTLETS, BUT NO HOUSES HAD FIRES REPORTED DURING THAT PERIOD. I APOLOGIZED TO CHELSEY. SHE EXPRESSED TO ME THAT SHE HAD THE IMPRESSION THAT M.E. WAS SCAMMING "OLDER MEN" AND WARNED ME TO BE CAREFUL.

8. ON ANOTHER OCCASION M.E. REPORTEDLY HAD GOTTEN INTO A WRECK AND NEEDED A NEW CAR. SHE DEMANDED THAT I DRIVE HER TO MEET A BARTENDER IN MENTOR, WHO WAS IN HIS 40's. I EXPLAINED THAT TO DO SO WOULD REQUIRE $3\frac{1}{2}$ HOURS DRIVING TO GET HER THERE, PLUS 2 HOURS TO GET HOME, THEN THE REVERSE THE NEXT DAY TO TAKE HER HOME. M.E. WAS ANGRY AT MY REFUSAL.

A-3

14.   M.E.'s call was very and was approximately this:

R.I.   Hello?

M.E.   I'm driving to meet you. I'm about 10 minutes away. You'd better be ready. Where do you live?

R.I.   From I-80 exit south, a right turn at Hubbard off-ramp. One-mile on the left, park at the music store under the sign for "Downtown Coffee Cafe."

M.E.   You know what day this is?

R.I.   Valentine's Day

M.E.   You better be ready! Bye.

15.   (Not wanting a stranger in my home), I changed clothes and drove a mile to the coffee shop and signaled for her to join me. We walked inside. I had her sit on a big red leather sofa near the fireplace while I ordered a coffee. But M.E. was not happy with the coffee shop, so I offered to take her to my favorite restaurant in Lowellville 3-4 miles south on 616.

16.   She was not happy with Bogey's — a former biker bar turned home-style family Italian. I ordered my usual grilled haddock with Italian greens. M.E. ordered nothing. Arriving at 11:30, we left just after noon. The giant parking lot remained mostly empty in a rural setting. Upon reaching my Mercedes sedan, M.E. asked about packages I had in the back seat: I explained that them were Valentine's Day gifts for my mom, sister, and two best friends (Jen and Kara). She wanted them. I said "no," but I have something for you... and went back out to the trunk. I had wholesale sample packs of pearls from China and a few other product samples which I paid almost nothing to get on eBay. Instead of the gift making her happy, it became clear that M.E. was angry with me. I didn't know why.

17. Upon driving back (North) to Hubbard I was cited for exceeding Mahoning County's lower speed limit as I hit Trumbull County's line. Since I've not seen 99% of discovery and FCI Loretto will not permit attorneys to send it to me — rejected about 9 times — I don't know if the ticket is in discovery or not. But it would prove where we ate lunch was not a "truckstop" as M.E. testified, because neither Lowellville or Coitsville have a truckstop.

18. We sat in the Mercedes in the coffee shop parking lot next to her car. M.E. was not happy, but she wasn't anxious to leave. We talked and I joked around using the "Cocky Funny" technique I had learned recently from the "Dave D'Angelo" method for talking to women — I spotted on Plenty of Fish. I poked fun at her full length black madras skirt covering her knee high boots — saying something about "Amish" and "my grandma."

19. I did pull up her skirt to view the boots. M.E. placed her hand atop mine and said "Do you have thirty-five dollars?" I said "Yes." She said "Let's just go!" As I pulled away. M.E. asked where else there is to go. I misunderstood her to mean to spend time or hang out. But she showed no interest in either. Passing my home we drove to a home owned by my friend Norman, consisting of three rental incomes on one suburban Boardman residence. I keep music and sound equipment there for rehearsals or for teaching lessons as Norman did.

20. I did not know that a pipe had burst in one of the bedrooms over the winter, so Norman shut the water off. The house is sparsely furnished since no one was renting the main floor of the house. Chilly upon arriving I set the thermostat from 63° to 75°.

21. I fussed with the audio system and turned on the cable TV. M.E. sat on the sofa at one end of the living room. When I turned back around M.E.'s skirt was hiked well above her knees and her feet were on the coffee table. M.E. finally looked comfortable.

22. As I sat on the sturdy coffee table facing M.E. she parted her legs and asked if I had "the thirty-five dollars." Catching a foul odor - I asked if she had showered lately. She said, "No, but men love the way I smell." I placed a hand on her thigh and caught what I said "smells like herpes to me" and I closed her legs and stood.

23. My phone rang with my best friend Kara's face. I pushed it off but she kept calling. A former Hugo Boss model that had traveled the world, Kara's face added to M.E.'s disappointment with me.

24. It was clear that I had no interest in going further with M.E. and that I was not giving her "the thirty-five dollars" she wanted. I don't know whether she was more angry with me after seeing Kara's face, for not getting the thirty-five dollars she wanted, or because I flatly rejected her "availability" to me by saying she smelled badly. Either way, it was obvious the date was over and I drove her straight to her car in absolute silence.

25. I led her to the on-ramp and pulled into Flying J's gas pump offering to fill her tank. She said no and sped off to one of the next of two "older men" she had planned to meet that day in various Ohio cities. Clearly I was a waste of her time.

26. As the trial record shows (transcript not available on days 5-8.), M.E. contacted me later to say that she was successful with her two new "sugardaddys" and that one had given her $50 and the other $100 in "gifts." I did not ask what she had to do in return.

27. The transcripts show M.E. again said "they love the way I smell"—referring not to her perfume, but rather her unwashed vagina.

28. I'm sure that M.E. had mistaken our meeting on OKCupid.com with sugardaddy.com which I had not been a member. At trial she said she had been pretending to be 18 years old since she was 16.

29. While pouring through discovery on one of the lawyers or investigator's laptops or discovery file, I encountered an outbox, recycled, or deleted folder of M.E.'s google mail. I saw 21 emails sent to 21 "older men" that M.E. had sent. These are the source for whatever sexually explicit photos exist of M.E. She had produced pornographic photos to send to them.

30. As the forensics bear out, M.E. did not "send" sexually explicit" images of herself to me. None of the emails in her out/sent mail were "sent" to me. Neither did I "receive" any "sexually explicit" picture of M.E. When she stated she "sent" such images to me, she lied.

31. Because those photos were a part of M.E.'s google mail, they were installed onto my iMac without me having "knowing possession." The government knows this truth but the court had not heard it.

A-7

32. I PLAYED NO ROLE IN PRODUCING ANY SEXUALLY EXPLICIT PHOTO OF M.E. I SUSPECT SOMEONE ASSISTED HER, BUT WITHOUT MY KNOWLEDGE OR AWARENESS. I NEVER MET ANY OF HER BOYFRIEND/CLIENTS.

33. M.E.'s TESTIMONY AT TRIAL CONCERNING THESE KEY FACTS — WAS FALSE. THE NATURE OF HER RELATIONSHIP AND EXPECTATIONS WITH ME WERE MISREPRESENTED. WHAT THE JURY SAW AND HEARD BORE LITTLE RESEMBLANCE TO THE M.E. I KNEW.

34. HER LIE ABOUT HER AGE ON PLENTY-OF-FISH, OK CUPID AND SUGARDADDY_COM WERE JUST ONE PART OF M.E.'s SCHEME TO EXCHANGE SEXUAL FAVORS AND SEXUALLY EXPLICIT PHOTOGRAPHS OF HERSELF TO CONSIDERABLY OLDER MEN IN EXCHANGE FOR ONE THING: MONEY.

35. THE SINGLE 'SEMI-NUDE OBLIGATORY PHOTO I DID RECEIVE FROM M.E. DURING THE FIRST WEEK OF MEETING ONLINE, WAS A "TORSO PIC," WHICH M.E. HAD TESTIFIED TO HAVING DOWNLOADED FROM THE INTERNET OF A FULLY ADULT WOMAN... USED AS A LURE.

36. IT IS FITTING THAT AFTER "FLUNKING" AND "CRASHING HER CAR"... AFTER HER "HOUSE BURNED DOWN" AND SHE "TRIED COMMITTING SUICIDE"... THAT SHE "ENDED UP "IN A COMA" — AND ALL OF THIS IN ABOUT 100 DAYS. I DO NOT KNOW WHETHER OR NOT M.E. WAS CHARGED OR WHETHER SHE RECEIVED IMMUNITY (OR MONEY) IN EXCHANGE FOR HER TESTIMONY AGAINST ME. I DO SUSPECT AS MUCH.

I CERTIFY THAT THE FOREGOING IS TRUE AND CORRECT UNDER PENALTY OF PERJURY.

6-21-21

APPENDIX B

§2422(b), §2251(a), and §2256 (2),(3) and (8), continue to
perplex counsel - else electing to ignore what is obvious.
Armed with all of the Appellant's arguments, counsel
remained mostly unfamiliar with them, scrambling to search
case law over the phone. Such was a lesson in futility,
since the time for research had long since passed. Counsel
was merely placating the Appellant, while making no
meaningful attempt to raise any of these additional issues,
nor in providing any legal, logical or strategic reason for
the omissions.

"[A] defendant who shows that a conflict of interest
actually affected the adequacy of his representation need
not demonstrate prejudice in order to obtain relief."
Cuyler v Sullivan, 446 U.S. 335, 342-345, 100 S. Ct. 1708
(1980).

B.  **Whether Counsel's Actions Were Adverse**

1.  **Counsel's disregard for the element of specific intent**

Quizzing counsel during the February 10th phone call, the
Appellant learned that counsel had no reason for not
raising a claim that the government failed to prove the
elements of the offense. Regardless that counsel failed
to object at trial, appellate counsel failed to raise the
plain-error claim that the government defaulted on any
offering of proof on the "specific intent" element (the
mens rea) required by §2251(a). Neither did counsel
claim the clear error of the District Court's failure to

APPENDIX B

B-2

instruct the jury on specific intent in Count Two, and as it applies as the chargeable offense of Count One. The Appellant was assured that such issues would be included, but raising such a claim would require appellate counsel to cast trial counsel in a negative light for failing to object. Still, on a plain-error standard, the government's failure to prove an essential element beyond a reasonable doubt meets the four requirement test in Olano.

"As the text indicates, §2251(a) contains a specific intent element: the government was required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit conduct." United States v Palomino-Coronado, 173, F.3d 122 (3rd Cir., 1999). (reversed - finding that sexually explicit photo taken of the minor was for a purpose other than producing child pornography).

2. <u>Counsel's admitted sympathy to the government's positions destroyed the Appellant's right to adversarial testing</u>

Ms. Donner is the primary writer of briefs at Gainor and Donner. The irreconcilable differences cited in the April 27, 2018 letter to this Court includes an ongoing disagreement as to the violative bar of the statutes of conviction. In conversations with the undersigned, Ms. Donner has expressed her sympathies to the government's position: that "sexting", "grooming", and "sexualized conversations", involving persons under 18 years of age <u>should be</u> prohibited by federal law.

B-3

Sympathy with the government's position - regardless of the moral position at question - runs contrary to the best interests of the Appellant, and sets up adversity between the accused and his counsel, while removing the adversarial testing required in criminal justice.

Likewise, Ms. Donner has sypathized with the value the government has placed on the concept of grooming, despite being aware of the definition of "grooming": "to prepare a child for sexual activity." United States v Howard, 766 F.3d 425 (5th Cir. 2014) (holding that "other acts" are necessarily required for grooming to be a substantial step). While many pages of the Reply Brief were focused on this subject as improperly admitted evidence, counsel refused to claim the connection to "mere preparation" in arguments.

Ms. Donner has also stated to the undersigned that, "intent is enough to sustain a conviction." Again, both statutes require a specific intent and specify the requisite actions taken or attempted. 18 U.S.C.§2422(b); §2251(a).

"[n]either mere preparation nor an intent to commit a crime is sufficient to sustain an attempt conviction..." United States v. Vigil, 506 F.Supp. 2d 544 (District N.M. 2007); "The mere intent to violate a federal criminal statute is not punishable as an attempt unless it is also accompanied by significant conduct." United States v Resendiz-Ponce, 549 U.S. 102, 127 S. Ct. 782, 166 L.Ed. 591 (2007). "There must be an overt act pointed

-13-

B-4

directly to the commission of the crime charged." United States v Monholland, 607 F.2d 1311,1320 (10th Cir. 1979).

While Mr. Gainor has expressed his alliance with Appellant's position, and indeed the statutory law and cases supporting such position, he is burdened by a conflict.  One-half of his law firm holds a different opinion - the half that writes these briefs.  "[A]n attorney who is burdened by a conflict between his client's interests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendant's, because the interests of the state and the defendant are necessarily in opposition.  As the Supreme Court has asserted: 'The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. . . If the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.'"  Osborn v Shillinger, 861 F.2d 612 (10th Cir. 1988) (quoting United States v Cronic, 466 U.S. 648, 655, 80 L. Ed. 2d, 657, 104 S. Ct. 2039 (1984).

3.  **Counsel's disregard for prosecutorial misconduct agreed to be raised in the opening brief**

On, or about, October 10, 2017, during a phone conversation, Mr. Gainor agreed to include "prosecutorial misconduct"

-14-

APPENDIX C

Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e);

(3) Attempted Coercion and Enticement in violation of 18 U.S.C. § 2422(b); and (4)

Attempted Production of Child Pornography in violation of 18 U.S.C. § 2251(a)and (e).

*See* Indictment [ECF #1].

The defendant seeks to admit specific instances of Minor #1's sexual behavior

pursuant to F.R.E. 412(b)(1)(C).

## II.    BACKGROUND

Minor #1, the named victim in counts one and two of the Indictment, first came

into contact with the defendant when she was 14 years of age.  The defendant was in

his late fifties at the time, although he claimed to be 39 years of age.  Between

September 2013 and December 2013, they used the Internet and phone lines to

communicate in various ways:  text messages, phone calls, a social networking website

called Kik Messenger, and email, among others.  Minor #1, during the course of their

communications, sent sexually suggestive images of herself to the defendant.  At the

defendant's request, she also sent self-produced images that were sexually explicit to

the defendant.  The defendant sent a picture of his penis to Minor #1.  Text logs, chat

logs, emails, and images of a sexual nature that were sent by the minor to the

defendant and the defendant to the minor were recovered from multiple sources,

including Minor #1's cell phone and the defendant's cell phone.

In addition to the above-detailed evidence, there was other sexually explicit on

Minor #1's phone.  Specifically, there were approximately 56 child pornographic images

depicting at least 3 separate children, including Minor #1.  These photos include images

of the minors having sexual intercourse and lascivious exhibition of male and female

## 18 U.S.C. § 2251(a) & (e)

### § 2251. Sexual exploitation of children

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

. . . .

(e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be fined under this title and imprisoned for not less than 25 years

**APPENDIX D**

1.

nor more than 50 years, but if such person has 2 or more prior convictions under this chapter, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to the sexual exploitation of children, such person shall be fined under this title and imprisoned not less than 35 years nor more than life. Any organization that violates, or attempts or conspires to violate, this section shall be fined under this title. Whoever, in the course of an offense under this section, engages in conduct that results in the death of a person, shall be punished by death or imprisoned for not less than 30 years or for life.

2.

## 18 U.S.C.

§ 2256.        Definitions for chapter

For the purposes of this chapter [18 USCS §§ 2251 et seq.], the term--
  (1) "minor" means any person under the age of eighteen years;
  (2) (A) Except as provided in subparagraph (B), "sexually explicit conduct" means actual or simulated--
      (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
      (ii) bestiality;
      (iii) masturbation;
      (iv) sadistic or masochistic abuse; or
      (v) lascivious exhibition of the  anus, genitals, or pubic area of any person;
  (B) For purposes of subsection 8(B) of this section, "sexually explicit conduct" means--
      (i) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;
      (ii) graphic or lascivious simulated;
          (I) bestiality;
          (II) masturbation; or
          (III) sadistic or masochistic abuse; or
      (iii) graphic or simulated lascivious exhibition of the  anus, genitals, or pubic area of any person;
  (3) "producing" means producing, directing, manufacturing, issuing, publishing, or advertising;
  (4) "organization" means a person other than an individual;
  (5) "visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format;
  (6) "computer" has the meaning given that term in section 1030 of this title [18 USCS § 1030];
  (7) "custody or control" includes temporary supervision over or responsibility for a minor whether legally or illegally obtained;
  (8) "child pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--
      (A) the production of such visual depiction involves the use of a minor engaging in

3.

sexually explicit conduct;
(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

4.

# 18 U.S.C. § 2422(b)

## § 2422. Coercion and enticement

(b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

5.

<u>18 U.S.C.</u>

§ <u>2427</u>.        Inclusion of offenses relating to child pornography in definition of sexual activity for which any person can be charged with a criminal offense

In this chapter [18 USCS §§ 2421 et seq.], the term "sexual activity for which any person can be charged with a criminal offense" <u>includes the production of child pornography, as defined in section 2256(8)</u>.

   (Added Oct 30, 1998, P. L. 105-314, Title I, § 105(a), 112 Stat. 2977 .)

6.

<u>47 U.S.C.</u>
§ <u>223</u>. Obscene or harassing telephone calls in the District of Columbia or in interstate or foreign communications

(a) **Prohibited acts generally.**   Whoever--
   (1) in interstate or foreign communications--
      (A) by means of a telecommunications device knowingly--
         (i) makes, creates, or solicits, and
         (ii) initiates the transmission of,
any comment, request, suggestion, proposal, image, or other communication which is obscene or child pornography, with intent to abuse, threaten, or harass another person;
      (B) by means of a telecommunications device knowingly--
         (i) makes, creates, or solicits, and
         (ii) initiates the transmission of,
any comment, request, suggestion, proposal, image, or other communication which is obscene or child pornography, knowing that the recipient of the communication is under 18 years of age, regardless of whether the maker of such communication placed the call or initiated the communication;
      (C) makes a telephone call or utilizes a telecommunications device, whether or not conversation or communication ensues, without disclosing his identity and with intent to abuse, threaten, or harass any specific person;
      (D) makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or
      (E) makes repeated telephone calls or repeatedly initiates communication with a telecommunications device, during which conversation or communication ensues, solely to harass any specific person; or
   (2) knowingly permits any telecommunications facility under his control to be used for any activity prohibited by paragraph (1) with the intent that it be used for such activity,
shall be fined under title 18, United States Code, or imprisoned not more than two years, or both.

**7.**

47 U.S.C. §223

(d) **Sending or displaying offensive material to persons under 18.**   Whoever--

   (1) in interstate or foreign communications knowingly--

      (A) uses an interactive computer service to send to a specific person or persons under 18 years of age, or

      (B) uses any interactive computer service to display in a manner available to a person under 18 years of age,

any comment, request, suggestion, proposal, image, or other communication that is obscene or child pornography, regardless of whether the user of such service placed the call or initiated the communication; or

   (2) knowingly permits any telecommunications facility under such person's control to be used for an activity prohibited by paragraph (1) with the intent that it be used for such activity,

shall be fined under title 18, United States Code, or imprisoned not more than two years, or both.

8.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.   14-cr-00207-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. RANDE BRIAN ISABELLA

      Defendant.

---

## INDICTMENT

Count One: Coercion and Enticement (18 U.S.C. § 2422(b))
Count Two: Production of Child Pornography (18 U.S.C. § 2251(a) and (e))
Count Three: Attempted Coercion and Enticement (18 U.S.C. § 2422(b))
Count Four: Attempted Production of Child Pornography (18 U.S.C. § 2251(a) and (e))
Forfeiture Allegation

---

The Grand Jury charges that:

## COUNT ONE

From on or about September 1, 2013, through on or about February 14, 2014, in the State and District of Colorado and elsewhere, the defendant, **RANDE BRIAN ISABELLA,** using the mail and any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice and coerce an individual who has not attained the age of 18 years, to wit: "Minor #1," a minor child, to engage in sexual activity for which any person can be charged with a criminal offense, and attempted to do so.

All in violation of Title 18, United States Code, Section 2422(b).

## APPENDIX E
1

## COUNT TWO

From on or about September 1, 2013, through on or about February 14, 2014, in the State and District of Colorado and elsewhere, the defendant, **RANDE BRIAN ISABELLA**, did employ, use, persuade, induce, entice, and coerce a person under the age of 18 years, to wit: "Minor #1," a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction will be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and which visual depiction was produced and transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and where such visual depiction has actually been transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and attempted to do so.

All in violation of Title 18, United States Code, Section 2251(a) and (e).

## COUNT THREE

From on or about December 11, 2013, through on or about February 14, 2014, in the State and District of Colorado and elsewhere, the defendant, **RANDE BRIAN ISABELLA**, using the mail and any facility and means of interstate and foreign commerce, did knowingly attempt to persuade, induce, entice and coerce an individual who has not attained the age of 18 years, to wit: a law enforcement agent working in an undercover capacity as a minor child, to engage in sexual activity for which a person can be charged with a criminal offense.

All in violation of Title 18, United States Code, Section 2422(b).

## COUNT FOUR

From on or about December 11, 2013, through on or about February 14, 2014, in the State and District of Colorado and elsewhere, the defendant, **RANDE BRIAN ISABELLA**, did attempt to employ, use, persuade, induce, entice, and coerce a person under the age of 18 years, to wit: a law enforcement agent working in an undercover capacity as a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction will be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and which visual depiction was produced and transmitted using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

All in violation of Title 18, United States Code, Section 2251(a) and (e).

## FORFEITURE ALLEGATION

1. The allegations contained in Counts One through Four of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 2428 and 2253, respectively.

2. Upon conviction of any of the violations alleged in Counts One and Three of this Indictment involving violations of Title 18, United States Code, Section 2422(b), defendant **RANDE BRIAN ISABELLA** shall forfeit to the United States, pursuant to

Title 18, United States Code, Section 2428, any and all of the defendant's right, title and

interest in:

    a)    any property, real or personal, used or intended to be used to commit or to facilitate the commission of such violation; and

    b)    any property, real or personal, constituting or derived from any proceeds that such person obtained, directly or indirectly, as a result of the violation.

3.    Upon conviction of any of the violations alleged in Counts Two and Four of this

Indictment involving violations of Title 18, United States Code, Section 2252A,

defendant **RANDE BRIAN ISABELLA** shall forfeit to the United States, pursuant to

Title 18, United States Code, Section 2253, any and all of the defendant's right, title and

interest in:

    a.    any visual depiction described in section 2251, 2251A, or 2252, 2252A, 2252B, or 2260 of Title 18, or any book, magazine, periodical, film or videotape, or other matter, which contains any such visual depiction, which was produced, transported, mailed, shipped, or received;

    b.    any property, real or personal, constituting or traceable to gross profits or other proceeds obtained from such offense; and

    c.    any property, real or personal, used or intended to be used to commit or to promote the commission of such offense or any property traceable to such property.

4.    The property subject to forfeiture, pursuant to Title 18 U.S.C. Sections 2428 and 2253,

includes, but is not limited to, the following items: (1) iMac computer with serial number

DCPGWAGWDHJP; (2) iPhone with serial number DNPGV4CDDTC1; and (3) black

4GB thumb drive. Upon conviction of any of the violations alleged in Count Two of this

Indictment involving violations of Title 18, United States Code, Section 2251, if any of

4

the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 18, United States Code, Section 2253(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

<u>Ink signature on file in the Clerk's Office</u>
FOREPERSON

JOHN F. WALSH
United States Attorney

By: <u>s/ Alecia Riewerts Wolak</u>
ALECIA RIEWERTS WOLAK
Assistant U.S. Attorney
U.S. Attorney's Office
1225 17th St., Ste. 700
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0406
E-mail: Alecia.Riewerts.Wolak@usdoj.gov
Attorney for Government

5



## JURY INSTRUCTION NO. 13
### Indictment

The jury is advised that the indictment, reproduced below, is not evidence. It is a legal document that reflects the formal charges against Mr. Isabella. It is the Government's burden to prove each of these charges beyond a reasonable doubt. Remember that the indictment is not evidence of guilt.

The indictment reads in relevant part, as follows:

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. RANDE BRIAN ISABELLA

    Defendant.

---

### INDICTMENT

Count One: Coercion and Enticement (18 U.S.C. § 2422(b))
Count Two: Attempted Production of Child Pornography (18 U.S.C. § 2251(a) and (e))
Count Three: Attempted Coercion and Enticement (18 U.S.C. § 2422(b))
Count Four: Attempted Production of Child Pornography (18 U.S.C. § 2251(a) and (e))
Forfeiture Allegation

---

The Grand Jury charges that:

### COUNT ONE

From on or about September 1, 2013, through on or about February 14, 2014, in the State and District of Colorado and elsewhere, the defendant, **RANDE BRIAN ISABELLA**, using the mail and any facility and means of interstate and foreign commerce, did knowingly persuade, induce, entice and coerce an individual who has

6

not attained the age of 18 years, to wit: "SF," a minor child, to engage in sexual activity for which any person can be charged with a criminal offense, and attempted to do so.

All in violation of Title 18, United States Code, Section 2422(b).

## COUNT TWO

From on or about September 1, 2013, through on or about February 14, 2014, in the State and District of Colorado and elsewhere, the defendant, **RANDE BRIAN ISABELLA**, did attempt to employ, use, persuade, induce, entice, and coerce a person under the age of 18 years, to wit: "SF," a minor child, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction will be transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed, and which visual depiction was produced and transmitted using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, and where such visual depiction has actually been transported and transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and mailed.

All in violation of Title 18, United States Code, Section 2251(a) and (e).

## COUNT THREE

From on or about December 11, 2013, through on or about February 14, 2014, in the State and District of Colorado and elsewhere, the defendant, **RANDE BRIAN ISABELLA**, using the mail and any facility and means of interstate and foreign commerce, did knowingly attempt to persuade, induce, entice and coerce an individual

7.

## THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Case No. 14-cr-00207-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

RANDE BRIAN ISABELLA,

        Defendant.

---

### VERDICT FORM

---

### COUNT ONE – COERCION AND ENTICEMENT

1A.   We, the jury, upon our oaths, unanimously find the defendant, RANDE BRIAN ISABELLA, in Count One of the Indictment, charging the defendant with Coercion and Enticement:

_____ Not Guilty        ✓ Guilty

    If your answer to Question 1A is Not Guilty, skip Question 1B, and proceed to Question 2A.

    If your answer to Question 1A is Guilty, proceed to answer Question 1B.

1B.   Identify the sexual activity or activities described in Element Three that unanimously formed the basis of your finding (check one or both):

    ✓ Production of Child Pornography under federal law

    _____ Sexual intercourse or oral sex with a minor if the minor is less than fifteen years of age and the person is at least four years older than the minor and is not the spouse of the minor under Colorado state law

    If you identified **both** sexual activities in Question 1B as the basis of your finding, then skip questions 2A and 2B and proceed to answer questions 3, 4A, 4B, and 5.

If you identified only one of the sexual activities in Question 1B as the basis of your finding, then proceed to answer Question 2A.

## COUNT ONE – ATTEMPTED COERCION AND ENTICEMENT

2A.   We, the jury, upon our oaths, unanimously find the defendant, RANDE BRIAN ISABELLA, in Count One of the Indictment, charging the defendant with Attempted Coercion and Enticement:

\_\_\_\_\_ Not Guilty          ✓ Guilty

If your answer to Question 2A is Not Guilty, skip Question 2B, and proceed to Questions 3, 4A, 4B, and 5.

If your answer to Question 2A is Guilty, proceed to answer Questions 2B, 3, 4A, 4B, and 5.

2B.   Identify the sexual activity or activities described in Element Three that unanimously formed the basis of your finding (check one or both, but if you found defendant guilty in question 1A, you cannot check the same sexual activity that you checked in response to question 1B):

✓ Production of Child Pornography under federal law

\_\_\_\_\_ Sexual intercourse or oral sex with a minor if the minor is less than fifteen years of age and the person is at least four years older than the minor and is not the spouse of the minor under Colorado state law

## COUNT TWO – ATTEMPTED PRODUCTION OF CHILD PORNOGRAPHY

3.   We, the jury, upon our oaths, unanimously find the defendant, RANDE BRIAN ISABELLA, in Count Two of the Indictment, charging the defendant with Attempted Production of Child Pornography:

\_\_\_\_\_ Not Guilty          ✓ Guilty

## COUNT THREE – ATTEMPTED COERCION AND ENTICEMENT

4A.   We, the jury, upon our oaths, unanimously find the defendant, RANDE BRIAN ISABELLA, in Count Three of the Indictment, charging the defendant with Attempted Coercion and Enticement:

✓ Not Guilty          \_\_\_\_\_ Guilty



### INSTRUCTION NO. 16
### Elements of Count One—Coercion and Enticement

Mr. Isabella is charged in Count One with a violation of Title 18, United States Code, Section 2422(b), Coercion and Enticement.

To find Mr. Isabella guilty of Count One—Coercion and Enticement, you must be convinced that the United States has proved each of the following elements beyond a reasonable doubt:

**First:** At the time alleged, SF was under the age of 18 years old;

**Second:** Mr. Isabella believed that SF was less than 18 years of age;

**Third:** Mr. Isabella knowingly persuaded, induced, enticed, or coerced SF to engage in any sexual activity for which Mr. Isabella could be charged with a criminal offense.

With respect to this element, you are instructed, as a matter of law, that each of the following are sexual activities for which a person can be charged with a criminal offense:

- Production of child pornography under federal law, as will be further described to you.
- Sexual intercourse or oral sex with a minor if the minor is less than fifteen years of age and the person is at least four years older than the minor and is not the spouse of the minor under Colorado state law.

**Fourth:** Mr. Isabella used the Internet, the mail, or any facility or means of interstate or foreign commerce to persuade, induce, entice, or coerce SF to do so.

Element Three lists two different sexual activities for which a person can be charged with a criminal offense; production of child pornography and sexual intercourse or oral sex with a minor. To find Mr. Isabella guilty on this count, you must unanimously agree on the sexual activity or activities that form the basis of Element Three.

3.



## INSTRUCTION NO. 17
## Elements of Count One—Attempted Coercion and Enticement

Mr. Isabella is also charged in Count One with a violation of Title 18, United States Code, Section 2422(b), Attempted Coercion and Enticement.

For you to find Mr. Isabella guilty of Count One—Attempted Coercion and Enticement, the Government must prove each of the following elements beyond a reasonable doubt:

**First:** At the time alleged, SF was under the age of 18 years old;

**Second:** Mr. Isabella believed that SF was less than 18 years of age;

**Third:** Mr. Isabella knowingly attempted to persuade, induce, entice, or coerce SF to engage in any sexual activity for which Mr. Isabella could be charged with a criminal offense.

With respect to this element, you are instructed, as a matter of law, that each of the following are sexual activities for which a person can be charged with a criminal offense:

- Production of child pornography under federal law, as will be further described to you.
- Sexual intercourse or oral sex with a minor if the minor is less than fifteen years of age and the person is at least four years older than the minor and is not the spouse of the minor under Colorado state law.

**Fourth:** Mr. Isabella took some action that was a substantial step toward persuading, inducing, enticing, or coercing SF to engage in the production of child pornography and/or to engage in sexual intercourse or oral sex with him;

**Fifth:** Mr. Isabella used the Internet, the mail, or any facility or means of interstate or foreign commerce to do so.

Mr. Isabella may be found guilty of attempting to commit the crime of coercion or enticement, even though he did not do all of the acts necessary in order to commit that crime. However, Mr. Isabella may not be found guilty of attempting to commit the crime of coercion and enticement merely by thinking about it, or even by making some plans or some preparation for the commission of that crime.

A "substantial step" is something beyond mere preparation. A substantial step is an act which, in the ordinary and likely course of events, would lead to the persuasion, inducement, enticement, or coercion of SF to engage in the production of child pornography and/or to engage in sexual intercourse or oral sex with Mr. Isabella. The step must be a strong indication of Mr. Isabella's criminal intent, and must unequivocally

4.

mark Mr. Isabella's act as criminal. It should demonstrate commitment to persuade, induce, entice, or coerce SF to engage in the production of child pornography and/or to engage in sexual intercourse or oral sex with him.

It is not necessary for the Government to prove that SF was actually persuaded, induced, enticed, or coerced into engaging in the described sexual activity, as long as it proves Mr. Isabella intended to persuade, induce, entice, or coerce SF to engage in some unlawful sexual activity.

Element Three lists two different sexual activities for which a person can be charged with a criminal offense; production of child pornography and sexual intercourse or oral sex with a minor. To find Mr. Isabella guilty on this count, you must unanimously agree on the sexual activity or activities that form the basis of Element Three.

5.

## INSTRUCTION NO. 17
### Elements of Count One—Coercion and Enticement

Mr. Isabella is charged in Count One with a violation of Title 18, United States Code, Section 2422(b), Coercion and Enticement.

To find Mr. Isabella guilty of Count One—Coercion and Enticement, you must be convinced that the United States has proved each of the following elements beyond a reasonable doubt:

**First:** At the time alleged, SF was under the age of 18 years old;

**Second:** Mr. Isabella believed that SF was less than 18 years of age;

**Third:** Mr. Isabella knowingly persuaded, induced, enticed, or coerced SF to engage in any sexual activity for which Mr. Isabella could be charged with a criminal offense.

With respect to this element, you are instructed, as a matter of law, that each of the following are sexual activities for which a person can be charged with a criminal offense:

- Production of child pornography under federal law, as will be further described to you.
- Sexual intercourse or oral sex with a minor if the minor is less than fifteen years of age and the person is at least four years older than the minor and is not the spouse of the minor under Colorado state law.

**Fourth:** Mr. Isabella used the Internet, the mail, or any facility or means of interstate or foreign commerce to persuade, induce, entice, or coerce SF to do so.

Element Three lists two different sexual activities for which a person can be charged with a criminal offense: production of child pornography and sexual intercourse or oral sex with a minor. To find Mr. Isabella guilty on this count, you must unanimously agree on the sexual activity or activities that form the basis of Element Three.

Source: *See U.S. v. Robinzine*, 80 F.3d 246, 253 n.1 (7th Cir. 1996). The Government argues that the jury need not be unanimous on which predicate sexual activity satisfies Element 3 of Counts One and Three. That is contrary to the law. Although the jury need not be unanimous on the *means* for a particular count, the predicate sexual activity contemplated by §2422 is an element of the offense, not a means. *See Powell*, 226 F.3d at 1196 (discussing the distinction between means and elements). This Court agrees with the assessment of the Seventh Circuit in *Robinzine*, where that Court considered identical language in § 2423(a), and concluded that the trial court did not err when it charged the jury that they could convict on a theory of either or both of two predicate criminal sexual activities, so long as they were unanimous on at least one of the two theories.



## INSTRUCTION NO. 18
### Elements of Count Two—Attempted Production of Child Pornography

Mr. Isabella is charged in Count Two with a violation of Title 18, United States Code, Section 2251(a) and (e), Attempted Production of Child Pornography.

For you to find Mr. Isabella guilty of Count Two—Attempted Production of Child Pornography, the Government must prove each of the following elements beyond a reasonable doubt:

**First:** At the time alleged, Mr. Isabella believed that SF was under the age of 18 years old;

**Second:** Mr. Isabella attempted to employ, use, persuade, induce, entice, or coerce SF to engage in sexually explicit conduct, as defined in Instruction 25;

**Third:** Mr. Isabella acted with the purpose of producing a visual depiction of such conduct;

**Fourth:** Mr. Isabella took some action that was a substantial step toward bringing about the employment, use, persuasion, inducement, enticement, or coercion of SF to engage in sexually explicit conduct; and

**Fifth:** Mr. Isabella knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mail or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer.

Mr. Isabella may be found guilty of attempting to commit production of child pornography, even though he did not do all of the acts necessary in order to commit the crime. However, Mr. Isabella may not be found guilty of attempting to commit production of child pornography merely by thinking about it, or even by making some plans or some preparation for the production of child pornography.

A "substantial step" is something beyond mere preparation. A substantial step is an act which, in the ordinary and likely course of events, would lead to the commission of the production of child pornography. The step must be a strong indication of Mr. Isabella's criminal intent, and must unequivocally mark Mr. Isabella's act as criminal. It should demonstrate commitment to produce child pornography.

7.

**JURY INSTRUCTION NO. 30**
**Interstate and Foreign Commerce—Defined 18 U.S.C. § 10**

Interstate or foreign commerce means commerce or travel between one state and another state, or any part of the United States and another country. Commerce includes travel, trade, transportation and communication.

If you decide that there was any effect at all on interstate or foreign commerce, then that is enough to satisfy this element. All that is necessary is that the natural and probable consequence of the acts Mr. Isabella took would be to affect interstate or foreign commerce.

8.

United States Court of Appeals

for the Tenth Circuit

Case: **17-1197**   United States v Isabella, 918 F.3d 830 (10th Cir. 2019)

ORAL ARGUMENTS

Before HARTZ, MATHESON & EID

November 27, 2019

For Appellant, Rande Isabella: Ron Gainor, Attorney at Law

For Appellee, United States: J. Bishop Grewell, A.U.S.A.

Notice: This unofficial transcript was derived from the published audio recordings at at www.pacer.gov at file: 17-1197.mp3 - (Rande Isabella Appeal).  Every effort was made to present as accurate a transcript as was practicable, as pro se Appellant, utilizing various third-parties to transcribe and edit the oral arguments.  The undersigned certifies that the transcript is a fair and accurate representation, according to the resources available and defers all questions or issues with the content to the audio recording listed above.

Start time at 00:00 [minutes:seconds]
Abbreviations:
JDG = Unidentified Panel Judge
USA = U.S. Attorney Grewell
R.G. = Attorney Ron Gainor

**APPENDIX H**

Oral Arguments: November 27, 2018

00:00   Jdg   U.S. versus Isabella, 17-1197

R.G.   If it please the Court, my name is Ron Gainor.  I represent Rande Isabella.
I was also the lead trial lawyer on the case.  Your honors, despite the
fact that there was a split verdict in this case - where there was two
counts of acquittals and two counts of convictions, it is the contention of
the Appellant that the Government, in gaining its convictions in counts one
and two, argued a case that lowered the bar dangerously; and dramatically
shifted from the real proof that was presented to the grand jury initially.
And we know from the briefs... and we know. from the testimony that,
initially, there was a case of coercion against S.F. and the alleged
production of multiple images of child pornography.  That did not turn out
to be the case, because S.F., in trial, said "I was not coerced...I was not
persuade...I did what I did of my own free will."

01:07   There was one image that was presented as child pornography and it was not
child pornography under the Dost criteria.  What the government was seeking to
do and what they were able to do with this jury and the split verdict was to
ask for a conviction based on "asking" of images.  And, as the court notes
from reading these briefs, there is a difference between "asking" and
"persuasion" and "enticement."  The Government is seeking, through your
affirmation in this case, to criminalize sexually explicit talk and the
"asking" of images...and saying that, in addition, that they were able to do
it - ask for your affirmation - based on the mischaracterization of a single
image, which we call the "torso picture."  And by the use of highly
inflammatory and dissimilar 404(b) information, namely the testimony of M.E.
that was used to sway and inflame the jury.

02:20   So this analysis today is not only [about] insufficient evidence but how that
void was filled by the use of evidence that should have been excluded and was
not.

02:34   Jdg   Let me ask you: isn't "enticing," "asking" in a persuasive way?  What do

2.

you think is "enticing?"

02:41  R.G.   According to the definition that was included in the Reply Brief, "enticing" goes way beyond "asking" and courts throughout the country have said that there is a difference between "asking"...

Jdg    What more is needed to make it enticing?

02:55  R.G.   To make it "enticing," you definitely have to go beyond "asking." You have to "sweeten the pot," so to speak. You have to overcome, in certain respects, free will. And I think "enticing" takes it out of the realm of denial of a particular individual...and they're so loaded up with incentives that they are "enticed" to do so. I agree there's a lot of ways that this statute... (2421...excuse me...2422) [2422(b)] talks about t6he ways a statute can be criminalized but "asking" is not part of it. What we have, your honor, is an implication.

If we go too far in this case by lowering the bar of criminalizing sexualized conversations, which are purely under the purview and protection of the first amendment... so, we're implicating, not only the first amendment, broadly, but we're also having enormous impact on what occurs over the Internet.

Remember, what Rande Isabella was in terms of the proof ...especially with regard to the testimony of M.E...

04:05  Jdg    Did you make a first amendment argument in District Court?

R.G.   We asked for a first amendment instruction which was partially given by Judge Arguello.

04:15  Jdg    But you aren't challenging that instruction on appeal?

R.G.   No, we're not trying to...

Jdg    I'm trying to see where there's any First Amendment issue in this appeal

3.

that you've actually preserved.

04:26   R.G.   We haven't raised a First Amendment argument.  We're just thinking that going beyond the fact... and the current line in terms of all of the authority ...by criminalizing "asking" you are going to go down the road, in effect, for the first time.

04:41   Jdg   I understand your point.

R.G.   Beyond the First Amendment, we know what we have to deal with.  And we have a little bit of an issue to overcome in terms of sufficiency.  You know, we have to concede that up front.  Because, what happens when the court and the jury come up with a split verdict?  We can argue that maybe they were parsing through and making an intellectual determination of what is "right" and what was "wrong" in this case.  But take a look at what is "necessary" for the completed act of 2422(b).  You need to have some type of authority that's going to show a completed act.  Now the government argues in dicta that that doesn't have to happen.  But look at 2422.  What are the cases that the Government relies on?  Faust; Lee; Berg; all the other [attempt] cases.  What do we have in this case?

05:43   Jdg   Could   I just ask you a question?  I understand that on count one that there were some of these alternative convictions for a completed violation and attempted violation.

R.G.   Yes, Your Honor.

Jdg.   If the evidence is sufficient for the attempt violation, [does] the sufficiency issue on the completed violation really matter?  And Count One would still be a count [of] conviction, wouldn't it?

06:01   R.G.   Correct, Your Honor.  Because that's the way the statute is written.  It's written, either with a completed act or an attempt, you're violating that statute.  So I would have to agree with Your Honor.  But again, we don't want to look at this case in a vacuum.  The reason why we believe the Government got there was because of the introduction, not only of the M.E.

4.

testimony, but the mischaracterization of the "torso pic." And I just wanted to explain that briefly.

This Court, I'm sure, is very very experienced in terms of determining, or at least setting a record of, what is "child pornography" and what is not "child pornography," using the Dost factors. In this case, the Government alleges that a picture of a female that has been augmented, according to the testimonies of S.F. ...and we can talk about that augmentation: a picture of a female, without a face, from just the neck to the knees, with legs closed, together, not focusing-in on the genitalia, and no view of the genitalia whatsoever, a picture that was opinied by an experienced medical doctor as being someone that could have been definitely over the age of consent, was used and held out in front of the jury as "child pornography;" receding from the original grand jury testimony that there were multiple images.

07:37 And how was this image produced? It was produced by S.F., prior to Mr. Isabella asking for an image. Whether it's a picture of a nude female or whatever it was, it was produced by S.F. prior to Mr. Isabella's request. It was produced under circumstances that she was doing with her boyfriend.

08:02 All of this information was in one way or another brought before the District Court. But we were also not allowed to cross-examine on the production of this photo; which was alleged by the prosecutor to be "child pornography" when it wasn't. Nor were we allowed to question as to its circumstances of production; or at least question the witness with regard to that.

08:24 So when we're looking at the sufficiency issue, we have to look at what was put in there that was inadmissible to begin with. Aside from the 404(b) information, which in our opinion was outlandish because it went way beyond the allegations of what occurred with S.F.; included the allegations of an assualt; included the allegations of travel; but was not charged in this case. And if you look at all the sufficiency cases that were promoted by the prosecutor in this case, for a sufficiency argument of 2422(b), all of those cases were attempt cases. So I appreciate the question of the Court, with regard to how this law could have been violated. But there was insufficiency

5.

all around.

09:13    With regard to any of the methodologies that could have been used to prove a
         2422(b)...

Jdg    Counsel, you've mentioned the M.E. evidence [several] times now and I was
       wondering if you could help me to understand something there.  I take it
       that there was a pre-trial determination as to whether it was coming in or
       not?  Is that so?

09:35  R.G.   I was challenged very very aggressively to keep that out because of the
       inflammatory 403 and the 404(b)...

09:43  Jdg    And the Court said it was coming in?

       R.G.   Yes.

Jdg    And then at trial, I think you mentioned that you were defense counsel on
       site, so you...there's some discussion about the M.E. testimony in your
       opening statement?

10:00  R.G.   Yes, Your Honor.

Jdg    And some questions to Mr. Isabella about it on direct?  I guess I need some
       help [in] understanding why that wouldn't open [the door]... why does that
       keep the issue alive?  If you kind of like let go of that...by making
       reference to...

       R.G.   One of the reasons why I wanted to announced that I was the trial lawyer,
       was to let you know that there was a "boots on the ground" decision.  We
       decided to attack the admission of M.E.'s testimony and did everything we
       could pre-trial to keep it out.  What would be the effect of a trial
       lawyer's strategy if I did not address that up front?  And we knew it was
       going to come in?  And..

10:46  Jdg    I understand you made a tactical decision and I'm just wondering what the

6.

consequences are, in terms of the law.  Have you got a case that (that...) states that you can now, on appeal, continue to challenge [M.E. admission] ...given you raised the issue?

11:03  R.G.   Yes... Yes, Your Honor.  I believe under the circumstances there would be no court that would want to bootstrap a trial lawyer's ability to fight a case when...

Jdg   I'm just looking for a case.

R.G.   Yes, Your Honor.  We do have a case with... We're just making an argument in terms of common sense that, from a trial point of view, once we know it's going to come in - and remember this was going to come in - in the Government's case-in-chief.  It was going to be met...

11:26  Jdg   I just...Counsel, I understand your [tactical]...

R.G.   So...but I don't have a specific case, but...

Jdg   It's an open court decision...

I didn't realize this was an issue.

11:40  Jdg   There was a case in which the defendant wanted to bar cross-examination of the defendant on an issue...this is a case from the 50's or 60's I think ...and I don't remember the name.  The judge said that the defendant can be cross-examined on this issue.  So the defendant didn't testify, and they appealed to the Supreme Court.  And the Supreme Court said, "sorry, to preserve that issue you needed to testify and then challenge that the cross-examination was correct." And so that suggests that the way to fight...(um) ..an adverse decision or a motion in limine is to force the Government to do what it was going to do.  Not open the door to it.

R.G.   Then leave it that way?  And then have any presumption of correctness that would attach to the case by me not opening the door...and then having the effect of it coming out, which is much more serious evidence than what

7.

occurred with S.F. and then blowing us out of the water completely.

12:53  Jdg  But then you can appeal and say it shouldn't have come in and get a reversal on those grounds.

R.G.  We all know that.

Jdg  I'm not sure that this is that close in point, but it sounds like, ordinarily, that that's the way you have to act if you were going to preserve the issue.

R.G.  You know Your Honor...

Jdg  You can't have it both ways. (uh...uh) By mentioning it in the opening, raising it yourself in testimony, and then challenging that it was permitted.

13:30  R.G.  We know it was going to come in one way or another.  The Government was going to put it in.  They shifted it from the case-in-chief to rebuttal.

It was going to come in.  I wasn't the first person to do it, and this is not necessarily the basis of my experiences - 33 years as a trial lawyer - but if I did not deal with it up front, there would have been no trust in that jury.  Plus, we have the other interesting aspect, which is different from that potential Supreme Court case.  There is a sufficiency of evidence issue based on the shifting of [the theory of] offense, from what was given to the Grand Jury, to what was given to the trial court.  This was going to be a big piece of their evidence.  If I did not deal with this explosive 404(b) aggressively, I would have had no chance.  And the higher chance of winning the trial would end up in the appellate court.  Sure, it was a tactical decision.  But it was part of the evidence that was going to be presented.  And we had to deal with it.

Jdg  I don't think you made the absolutely right tactical decision for trial. But in the course of doing that perhaps you forfeited the argument that you're making here.

8.

14:42  R.G.   Respectfully, I would disagree with Your Honor, because...

Jdg   If you can find cases that would be..

R.G.   Well, we'll take a look.  But the fact that our actions pre-trial were so extensive to keep it out, and the fact is, that the Court has the ability and has the obligation for sufficiency of evidence, to look at a de novo [hearing].  Look at the effect of the explosive testimony of M.E. - how far it went compared to the testimony of S.F.  It was a necessary component of trial and the trial lawyer should never be punished for that.  If you can...

Jdg   Notice your time is up.

R.G.   I have 13 seconds.

15:22  Jdg   I know that that's going up.  By the way, if you could find a case that would be helpful.

R.G.   Yes.

Jdg   I've got to ask you because I've been wrestling with your double jeopardy argument...

15:35   If you could explain to me why these two statutes, 2422(b) and 2251(a) have different elements for the purpose of double jeopardy.

R.G.   I think it's important, especially in this analytic, to not elevate substance over form - form over substance in this case.  So 2422[b] has the elements aside from age and aside from intent to either let's say entice or persuade someone to do some prohibited sexual activity.  2251[a] is that that prohibited sexual activity is production of child porn.  The jury found specifically on a special verdict form that the activity in 2422 was the production of child porn.  So it's very clear that the behavior in 2251[a] was the basis for 2422[b].

9.

Jdg   Okay, just a quick follow up then. (um)

16:46   It seems that your argument would rely on the ability of courts facing a multiplicity challenge to consider the evidence in the context of the case at hand as opposed to just comparing the statutes is that correct?

R.G.   That's correct.

17:06   Jdg   All right, and what's the best support for that?

R.G.   Well, there was mentioned in the brief the fact that Blockburger has been modified and that's contained in the papers. (I can find that....) There is a modified approach where the Court can actually look at what occurred. Under those circumstances in that courtroom and surely...

Jdg   Was it modified by another Supreme Court?

R.G.   I don't believe so, your Honor. (but...but..) But we still have the fact that the jury clearly marked on that jury form that the prohibited sexual activity was the production of child porn which is the element of the secondary charge.

17:44   So what are we looking at? We're being told by the jury it's exactly that charge. That's why it is multiplicity.

Jdg   Thank you, Counselor.

R.G.   Thank you.

18:07   USA   May it please the Court on behalf of the United States... I was only going to address the sufficiency in the double jeopardy but since it's been a lot of discussion about M.E. I'll briefly address it today.

18:17   Jdg   Could I just pick up where he left off? That would certainly keep the same subjects on hand. So would an attempt conviction ...cause what I think I

10.

wanted is [to] compare the two attempt convictions with an attempt conviction under 2251(a) and (e).

18:40   Would that always be a violation as well, of 2422(b)?

USA   Could you say that one more time, sorry.

Jdg   Would a violation of 2251(a) always be a violation of [2422(b)], if they're both attempt convictions?

19:02   USA   No, Your Honor.  So I (I,I) think I can best give you an example and I think we'll answer the question... So you could violate 2251[a] by telling a minor that you want them to go in a room and do some sexually explicit conduct...want them to masturbate or something.  That's not convincing them to do any illegal sex act by itself.

19:24   But if you have [a print], you're gonna have a camera on that and they don't know about it, you're violating 2251[a].  Likewise, if you're going to try and convince them to have sex with you and you're an adult you would be violating 2422.  But if you're not intending to do it for a visual depiction, then you wouldn't be violating 2251[a].

19:44   Jdg   All right.  So in the context of this case, though the special verdict form shows that the violation was production of child pornography, both convictions were based on the same evidence.  But aren't they also based on proving the same elements?  In other words, why (why) don't we, in the context of this case, have a multiplicity problem?

20:12   USA   Because, as you were talking about earlier... so Blockburger is really kind of like a categorical approach, which we're familiar with.  DeCarlo, which is the case that counsel is referring to, does kind of take a modified categorical approach [where] you have alternative elements, not alternative means.  Here, the underlying offense is means, they're not elements.  And I think part of the way that we can tell that, is, first of all, the focus.  Congress's focus is on the changing of the child's mental state.

20:44       It's not concerned with which illegal sex act you're
            convincing the child to commit, only that you're trying to
            convince them to commit one.

21:00   If we're going to actually make the underlying offense the elements, which is
        what the Seventh Circuit did do in Mannava, I would... If this Court follows
        Mannava, then we're gonna have a difficult time.  But the Sixth Circuit in
        Hart takes a different approach.  And the Eleventh Circuit in Jockisch takes
        different approaches.  If you're gonna say the underlying offense is somehow
        an element now, the Government's going to have to allege that in the
        indictment.  This is the specific underlying offense, but all those
        alternative elements are not, which is a little weird that we want a jury to
        be unanimous about that.  When the defendant could have any number of sexual
        acts that are in his mind, he doesn't have sexual statutes in his mind.  He's
        not saying I want to get this kid to violate this particular statute, he's
        saying  I want this kid to do this particular act.  And so there could be
        three or four different statutes that it might violate.  W're kind of
        incorporating a specific intent component into the offense at that point which
        doesn't make a lot of sense.  Plus, now we, in our indictment, say Okay, it's
        this one.  And now at trial he's going to say, oh no I didn't intend to
        convince the child to do that illegal sex act, I want them to do this illegal
        sex act.

21:56  Jdg   Well just one follow up and I know you've got a lot of other things you
             want to talk about.  So DeCarlo (there's that...)  Would that case pose a
             double jeopardy problem here?  I know its Sixth Circuit - not binding on us
             - but is that a good case for the Appellant here?

22:18  USA   It doesn't affect things here and again it's because DeCarlo is relying on
             a statute that had alternative elements and was saying you've charged both
             these elements and we're going to sort of see.

22:31       So when you have a turn of elements, you basically have two different crimes
            that happen to be in a separate statute and it's kind of that's why you
            sometimes see challenges on multiplicity grounds if you put them both in one
            count, because basically you're charging them with several different crimes.

                                        12.

22:45   And like with a modified categorical approach, then you can sort of do this
Blockburger legal analysis, not a look at the case below, but a modified look
at the charging document, to see which elements we're talking about.  Because
we're not dealing with elements, because we're dealing with means here.  And
another way you know that this is means is, it just seems unlikely that
Congress, in this one provision, meant to lay out thousands of different
crimes, which is what would be the case.  You'd see all these different state
crimes versus those they meant to lay out one crime with thousands of different
means.  It just doesn't make sense to follow that approach.  So I don't think
DeCarlo is a problem for us, because we don't have... It's not alternative
elements in this particular situation.  It's alternative means.  DeCarlo
doesn't say, if you have alternative means that you go down that route.  If
you go down that route, you're saying this is a divisible statute with all the
consequences that come with that.

23:38   Let me briefly address the M.E. thing.  The Government also made a strategic
decision and took a risk.  We did not mention M.E. in our opening.  We did not
bring in M.E. in our case-in-chief.  After we had rested, if they had simply
decided not to put it in the case, M.E. would have never come in at any point.
So we were, thank you.

23:58  Jdg   What was the motion in limine?

24:00  USA   We got permission to bring in M.E. in our case, but we didn't actually do
so, and so it wouldn't have come in if we, if he had not chosen to put on a
defense.  It only came in in rebuttal.  And at that point: (1) he's opened
the door; (2) it's impeachment evidence; and if you look at the Serrano
decision from this court it says that impeachment is legitimate 404.

24:22   I don't think they've actually raised the 404 argument in their opening brief.
There is a 403 argument in the reply brief.  They say propensity for 404.  But
if you were going to consider that it would be legitimate 404 at that point to
impeach...

24:34  Jdg   Assuming they had opened the door.

13.

USA   But they had opened the door.  Because M.E. never comes in.  Take the opening statements.  Put that aside.  Evidence of M.E. doesn't come in until the defendant testifies.

24:47  Jdg   Yes I understand but how would (they ...how did) the defense know in advance that the Government is not going to use the evidence?

24:57  USA   (By the time they choose to bring it in.)  They know we're not going to because...

Jdg   In your case-in-chief?

USA   In our case-in-chief, and so if they rest it never comes in.  Yes, they had a strategic choice that they had to make as well and they made that strategic choice.

25:09  USA   There were risks for both sides the way they chose to go with the M.E. evidence. But if you want to say, because we get a ruling pretrial that we can't get it in, you're also encouraging us to - anytime we think there could be an appellate issue [or] something - we might as well throw it in. We might as well not be a little bit more hesitant and decide to try to remove an error that could occur.  If you're gonna say that there's no opening the door, you're encouraging us to put in every piece of evidence that we get permission to put in.  And sometimes you might want us to pull back and say well maybe we don't need to use that...we don't need to create an issue.

25:41  USA   Moreover with M.E., besides it also being legitimate 404, the <u>Leonard</u> decision says that when you're talking about whether this is prejudicial you can look at the fact that they acquitted. And the M.E. evidence really more went to the counts that were acquitted here.  The jury chose not to take our theory that he was attempting to convince her to actually have a sex act with him at that hotel.  That's really what this M.E. evidence went to and they acquitted him on that.  And so, his notion that this inflamed the jury I think the acquittal suggests that that was not the case.

26:14  USA   And even if you found it to be that the door was not open and that the

14

[testimony] was somehow erroneous 404 evidence, I think it would have been harmless.  On the sufficiency of the evidence, whenever we're dealing with sufficiency of the evidence and we're dealing with it in the attempt realm we have to keep in mind what the completed offense is that he's trying to attempt.  In this particular case [he] is trying to alter a minor's mental state.  As the Fourth Circuit noted in Engle, when you're dealing with this particular provision that's trying to attempt to alter a mental state, it's not going to be the type of physical evidence you might have when you're trying to do a completed crime of actually having sex with a minor.  And so the evidence is going to be a little bit different.  Specifically, we're looking to see, is there sufficient evidence that Isabella took a substantial step toward trying to convince S.F. to produce pornography of herself.  There is sufficient evidence that Isabella took a substantial step toward trying to convince S.F. to produce pornography of herself. There is sufficient evidence of that.  He first develops this sexualized relationship with her through the numerous chats, which the court has.  He then sends a picture of his penis to her and then he repeatedly asked her to take and send him likewise pictures in return...similar pictures in return.  And right after she sends this so-called torso pic, which to be clear is a picture of her exposed chest and pubic area, that's when he says that (he wants it)... so nice, and that he wants a somewhat naughty picture with her face.  Based on that evidence it's not unreasonable for a jury to conclude that Isabella was attempting to convince S.F. to produce pornography of herself.

27:48   USA   One other quick point.  The defendants talked a lot about "produce" as if the meaning of "produce" is "create."  And that certainly could be the case and it doesn't pose a problem for our attempt even if that's the meaning you choose.  But "produce" can also mean providing to someone else.  And if you look at the jury instructions in this case, volume 1, 584, defines producing.  Two of the words that it uses are "issuing" and "publishing." That's more transferring something to someone.

28:17   USA   It's not the creation of a particular image.  So we're not quite as restricted on what "publishing" means in this case.  I've talked about the double jeopardy issues.  I've talked about the sufficiency and the evidence.  Are there further questions on any of the particular issues that

15.

you'd like me to try to address?

28:42  Jdg   Well I had a question about the testimony elicited from Agent Thomas.  I know there was some dispute regarding a "grooming" question.  [Where] Was the prosecution treating his testimony as expert evidence?  Because in closing argument it seemed like it was.

29:08  USA   In closing I think it got closer to the line.  When it was brought in during trial, it was certainly just brought in as more to get this admission from the defendant that because, (so) the investigators simply (saying) talking about grooming and the defendant says, yeah, I could see how you would see it that way.  And so, as more for this colloquial use of "grooming," that you know you're trying to bring this child along.  At close there was certainly a reference to the fact that he'd said "grooming" but again I don't think it was some magic word.  There wasn't something in the instructions that says if you find "grooming" that is a substantial step you need.  I know there's case law that talks about "grooming," but again I think there's both a colloquial and an expert sense here and I think the way it was brought in was in the colloquial sense.  And when you get to closing it might be closer, but they certainly haven't raised that.  They didn't raise an objection in closing and they haven't said that the closing argument itself was improper.

30:04  USA   They're just saying that the evidence shouldn't have been admitted in the first place.

       Jdg   I had one question on the multiplicity.  What difference between the two statutes is in the interstate elements?  One requires using an interstate means to entice someone.  With respect to the child porn statute, it's producing something that's going to be transmitted in interstate.  Does that difference in those two elements make any difference with respect to the argument the defendant makes?  If we treat the one statute as having multiple alternative elements depending on which statute is to be violated?

31:01  Jdg   Does it make any difference that the interstate element is different or the interstate element of the child porn production ends up being an element of the enticement statute ... in any event... assuming their theory is correct.

31:23   USA   Right.  We've certainly...I've certainly waived that argument to the extent it would be one that I could make.  I guess, I honestly haven't thought about that.  I'd be happy to file a short letter on it if you'd like Your Honor, but I haven't thought about that particular argument. ...I could imagine...  The difficulty, I guess I'm somewhat having is determining whether in practice there is a way that I could think of them being different, or whether it's just a difference in the terminology.

31:55   Jdg   I'm not requesting that to come up.

         USA   Yeah... ...the Eleventh Circuit in Lee, certainly the Sixth Circuit opinion in Hart, regarding why you should look at it...not as the underlying offense, those not being elements.  Lee didn't cite the elements.  Or the Jockisch opinion.  But if you... relate it to Hart... you can find it via that route.

32:18   USA   Also on that point in Faust and Thomas when this court laid out the elements, it simply laid out the element as convincing them to do a sex act that would be illegal and suggested that that was the element.  There was no discussion of this underlying...

         Jdg   You know as long as you've got time...I read the transcript on the... I guess it was the jury instructions conference and the plan to do this [special] verdict [form].  Am I correct that at that point, the lawyers and the judge were doing that in part in anticipation of this double jeopardy issue?  Is that why the special verdict [form] options were included?

33:03   USA   Yeah, I would argue...yeah, we've got a circuit split on the issue.  And so if we require unanimity on it...

         Jdg   You didn't finish the answer.

33:12   USA   If we've got a unanimity instruction then we don't have to worry about some challenge saying that these are actually elements and you didn't prove the elements and so it was a safety consideration.  It wasn't us suggesting that we agree that these are elements.

Jdg   I, at least, had the impression of the judge ...at that point, maybe it was a little earlier, was maybe thinking there may be a multiplicity problem and then kind of backed off of it and did a wait and see.  Is that a fair interpretation?

33:41  USA   Yeah, I think that's fair and then there's also some briefing when you get to the sentencing as well, where I think the judge then comes to the conclusion that they don't violate.

Jdg   Thank you Counsel.

33:53  R.G.   Did I have any time remaining?

Jdg   No, you didn't have any time remaining.

R.G.   OK, could I have a minute, Your Honor?

33:59  Jdg   I'll give you 30 seconds.

R.G.   In the face of a shifting Government theory from clear - not beyond enticement, but coercion - into this "grooming" theory, Howard in the Fifth Circuit, Gladish in the Seventh Circuit, Lee in the Eleventh Circuit all say that developing a relationshing, having obscene speech, even sending an obscene photo, and asking for naked photos; that's not enough.  That's not a substantial step, especially when S.F. herself says she wasn't enticed or persuaded.

Jdg   Thank you, Counsel.

Jdg   Case is submitted.  Counsels are excused.

34:39  Jdg   Court is adjourned.

18.

*Digital Forensics*
*www.pedenforenscis.com*

Valleyford WA 99036
509.230.2980 / 509.994.9632

## Forensic notes of Kevin H. Peden Supplemental report

### Case: <u>U.S. v. Rande Isabella</u>

### 17 August 2016

### History:

Upon receipt of my forensic notes report, I was asked by Mr. Gainor to complete my examination of the evidence which was stored at the FBI office in Spokane WA. On Thursday, August 4, 2016, I responded to the FBI office and was able to review the final images and videos in this case.

### Investigation:

The focus of the remainder of my examination was the images and videos contained on the media provided by the government in the Isabella case. During this part of the examination, I reviewed the remaining images and videos to see if any of them would qualify as contraband images of child pornography. I applied the same criteria as was listed in the original report starting on page 5.

<u>Of the thousands of images, none were found that I believe would meet the federal definition of child pornography.</u> There were many images which contained partial nudity of females which were obviously adult. Many of these appeared to be photo shoots of various models. None of them were pornographic nor hinted at younger models. Of the images that were pornographic by definition, none were found to be of anyone which I believe were children by definition.

In addition to reviewing the images for contraband, I also looked at the images to see if there were images of children on the media. When doing this, I am looking for images which are completely normal images of children. For example, images of children posing clothed in non-sexual positions, children playing games, or selfies of persons who appear to be young. These types of images can paint a picture of the viewer as to what the viewer is interested in.

<u>Of the videos contained on the media, none were found to contained content which would meet the definition of child pornography content.</u> Most of the video were of scenic, travel or home videos of family and friends.

### Conclusion:

With regards to the computer containing contraband. I did not find any images in the folders listed above which I believe to be contraband. In addition, I noted a lack of normal legal images of younger persons on the computer. In my experience, cases involving child victims generally will have these legal images of children on the drive which could support an interest in younger persons.

Kevin H. Peden — CEO Peden Digital Forensics

APPENDIX I

1.

Appellate Case: 17-1197     Document: 01019862368     Date Filed: 08/28/2017     Page: 348     Sealed

**Peden**
**Digital Forensics**
*www.pedenforenscis.com*

Valleyford WA 99036
509.230.2980 / 509.994.9632

### Forensic notes of Kevin H. Peden Supplemental report

#### Case: U.S. v. Rande Isabella

#### 13 September 2016

**History:**

Upon receipt of my forensic notes report, I was asked by Mr. Gainor to review images sent by SF through the KIK program in an attempt to determine the origin of the torso picture which the government is alleging is contraband.

**Investigation:**

I reviewed both the phones of Mr. Isabella and SF in an attempt to determine the specifics about the image in question. This image depicts a torso shot of a female. The image does not show the female's head or any part of the body below the upper portion of the right thigh. It does show a portion of the female's right arm. From this it appears the that female's elbow is bent at about a 90-degree angle. In the image, the female is naked and is surrounded by what appears to be a blue comforter. Her genitals are not visible and only her right breast is completely visible. She also appears to have a naval piercing.

I was able to identify this image on Mr. Isabella's iPhone. The image did not show any metadata that would indicate the date/time the image was taken. It did appear to have been received on the device through the KIK social media application.

I then examined SF's Samsung Galaxy device. I reviewed all of the stored pictures on the device and learned that the original image did exist on the phone within a cache file. Below is the location on the device where the image resided.

| | |
|---|---|
| Name: | imgcacheMicro.0_embedded_1924.jpg |
| Type | Images |
| Size (bytes) | 10383 |
| Path | Samsung CDMA-SCH-i200 Galaxy Stellar.zip/data/media/Android/data/com.sec.android.gallery3d/cache/imgcacheMicro.0/ imgcacheMicro.0_embedded_1924.jpg |
| Created | |
| Accessed: | |
| Modified: | |
| Deleted: | |

As is clearly visible in the image above, the file was stored in a cache file which did not record any data about when the image was created, accessed, modified, or deleted.

After finding this image, I looked to see if I could find the actual original image of the torso shot. I was not successful as the original image had been deleted prior to the government collecting it's forensic image of the device.

2.

I then returned to the torso image of SF which was found in the "imgcacheMicro" file. Once I did so, I found a total of 18 different images which depicted SF and a blonde white male during a sexual encounter between the two of them. Some of these images depicted several different poses of SF alone. Of these, some were different torso shots similar to the one the government has produced in this case. Other of these images contained self-masturbation images of SF. None of the images of SF include her face or head.

In addition to images of SF, there are images of the blonde white male. This male was nude and his face was visible. In addition to his face, the images depicted his erect penis.

Lastly, there were images which depicted close up shots of the two of them having intercourse. These images were of the genitals of both parties.

In reviewing these images in the cache file, they all were grouped together. In addition, the background and lighting conditions were all consistent in each image. This indicates that they were all taken during this particular intimate encounter. The torso image of SF, which the government is alleging to be contraband was included in these 18 images.

Upon closely reviewing the images in this series, I was able to compare the blue comforter which was visible in the governments image to that which was present in a different torso shot of SF. In the compared image, I also noticed that SF was lying on a blue and white checkered sheet. As I continued to review the other images, I observed this same blue and white checkered sheet in the image of the nude white male.

I took several screen shots from these images to illustrate to the court what I observed. None of these screen shots contain any nudity with the exception of SF's naval. There are no breasts, pubic areas, or genitals of either participant visible in my created screen shot. I have prepared these images for presentation to the court in Appendix A, which is attached.

Lastly, I found a second image of the torso shot in a different location. This was the same image the government is presenting with the exception of it having a black bar on the top and bottom of the image. Below is a screenshot of the location of this image.

| Name: | PART_1380803224603_Screenshot_2013-10-01-16-14-53.png |
|---|---|
| Type: | Images |
| Size (bytes): | 302810 |
| Path: | Samsung CDMA_SCH-i200 Galaxy Stellar.zip/data/data/com.android.providers.telephony/app_parts/PART_1380803224603_Screenshot_2013-10-01-16-14-53.png |

From this screen shot, you can see the very bottom of the torso image, (again with no nudity visible), and the black bar I mentioned. The important details of this image is that this is a screenshot taken by the user of the phone. This information was gleaned from the name of the

file. Included in the file name is the date and time the screenshot was taken. "Screenshot_2013-10-01-16-14-53.png" (October 1, 2013 at 4:14:53 PM). This screen shot was taken after the KIK conversation with Mr. Isabella. The original screenshot image was also deleted prior to the government creating the forensic image of the phone.

**Conclusions:**

The image of SF, which the government is presenting in it's case in chief, existed on SF's Samsung Galaxy phone at some point. This was evident through the images found in the cache files as well was the screenshot which was manually created on 10-01-2016. The original images were deleted sometime prior to the government collecting the forensic image of the device.

This original image was taken as a series during a romantic encounter between SF and a white male. In the images, it appears that both SF and the male were responsible for taking the images of each other based on the contents of the images. In addition, due to the camera location on some of the images, it appears that both SF and the male were aware that images were being taken of the encounter. This means that the torso image in question was not taken as a response to a request by Mr. Isabella.

The image in question appears to have been taken by the white male rather than by SF. In drawing this conclusion, I looked closely at the area the camera would have been placed during the photo and the angle of SF's elbow in the image. It appears that the camera would have been too close to SF if she were holding it.

Kevin H. Peden – CEO Peden Digital Forensics                    13 September 2016



**IMAGE 1**

Image is a cropped portion of the torso shot which was allegely sent through KIK from SF on October1, 2013

Blue comforter which is visible in the torso shot of SF

Abdominal area cropped from torso shot of SF



**IMAGE 2**

Image is a cropped portion of the different torso shot found on SF phone in a series of images taken during a sexual encounter

blue and white plaid sheet on the bed.

Blue comforter which appears to be the same as what was seen in the image sent through KIK

Abdominal area cropped from torso shot of SF

**IMAGE 3**

Image is a cropped portion of a blonde male which was recovered from the set series of images that included the torso shot sent by SF

male counterpart in sexual encounter lying on the bed.

same plaid sheet that is visible in the torso shot of SF with blue comforter seen in image 2

Vols 1-9  pp 1099-1418.pdf - 12/07/2019
351

5.

